UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ATMOSPHERE HOSPITALITY MANAGEMENT, LLC, <br><br>       Plaintiff, <br><br>   vs. <br><br> ZELJKA CURTULLO, <br><br>       Defendant, <br><br> and <br><br> SHIBA INVESTMENTS, INC. and KARIM MERALI, <br><br>       Defendants and <br>       Third-Party <br>       Plaintiffs, <br><br>   vs. <br><br> JAMES HENDERSON, <br><br>       Third-Party <br> Defendant. | 5:13-CV-05040-KES <br><br><br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL** <br> [DOCKET NO. 127] |

**INTRODUCTION**

This matter is before the court on plaintiff Atmosphere Hospitality

Management, LLC's complaint, filed pursuant to the court's diversity

jurisdiction, 28 U.S.C. § 1332.  Now pending is a motion to compel, Docket No.

127, also filed by Atmosphere.  The district court, the Honorable Karen E.

Schreier, referred this motion to this magistrate judge for decision.  See Docket

No. 165

**FACTS**

Atmosphere brought this action against Shiba and Merali to litigate issues related to a licensing contract and management contract entered into by the parties on December 31, 2011. [1]  The agreements allowed Shiba to operate a Rapid City hotel it owns under Atmosphere's brand, "Adoba," and gave management of the hotel to Atmosphere.  Third-party defendant James Henderson is a managing partner of Atmosphere.[2]

After operating under the licensing and management agreements for over one year, Shiba and Merali unilaterally canceled the contracts effective May 1, 2013, and claimed the right to continue using the "Adoba" brand.  There were creditors of the hotel which had provided goods or services prior to May 1, 2013.  Atmosphere contended that Shiba was responsible for these debts.  Shiba contended the debts were Atmophere's responsibility.

Atmosphere filed a complaint on May 30, 2013 in this court alleging defendants breached the contracts, tortiously interfered with Atmosphere's business expectancy, defamed Atmosphere, fraudulently induced Atmosphere to enter into the contracts, committed deceit, misappropriated Atmosphere's trade secrets, and converted Atmosphere's property.[3]  See Docket Nos. 1, 37.

---

[1] Atmosphere is a Delaware company with its principal place of business in Colorado.  Merali is a South Dakota resident.  Shiba is a Texas corporation with its principal place of business in South Dakota.

[2] Henderson is a resident of Colorado.

[3] Atmosphere was allowed to amend its complaint without objection by defendants to add claims and to add Zeljka Curtullo as a defendant.  Curtullo

Defendants Shiba and Merali filed a third-party complaint against James Henderson, alleging Henderson breached the contracts, converted defendants property for himself, and tortiously interfered with defendants' business expectancy.[4]  See Docket Nos. 8, 46 & 47.

Defendant Zeljka Curtullo began as an employee of Atmosphere, but who subsequently is alleged to have become an employee of Shiba.  Atmosphere also alleges that Curtullo became the girlfriend of Merali's son, Sacha, who is also a part owner of Shiba.  Atmosphere alleges that Curtullo breached a nondisclosure/confidentiality agreement she had signed in favor of Atmosphere by giving confidential information about Atmosphere to Shiba and Merali and that she misappropriated Atmosphere's trade secrets and converted Atmosphere's property.

To say that the history of this case has been litigious is to understate. Atmosphere filed a motion for a preliminary injunction asking the court to enjoin Shiba from using the Adoba brand during the pendency of this litigation and to require Shiba to pay the hotel's creditors for the debts incurred prior to May 1, 2013.  See Docket No. 27.  After taking evidence at a hearing that stretched over three days, the district court granted this motion in part and denied it in part, ordering Shiba to pay the debts incurred in operation of the

---

is alleged to be a former employee of Atmosphere and a current employee of Shiba.  She is alleged to be a resident of South Dakota.

[4] Defendants also originally asserted Henderson had violated the Racketeer Influenced and Corrupt Organizations Act (RICO).  See Docket No. 8.  This claim was later dropped when defendants filed answers to plaintiff's amended complaint.  See Docket Nos. 46, 47, and 67.

3

hotel, but holding that Atmosphere had not shown an entitlement to preliminary injunctive relief as to the use of the Adoba brand.  See Docket No. 53.

Shiba and Merali then filed a motion for summary judgment.  The court denied the motion without prejudice to allow the parties time to conduct discovery and to serve defendant Zeljka Curtullo, who had not yet been served with the Atmosphere's amended complaint and summons.  See Docket No. 88.

The record in this case has been riddled with discovery disputes. Atmosphere filed a motion to quash a subpoena defendants served for Atmosphere's bank records.  See Docket No. 90.  That issue was resolved by the court entering a protective order as to the bank records.  See Docket No. 101.  Atmosphere filed a motion to compel, Docket No. 98, which was resolved after the court held a hearing on the motion.  See Docket No. 135. Currently two more motions related to the earlier motion to compel are pending, a motion for attorney's fees and a motion for sanctions.  See Docket Nos. 147, 150.  Defendant Merali then filed a motion to quash subpoenas served by Atmosphere.  See Docket No. 107.

Now pending before this court are:

- Atmosphere's Motion to Compel—Docket No. 127

- Atmosphere's Motion to Compel Attendance, to Compel Compliance with Subpoena, and for Sanctions—Docket No. 131

- Atmosphere and Henderson's Motion for Protective Order—Docket No. 141

This opinion deals with Docket No. 127 only, which relates to plaintiff's second set of discovery requests, consisting of interrogatories, requests for production of documents, and requests for admission.

Plaintiff served defendants with this second set of discovery requests on July 21, 2014.  See Docket No. 129-1.  Defendants filed initial responses to these discovery requests on August 1, 2014.  See Docket No. 129-2.  Plaintiff's counsel sent a letter to defendants' counsel on August 15, 2014, noting various deficiencies with those discovery requests.  See Docket No. 129-3.

Counsel for both parties then met on August 28, 2014, to hold a meet-and-confer conference regarding plaintiff's disputes about defendants' discovery responses.  See Docket No. 129-4.  At the meet-and-confer, plaintiff's counsel explained in detail why she believed defendants' responses to the following discovery requests were inadequate and for which supplementation was requested:  Interrogatory Nos. 2-4, 6-10; Request for Admission Nos. 3-4, 7-10, 13-14, 20; and Request for Production Nos. 2-10.  Plaintiff's counsel sent a letter recapping the discussion held between counsel as to these discovery requests.  See Docket No. 129-4.  In general, defendants agreed to produce additional discovery responses on or before September 9, 2014.  Id.

On September 9, 2014, defendants served plaintiff with unsigned and undated supplemental responses to plaintiff's second set of discovery requests.  See Docket No. 129-5.  On September 10, 2014, plaintiff's counsel sent a letter detailing further issues with defendants' supplemental responses.  See Docket No. 129-6.  The letter stated that a motion to compel would be filed if

5

defendants did not further clarify, supplement, or otherwise produce discovery. Id.  The instant motion was filed on September 15, 2014.  See Docket No. 127.

On October 6, 2014, defendants responded to plaintiff's motion to compel.  See Docket No. 140.  Not until October 14, 2014, a month after plaintiff filed its motion to compel, did defendants provide plaintiff with signed and dated supplemental responses to plaintiff's second set of discovery requests.  See Docket No. 167.

## DISCUSSION

### A.    General Standards Applicable to Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See FED. R. CIV. P. 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party.  See FED. R. CIV. P. 37(a)(1).

6

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").   The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

Interrogatories, requests for the production of documents, and requests for admissions are to be signed by the party to whom the discovery request is directed; interrogatories must be signed under oath.  See FED. R. CIV. P. 33(b); 34(b); and 36(a).

Requests to admit require a party to make reasonable inquiry to obtain any information which the party has or can readily obtain in order to admit or deny the request.  See FED. R. CIV. P. 36(a)(4).  The purpose of requests to admit pursuant to Rule 36 are to save parties from having to expend time and money proving facts which are readily ascertainable by the other party and not reasonably capable of dispute.  Johnson Internat'l Co. v. Jackson Nat'l Life Ins. Co., 812 F. Supp. 966, 987-88 (D. Neb. 1993), aff'd in part and remanded on

other grounds, 19 F.3d 431 (8th Cir. 1994).  If a party unreasonably fails to admit a matter after being requested to do so, possible sanctions include the costs (including attorney's fees) of the party that served the request to admit in marshaling the evidence necessary to prove the matter.  Id.  See also FED. R. CIV. P. 37(c)(2).  Sanctions can be assessed against not only the party, but his attorney as well.  Johnson Internat'l Co., 19 F.3d at 438-49.

Rule 34 of the Federal Rules of Civil Procedure governs requests for the production of documents and provides that a party may ask another party to permit copying of documents "in the responding party's possession, custody, or control."  See Fed. R. Civ. P. 34(a)(1).  The concept of documents in a party's "possession" or "custody" is clear enough, but the concept of documents in a party's "control" is not obvious upon a reading of the rule.

The rule that has developed is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34.  See 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §2210, at 397 (2d ed. 1994).  "Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control."  American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 501 (D. Md. 2000); and Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

8

Merely because documents gathered by an attorney are subject to the client's control does not, however, automatically mean they are discoverable. The work product doctrine and the attorney-client privilege still apply and may be asserted in opposition to discovery, along with the appropriate privilege log. Ringling Bros., 233 F.R.D. at 211-213.

**B.     Plaintiff Has Satisfied the Meet-and-Confer Requirement**

Rule 37(a)(1) requires the parties to meet and confer to attempt to resolve discovery disputes prior to filing a motion to compel.  See FED. R. CIV. P. 37(a)(1).  In addition, this court's local rules impose a similar requirement.  See DSD LR 37.1.  It appears as though plaintiff held a meet-and-confer with defendants after receiving defendants' initial responses to plaintiff's second set of discovery responses.  See Docket No. 129-4.  However, a second meet-and-confer appears not to have been convened once defendants served their supplemental responses.

Because many of the same issues identified by plaintiff following defendants' initial discovery responses were not rectified or were not addressed by defendants' supplemental responses, the court finds that the meet-and-confer held August 28, 2014, was sufficient to satisfy the condition precedent prior to filing the instant motion to compel.

**C.     Plaintiff's Motion to Compel Responses to Discovery (Second Set)
         Docket No. 127**

In the motion filed at the court's Docket No. 127, plaintiff seeks an order compelling defendants to provide answers to various discovery requests as discussed below.

The court notes that, in the past, defendants have filed discovery responses to plaintiff's discovery requests that were not signed by the party defendant.  The district court admonished defense counsel repeatedly at the hearing held on September 29, 2014, and explained that interrogatories, requests for production, and requests for admission are to be signed by the party itself or himself.  At the September 29 hearing, the court ordered defense counsel to supply plaintiff with discovery responses that were appropriately signed by the party defendant.

Although the September 29 hearing before the district court did not concern plaintiff's second set of discovery requests, the rule that the court set forth for defendants applies to all discovery responses.  Significantly, as of the date of the September 29 hearing, defendants had already served plaintiff with its September 9 supplemental responses to plaintiff's second set of discovery requests.  Those supplemental responses were unsigned and undated, in derogation of the district court's admonishment.

It is incredible to this court that, following the hearing before the district court, defendants did not immediately rectify the problem with their supplemental discovery responses by serving signed and dated responses on plaintiff.  Instead, defendants failed to serve signed discovery responses until October 14, 2014, a full month after plaintiff filed the instant motion to compel, six weeks after the initial unsigned responses were served, and two full weeks after the district court's admonishment about the need for signing discovery responses.

10

One theme that runs through plaintiff's motion to compel is the ambiguity created by defendants' supplemental discovery responses. Do those responses completely supplant defendants' initial discovery responses? Or are the supplemental discovery responses to be read together with the initial responses. Defendants evade answering this question in their response to plaintiff's motion to compel. It seems obvious to the court from reading both sets of responses that the supplemental responses are intended by defendants to completely supplant the initial responses given. Accordingly, the court so rules: defendants shall be bound by their supplemental responses to plaintiff's second set of discovery requests. Defendants' initial responses shall be deemed null and void.

### 1. Interrogatory No. 2

Plaintiff's Interrogatory No. 2 asks:

**Interrogatory No. 2**. Indicate when, in what manner, and from whom you received Atmosphere's proposed License Agreement and Property Management Agreement.

Defendants' response in their supplemental responses was:

Jim Henderson delivered the agreements by hand, initially and later, by email. I don't recall specifically when he handed me the agreements the first time, but believe that the documents were emailed in December 2011.

See Docket No. 129-5 at p. 2.

Plaintiff's objection to defendants' supplemental response is that the exact date of the email is capable of determination by referencing the email that contained the contracts attached to them. Plaintiff seeks an order from the court compelling defendants to look at the email and give a date certain.

11

As to the first part of defendants' answer, there would not appear to be a document that would reflect when James Henderson hand-delivered a copy of the agreements to defendant Karim Merali.  To the extent plaintiff seeks an order to compel as to this portion of defendants' answer, that request is denied.

As to the second part of defendants' answer, plaintiff is correct.  If the agreements were delivered by email, as defendants state, then that email would reflect a date certain.  Defendants are ordered to consult the information in their custody and control and file a response stating the date the email was delivered from Henderson to Merali.

### 2.   Interrogatory Nos. 3-4 and Requests to Admit Nos. 3-6

These six discovery requests are taken as a group because all attempt to pin defendants down as to the sequence of changes made to the agreements, what was changed each time, and who made each change.  Plaintiff's Interrogatory No. 3 asks:

> **Interrogatory No. 3**.  List the date, time and who was present or involved regarding any and all conversations, emails and other communications wherein Courtney Clayborne [defendants' counsel] or any other attorney or staff with his office discussed any terms or changes to the License Agreement and Property Management Agreement prior to the execution of those documents. This request is not asking for information regarding members of Mr. Clayborne's firm or staff communicating amongst themselves.

> Defendants' supplemental response to this request is as follows:

> I do not recall the specific dates and times but believe that these communications would have taken place from and after approximately December 20, 2011.

<u>See</u> Docket No. 129-5 at p. 2.

Plaintiff's Interrogatory No. 4 asks:

12

**Interrogatory No. 4**.  List the dates of any and all edits, revisions, amendments, etc., to the License Agreement and Property Management Agreement, listing who made the edits, whether edits were made by computer or by hand, whether red-lining or other tracking was used, on what dates such edits were made, where such edits were made, and who participated in making the edits, and who received copies of such edits, and in what manner such copies of the edits were sent or received.

Defendants' supplemental response to this interrogatory was as follows:

I believe that in early December I made handwritten notes on the documents before and after some initial discussions with Jim [Henderson] and my attorney.  If memory serves me correctly, not all of the notes were incorporated into the later versions of the agreements.  I believe that after December 20, 2011, several changes were made to the emailed agreements by both me and my attorney.  I believe that I gave my attorney copies of both agreements and he made changes both with and without my input as the agreement had things that were either one-sided or not applicable to our situation.  I do not remember the changes specifically as each time changes were made we would throw away the prior versions so not to confuse the old with the new.  I would also periodically share these with Jim verbally and including red-lined versions.  I believe that between the handwritten changes and computer changes, there were four or five different versions of the agreements.  I also recall more changes being made to the License Agreement rather than the Management Agreement.

See Docket No. 129-5 at p. 2.

Plaintiff's Request for Admission No. 3 asks:

**Request for Admission No. 3**.  Admit that Karim Merali made changes to Atmosphere's proposed License Agreement before supplying the same to Courtney Clayborne to make further edits.

Defendants' supplemental response was:  Deny.  No changes were made

prior to Courtney.  See also, Response to Interrogatory 4.  See Docket No. 129-

5 at p. 4.

Plaintiff's Request for Admission No. 4 asks:

13

> **Request for Admission No. 4**.  Admit that Karim Merali made changes to Atmosphere's proposed Property Management Agreement before supplying the same to Courtney Clayborne to make further edits.

Defendants' supplemental response was:  Deny.  No changes were made

prior to Courtney.  <u>See</u> Docket No. 129-5 at p. 4.

Plaintiff's Request for Admission No. 5 asks:

> **Request for Admission No. 5**.  Admit that Karim Merali made changes to the last draft of the License Agreement prepared by Courtney Clayborne.

Defendants' supplemental response was:

> Deny in part.  I may have physically made changes (spelling, etc.) but only after speaking with counsel.  I do not believe that I made substantive changes to the documents without consulting my attorney.

<u>See</u> Docket No. 129-5 at p. 4.

Plaintiff's Request for Admission No. 6 asks:

> **Request for Admission No. 6.**  Admit that Karim Merali made changes to the last draft of the Property Management Agreement prepared by Courtney Clayborne.

Defendants' supplemental response:  Deny.  <u>See</u> Docket No. 129-5

at p. 4.

Plaintiff's collective objection to these answers is difficult to fathom.  In

their brief, plaintiff spends five pages detailing defendant Karim Merali's

testimony from the evidentiary hearing held on plaintiff's motion for a

preliminary injunction.  <u>See</u> Docket No. 128 at pp. 6-10.  The gist of this

exercise seems to be to demonstrate that Merali has given evasive and

conflicting answers in the past about the revisions that took place on the two

agreements.  Id.  Furthermore, by comparing various documents defendants have produced, plaintiff argues to the court that Merali's written answers to plaintiff's discovery requests are untruthful because they conflict with the documents and his prior testimony.  See Docket No. 128 at pp. 10-17.

Plaintiff summarizes its position on these discovery requests as follows: "Atmosphere requests the Court [to] compel clear and unambiguous answers." Id. at p. 17.  The court declines to do so.  To the extent Merali has given false or inconsistent answers over time, those are matters for cross-examination at deposition and at trial.

As to Interrogatory Nos. 3 and 4, however, attorney Clayborne's billing records would surely reflect the dates, times, and persons present during discussions of revisions in which Clayborne was involved.  Defendants are ordered to review such documents and, **within 14 days** of the date of this order, provide additional responses to Interrogatory Nos. 3 and 4 to the extent additional or revised responses are called for following such review.

### 3.    Requests for Admission Nos. 7-10

These four discovery requests are taken as a group because all deal with the subject matter of defense counsel Courtney Clayborne's communications [or lack thereof] with James Henderson regarding edits made to the agreements.  Plaintiff's  Request Numbers 7 and 8 ask for admissions that Courtney Clayborne had no communications with James Henderson regarding edits to make to either agreement.  Request Numbers 9 and 10 ask for admissions that Courtney Clayborne did not send or give any edits of either

15

agreement to James Henderson.  Defendants' supplemental responses to each of these requests to admit is the same:  Deny.  See Docket No. 129-5 at p. 5.

As with the previous categories of discovery requests addressed above, plaintiff suggests that defendants' answers are not complete and truthful.  See Docket No. 128 at 18-19.  Plaintiff requests the court to compel defendants to answer the requests to admit fully, completely and honestly.  Id. at 18.  The request is denied.  Any inconsistency between Merali's discovery responses and prior or future testimony are matters for cross-examination.[5]  If it appears at trial that defendants have unreasonably failed to admit a fact that they should have admitted, plaintiff may seek sanctions against both defendants and their attorney for the cost incurred in proving the fact.  See Johnson Internat'l Co., 19 F.3d at 438-49; Johnson Internat'l Co., 812 F. Supp. at 987-88; Fed. R. Civ. P. 37(c)(2).

### 4.    Interrogatory No. 9

Plaintiff's Interrogatory No. 9 asks:

**Interrogatory No. 9.**  List the renovation expenses by category and amount, and indicate from which bank account each renovation expense was paid and when.

Defendants' supplemental answer is as follows:

**Supplemental Response.**  This interrogatory is vague and confusing.  In general, we spend a minimum of $500,000 per year

---

[5] Plaintiff's counsel raises the serious issue of whether defendants' counsel knowingly allowed his client to submit false discovery responses.  See Docket No. 152 at pp. 5-6.  This is a matter to be resolved on another day, perhaps by another tribunal.  If plaintiff believes Mr. Clayborne is a necessary witness at trial, a motion to remove him as counsel may be made.  If plaintiff believes Mr. Clayborne has violated an ethical duty, a complaint to the Disciplinary Committee of the state bar association may be made.

> every year upgrading the hotel and have since purchasing the same.  The categories would include furniture, fixtures, equipment, capital expenditures and labor.  Over the years we have had bank accounts with several institutions and have used all such accounts, including but possibly not limited to U.S. Bank (or its predecessors); Wells Fargo (or its predecessors), Bank West, and possible [sic] Dakotah [sic] Bank, American State Bank and Great Western Bank (or its predecessors).

See Docket No. 129-5 at p. 3.

Plaintiff explains that renovation expenses are relevant to the compensation they are due under the Property Management Agreement (PMA) with defendants.  Under the PMA, plaintiff is to receive 10% of the net operating income from the hotel.  Under the PMA, renovation expenses are not to be taken into account in calculating the net operating income.  Also, under the PMA renovation expenses are not to be paid out of the hotel's operating account.  Plaintiff states that it must be able to specify what renovation expenses were precisely and what account they were paid from so that it can accurately calculate the net operating income figure.  See Docket No. 128 at p. 20.

When counsel met to try to resolve this discovery dispute, plaintiff limited its request to the period from January 1, 2012, through June 1, 2013.  Furthermore, plaintiff clarified that "renovation expenses" meant anything defendants undertook to renovate the hotel *other than* the renovation the hotel undertook to become a LEED-certified hotel as required by Adoba brand standards.  See Docket No. 128 at p. 21.  Plaintiff asserts that, although defendants promised to provide such documents by September 9, 2014, as limited by plaintiff at the meet-and-confer, no such documents have in fact

17

been produced—even after the filing of the instant motion to compel.  Id. at 21-22.

Plaintiff has supplied the court with an email from Merali to Shiba's accountant.  That 22-page document itemizes more than $1.6 million in renovation expenses paid to dozens of parties in the calendar year 2012.  See Docket No. 129-10.

Obviously, from examining this document, Merali knows to the penny what his renovation expenses were in 2012 and to whom those expenses were paid.  See id.  The court notes that the actual figure for renovations for 2012 ($1.6 million) was more than triple what Merali stated his renovation expenses were in his discovery response ($500,000).  Compare Docket No. 129-10, with Docket No. 129-5 at p. 3.  What is not evident from examining this itemization, however, is which of the expenses in 2012 were paid from the hotel's operating account.  See Docket No. 129-10. Also, nothing is known about the hotel's renovation expenses for the first five months of 2013 because Docket No. 129-10 covers only the year 2012.  Id.

Accordingly, the court hereby orders defendants:

1.      to produce within **14 days** from the date of this order a copy of each cancelled check or credit card statement evidencing payment for each line item on Exhibit L, Docket No. 129-10;

2.      to produce within **14 days** from the date of this order a copy of an itemization of renovation expenses for the hotel similar to Exhibit L for the period January 1, 2013, through June 1, 2013;

18

3.      to produce within **30 days** from the date of this order a copy of each cancelled check or credit card statement evidencing payment for each line item on the itemization required by Number 2 immediately above; and

4.      to identify within **14 days** from the date of this order, by bank name and account number, each and every bank account used as an operating account for the hotel for the period from January 1, 2012, through June 1, 2013.

**5.      Request for Admission No. 14**

Plaintiff's Request for Admission No. 14 asks:

**Request for Admission No. 14.**  Admit that Karim Merali never sent any edits to the Property Management Agreement to James Henderson by email.

Defendants' response was:  Deny.  Printed copy was given.

Plaintiff's objection to this response is that it is ambiguous.  Do defendants mean that Merali never emailed edits to Henderson but gave him paper copies of edits?  Or do defendants mean that Merali did send edits to Henderson via email.  At the meet-and-confer, plaintiff's counsel explained the ambiguity and asked for clarification.  Although defendants' counsel stated that a clarification would be given, instead the same discovery response was simply sent again.

The court agrees that the defendants' response is ambiguous.  Accordingly, the court hereby orders defendants to supply a new answer which clarifies defendants' position on this request to admit.

19

### 6.     Request for Production No. 2

Plaintiff's Request for Production No. 2 was as follows:

**Request for Production No. 2.**  Produce any and all emails, correspondence, or other communications and the contracts you received from Atmosphere in electronic format as well as printed out so as to indicate in what manner you received, and when, your first copy of the contracts from Atmosphere.

Defendants' supplemental response was as follows:

**Supplemental Response:**  I have hired a consultant to retrieve from my computer and will produce upon such retrieval.  I will also make the same computer available for physical inspection by any representative for Plaintiffs upon reasonable time and notice, provided that my consultant can also be present.

See Docket No. 129-5 at p. 7.

Plaintiff does not object to defendants' response.  Rather, plaintiff states that defendants have never carried through with their representations to provide the documents and allow the physical inspection.  Instead, plaintiff had to have its expert examine and create a mirror image of defendants' computer in order to obtain the documents itself.  Plaintiff asks the court to order defendants to pay plaintiff the time and expense necessary to obtain the documents itself.

The issue of plaintiff's access to defendants' computer was discussed extensively at the hearing before the district court on September 29, although the discussion did not specifically include Request for Production No. 2.  The court instructs plaintiff to include these expenses in its request for sanctions, discussed further at the end of this opinion.  Defendants will have the opportunity to address the matter in that context.

20

**7.      Request for Production No. 3**

Plaintiff's Request for Production No. 3 was as follows:

**Request for Production No. 3.**  Produce any and all documentation indicating if and when Courtney Clayborne or his office discussed the terms of or changes to the License Agreement and Property Management Agreement, including any notation in billing invoices, scheduling documentation, or other verification which would substantiate that Courtney Clayborne or his office discussed changes to these contracts with Karim Merali, Sacha Merali, Pandju Merali, James Henderson, or anyone else with Atmosphere.

Defendants' supplemental response was:

**Supplemental Response.**  I believe that all such documents have been previously provided including the emails to Jim concerning the agreements.  My attorney will provide his billing which are applicable upon the return to his office by his office manage who is currently out.  She should return by tomorrow.

See Docket No. 129-5 at p. 7.

In response to this request, defendants provided 103 pages of emails between Merali and Courtney Clayborne.  See Docket Nos. 129-8 and 129-9. Plaintiff objects, stating that there must be scheduling documents showing meeting dates and time, that the billing documents from Clayborne's office were never produced as promised, and that defendants produced no documents showing communication with James Henderson.  As to the latter, plaintiff points out that defendants' responses to Requests to Admit Nos. 7-10 deny that Courtney had no contact with Henderson regarding the edits, so there must have been contacts between the two.  Plaintiff believes that there are, therefore, documents which would evidence this contact.

The court agrees.  It is hereby ordered that defendants shall produce within **14 days** from the date of this order all calendaring documents and billing statements from Clayborne's office which are responsive to Request for Production No. 3.  If there are no such documents, both Merali and Clayborne are ordered to so state, under oath and penalty of perjury in a discovery response signed by both of them.

### 8.    Request for Production No. 5

Plaintiff's Request for Production No. 5 asks:

**Request for Production No. 5**.  Produce any and all documents, emails, correspondence, and other communications with IQWWare in establishing or purchasing a property management system or booking software after James Henderson disallowed Shima from continuing to use the A-Gemini Technology package.

Defendant's supplemental response was:

**Supplemental Response:**  Objection as to relevance and proprietary information.  Without waiving such objection, we have requested the documents from IQWare and will produce with an agreement that the information obtained will remain confidential and proprietary to the extent it is not available to the general public.  The redacted invoices for the product that are available for photocopy and inspection at the hotel.

See Docket No. 129-5 at p. 7.

Plaintiff's objection is that defendants promised to provide the information by September 9, 2014, and did not.  Defendants did finally produce documents responsive to Request for Production No. 5 on October 1, some two weeks after plaintiff filed the instant motion to compel.  This request for an order to compel is, therefore, denied as moot.  Plaintiff may, however,

include the cost of pursuing this discovery, including preparing the instant

motion, in their request for sanctions discussed more fully below.

### 9.  Request for Production No. 6

Plaintiff's Request for Production No. 6 asks:

**Request for Production No. 6**.  Produce all documents generated
by James Postma [defendants' expert], including any formal or
informal audit report, additional exhibits, and any other
documents that would corroborate the numbers indicated on
Mr. Postma's financial summary or his previous or future
testimony.

Defendant's supplemental response was:

All Postma work product has been provided with the exception to
changes he has made to a document produced by Attorney
Clayborne.  It is anticipated the [sic] Postma will produce
additional documentation upon receipt of additional outstanding
discovery and that will be produced when completed.

See Docket No. 129-5 at pp. 7-8.

Because defendants stonewalled plaintiff's discovery request for all of

Postma's documents, plaintiff went to the time and expense of serving Postma

with a subpoena duces tecum.  Even after receiving the response to its

subpoena, at the meet-and-confer between counsel, plaintiff requested the

following missing documents:  (1) a document Postma attached to Shiba's 2012

and 2013 tax returns indicating that the return covered only half of 2013; (2)  a

document produced by attorney Clayborne to Postma to which Postma made

changes; and (3) a revenue comparison prepared by Postma for the hotel for the

years 2008-2013.

Plaintiff states that none of these documents have been produced by

defendants and ask the court to compel production.  Defendants explain that

they are still awaiting copies of documents from Wells Fargo, but this explanation does not excuse defendants' failure to produce the documents created by Postma.  The court grants this request in full.  Furthermore, plaintiff may include the costs of serving Postma with a subpoena in their request for sanctions discussed more fully below.

### 10.    Request for Production No. 7

Plaintiff's Request for Production No. 7 asks:

**Request for Production No. 7.**  Produce all profit and loss statements and all documents necessary to calculate the hotel's NOI (net operating income) for the year 2013.

Defendants' supplemental response was:

We do not have a final profit and loss statement for 2013 but will upon receipt of the complete banking records of Atmosphere and review of same.  The banking records are supposed to be received today.

See Docket No. 129-5 at p. 8.

Plaintiff's objection to this response is two-fold.  Although plaintiff has provided defendants will all accounting information they had for January 1 through April 30, 2013, defendants have not provided the same to plaintiff.  In addition to the profit and loss statements mentioned in defendants' response, plaintiff states that the following documents are also responsive and should be produced:  a general ledger, vendor expenses, payroll expenses, renovation expenses, general ledger activity details, a balance sheet, and other normal accounting documents necessary to determine net operating income.  Plaintiff asks the court to compel defendants to produce these documents.  The court grants this request in full.  Defendants shall, **within 14 days**  of the date of

24

this order, immediately produce for copying and inspection all general ledgers,

vendor expenses, payroll expenses, renovation expenses, general ledger activity

details, a balance sheet, and other normal accounting documents for the period

from May 1 through December 31, 2013.

**11.    Request for Production No. 8**

Plaintiff's Request for Production No. 8 asks:

**Request for Production No. 8**.  Produce the original binder
provided to the hotel by Atmosphere, as well as any other plans,
specifications, purchase guidelines, or other materials, indicating
how to renovate the property to become a green, Adoba hotel.

Defendants' supplemental response was:

No binder was ever produced to my knowledge.  This is confirmed
by staff of hotel please see Jon Fearon as he was Executive
Engineer and housekeeper for Mr. Henderson.

See Docket No. 129-5 at p. 8.

At the meet-and-confer, plaintiff's counsel responded that even if

defendants received no binder, there were clearly "other plans, specifications,

purchase guidelines, or other materials" from which defendants' agents worked

in order to know how to renovate the property in accord with Adoba standards.

Defendants' counsel promised to produce the same by September 9, 2014, but,

again, has not followed through on his promise.  In response to plaintiff's

motion, defendants deny that any such documents exist.  Plaintiff seeks an

order from the court compelling this production.

The court agrees.  Defendants shall, **within 14 days** of the date of this

order, produce all documents relative to the Adoba renovations as described in

Request No. 8 or provide discovery responses that are signed by the party

defendant, under oath and under penalty of perjury, stating that no such documents exist.

### 12.    Request for Production No. 9

Plaintiff's Request for Production No. 9 asks:

**Request for Production No. 9**.  Produce all communications, contracts, payments, and other documents regarding your contracts and dealings with any Chinese contacts, entities or businesses; any other foreign contacts, entities or businesses; and any go-betweens used to communicate with such foreign businesses or entities from which you purchased furniture for the hotel renovation.

Defendants' supplemental response was:

Objection as overbroad and not relevant.  Notwithstanding the objection we have requested invoices from Decorum and will provide the relevant documents upon receipt.

See Docket No. 129-5 at p. 8.

Defendants' response is satisfactory to plaintiff if defendants actually produce the invoices promised.  No such documents have been produced thus far, so plaintiff seeks the court's order compelling defendants to produce them. The court grants this request in full.  Defendants shall, **within 14 days** of the date of this order, produce all documents responsive to Request for Production No. 9.

### 13.    Request for Production No. 10

Plaintiff's Request for Production No. 10 asks:

**Request for Production No. 10**.  Produce the reports, renderings, plans, specifications, renovation spec binders, and other similar documents produced by Dina Belon or 4Front Design for the hotel's renovation; and all emails between Shiba, Karim Merali, Sacha Merali, Zeljka Curtullo, Antonio Ballatore, Dina Belon,

> Melanie Trigg, 4Front Design, and/or Atmosphere regarding the renovation.

Defendants' supplemental response was:

> We have no such documents in our possession or control.

See Docket No. 129-5 at p. 8.

Plaintiff objects to this answer, explaining that all persons listed in this request are persons who helped carry out the renovation of the hotel according to Adoba standards.  Plaintiff expresses incredulity that no documents exist in connection with these persons who drew plans, oversaw renovations, found eco-friendly products and the like which Shiba used to accomplish the renovation.

The court grants plaintiff's request, reminding defendants of the definition discussed above of what constitutes documents in defendants' control.  If defendants can legally request and receive those documents from a third party, defendants are under an obligation to make the request.   See 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §2210, at 397 (2d ed. 1994).  See also Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. at 212; Poole ex rel. Elliott, 192 F.R.D. at 501; and Poppino, 1 F.R.D at 219.  Defendants shall **within 14 days** of the date of this order, produce documents in its possession, custody or control which are responsive to Request No. 10, or provide a discovery response signed by the party defendant under oath and under penalty of perjury stating that no such documents exist.

**D.    Sanctions**

Rule 37 of the Rules of Civil Procedure says that if a party files a motion to compel and that motion is granted, or if the discovery is provided only after the motion is filed, then the court "must" "require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys fees." See FED. R. CIV. P. 37(a)(5).  An exception to the requirement of imposing sanctions exists if the movant filed the motion before attempting to resolve the matter with the other party, the opposing party's nondisclosure was substantially justified, or other circumstances make an award of sanctions unjust.

Here, plaintiff requests attorney's fees.  The court will entertain a request for such fees.  Plaintiff's counsel shall file a motion and affidavit in support of its request within 14 days of the date of this order.  Because of the plethora of discovery disputes and an already-pending motion for attorney's fees, plaintiff is requested to caption its motion as a motion for attorney's fees specifically in connection with Docket No. 127.  Defendants shall have 14 days to respond to that motion before the court rules on it.  Any reply by plaintiff shall be filed within 14 days after service of defendants' response.

**CONCLUSION**

Plaintiff's motion to compel [Docket No. 127] is granted in part and denied in part as set forth in detail in the above body of this opinion.

DATED this 2d day of January, 2015.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge