UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ATMOSPHERE HOSPITALITY MANAGEMENT, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> ZELJKA CURTULLO, <br><br> Defendant, <br><br> and <br><br> SHIBA INVESTMENTS, INC. and KARIM MERALI, <br><br> Defendants and Third-Party Plaintiffs, <br><br> vs. <br><br> JAMES HENDERSON, <br><br> Third-Party Defendant. | 5:13-CV-05040-KES <br><br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL ATTENDANCE AND PRODUCTION OF DOCUMENTS** <br><br> [DOCKET NO. 131] |

**INTRODUCTION**

This matter is before the court on plaintiff Atmosphere Hospitality Management, LLC's complaint, filed pursuant to the court's diversity jurisdiction, 28 U.S.C. § 1332.  See Docket No. 1.  Now pending is a motion to compel, Docket No. 131, also filed by Atmosphere.  The district court, the Honorable Karen E. Schreier, referred this motion to this magistrate judge for decision.  See Docket No. 165.

**FACTS**

The general background of the facts of this litigation and the identity of the parties is set forth in this court's recent opinion filed at the court's Docket No. 168.  That statement of facts is incorporated by reference herein.  The hybrid version is that plaintiff and defendants Karim Merali and Shiba Investments, Inc. entered into two agreements, a licensing agreement and an operating agreement.[1]  Under the former, plaintiff granted defendants the right to use plaintiff's "Adoba" brand for defendants' hotel in Rapid City, South Dakota.  Under the latter, plaintiff undertook to operate defendants' hotel under the "Adoba" brand.  Litigation ensued after defendants unilaterally terminated both agreements in April, 2013.  Zeljka Curtullo is a defendant who was added to the lawsuit later.

The motion which is the subject of this opinion involves depositions of Sacha Merali, Batool Merali, and a deposition and service of Zeljka Curtullo.  Only Curtullo is a party to these proceedings, having been named as a defendant in plaintiff's amended complaint.  <u>See</u> Docket No. 37.  The following are the pertinent facts as to plaintiff's attempt to depose and serve these three persons.

**A.     Sacha Merali**

Sacha Merali is the son of defendant Karim Merali and Batool Merali, Karim's wife.  He also owns 22 percent of defendant Shiba Investments, Inc.

---

[1] Defendant Karim Merali is a 48 percent owner of defendant Shiba Investments, Inc.  <u>See</u> Docket No. 100-2 at p. 2.

2

<u>See</u> Docket No. 100-2 at p. 2.  Shiba is a closely-held company in which only five members of the Merali family own all interests.  <u>Id.</u>

Sacha was involved in the contacts between defendants and plaintiff and third-party defendant Henderson prior to executing the contracts at issue herein.  <u>Id.</u> at p. 3.  Sacha was copied on emails between plaintiff and defendant Merali, he was to receive 25 percent of the operating company after the parties signed the agreements (in essence becoming plaintiff's business partner), and he was present when Henderson and Karim signed the agreements and actively participated in the discussion.  <u>See</u> Docket No. 69 at pp. 13-14, 19, 23-25.

Sacha was in charge of the renovation of defendants' hotel to meet the plaintiff's Adoba standards after the contracts were executed.  <u>See</u> Docket Nos. 133-11; 133-31 at p. 6.  As such, Sacha was given a confidentiality agreement by plaintiff at the inception of their business dealings which plaintiff expected him to sign (he never did).  <u>See</u> Docket No. 69 at pp. 46-47.  In turn, when Sacha would hire vendors to work on the Adoba conversion, he required the vendors to sign the same type of confidentiality agreement.  <u>Id.</u> at p. 49.  Plaintiff shared with Sacha detailed specifications and plans for the renovation of defendants' hotel.  <u>Id.</u> at pp. 68-69.

When defendant Karim contacted Certified Public Accountant James Postma to be defendants' accountant and to examine defendants' financial records, Sacha was present with Karim and Mr. Postma and actively participated in the financial examination.  <u>See</u> Docket No. 86 at p. 47, 52-53.

Sacha wrote checks on the operating account of defendants' hotel.  See Docket No. 133-32.

Previously, the plaintiff in this litigation brought suit against Sacha Merali in South Dakota state court.  See Docket No. 133-36.  In that state court action, defendants' current counsel, Mr. Courtney Clayborne, represented Sacha, and plaintiff's current counsel represented plaintiff.  Id. at p. 11-12.  Apparently that state court action is no longer pending, but the parties do not explain when that litigation ceased.  The document filed by plaintiff in this matter is dated June 7, 2013, so the court finds that Mr. Clayborne represented Sacha in the state court litigation at least through that date.

This federal court action was begun by plaintiff on May 20, 2013, approximately one month before the documents referenced above from the state court litigation.  Compare Docket No. 1 with Docket No. 133-36.  Defendants served plaintiff with their initial disclosures in this litigation on December 30, 2013, seven months later.  See Docket No. 133-14.  As of that date, Mr. Clayborne represented that Sacha was one of only two individuals likely to have discoverable information regarding the negotiation of the agreements between the parties and the Adoba "brand."  Id.  Mr. Clayborne listed Sacha's address as the business address of defendant's hotel.  Id. Further, Mr. Clayborne stated that Sacha should be contacted "through Counsel only."  Id.

On March 14, 2014, plaintiff's counsel sent Mr. Clayborne a letter asking for deposition dates for, among others, Sacha Merali.  See Docket No. 133-1.  On May 2, 2014, plaintiff's counsel sent a follow-up letter, asking again for a deposition date for Sacha.  See Docket No. 133-3.[2]

A deposition of Daniel Schipman was taken by plaintiff's counsel on May 6 and 7, 2014.[3]  See Docket No. 133-11.  Mr. Schipman testified that Sacha was initially a front desk employee of defendants' hotel who was paid hourly, and who later continued as an employee of defendants' hotel on a salary basis.  Id.

On May 16, 2014, plaintiff's counsel again requested Mr. Clayborne to supply her with dates on which Sacha could be deposed.  See Docket No. 133-4.  That request was repeated on June 24, 2014.  See Docket No. 133-5.  Receiving no response from Mr. Clayborne, plaintiff's counsel issued a notice of deposition for Sacha on June 27, 2014, setting the date of July 10, 2014, for Sacha's deposition.  See Docket No. 133-15.  Plaintiff's counsel also issued a subpoena for Sacha for the same date.  See Docket No. 133-16.  The process server served Sacha's subpoena on defendant Karim Merali at Karim's Rapid City home.  Id.

---

[2] Plaintiff's counsel sent an intervening letter on April 15, 2014, regarding deposition dates, but the deposition of Sacha Merali was not mentioned in that letter.

[3] Defendants state in their initial disclosures that Mr. Schipman has knowledge about the financial aspects of defendants' hotel and the day to day management of the hotel.  See Docket No. 133-14.

On July 8, 2014, a staff person in Mr. Clayborne's office sent an email to a staff person in plaintiff's counsel's office advising that Sacha is living in Chicago.  See Docket No. 133-17.  Mr. Clayborne's staff person sent a copy of the email to Mr. Clayborne as well as to plaintiff's counsel's office.  Id.  Mr. Clayborne's agent then advised that Sacha would return to Rapid City for his deposition if plaintiff paid his travel expenses.  Id.  Otherwise, Mr. Clayborne's agent informed plaintiff that Sacha's deposition would have to be taken in Chicago.  Id.

In response, plaintiff's counsel noted that Mr. Clayborne had never moved to quash the deposition notice.  See Docket No. 133-8.  Plaintiff's counsel offered to amend Sacha's notice of deposition if Mr. Clayborne would supply plaintiff with dates that Sacha would be in Rapid City.  Id.

On July 14, 2014, plaintiff's counsel re-noticed Sacha's deposition for August 15, 2014, in Rapid City.  See Docket No. 133-19.  On July 18, 2014, plaintiff's counsel asked Mr. Clayborne to update defendants' initial disclosures to reflect Sacha's current address, since Mr. Clayborne had represented that Sacha was now living in Chicago, Illinois.  See Docket No. 133-12.

In addition to the deposition notice, plaintiff's counsel also issued a subpoena for Sacha for his deposition, also for August 15, 2014.  See Docket No. 133-23.  Plaintiff's counsel sent the subpoena to Mr. Clayborne and asked him to admit service of the subpoena on behalf of Sacha.  Id.

On August 6, 2014, Mr. Clayborne sent plaintiff's counsel an email stating that he was "not in a position to accept" an admission of service for

Sacha's subpoena because Mr. Clayborne could not "get a hold of Sacha."  See
Docket No. 133-7.  Significantly, Mr. Clayborne did not state that he was
unable to accept service of Sacha's subpoena because he no longer represented
Sacha.  Id.  Despite stating that he could not contact Sacha, Mr. Clayborne
went on to state that Mr. Clayborne had informed Sacha of the August 15 date
for his deposition and that Sacha had responded that "he would try and keep it
open."  Id.  Plaintiff's counsel also had Sacha's subpoena served on defendant
Karim Merali at Karim's home in Rapid City and also served Sacha's subpoena
on the front desk manager at defendants' hotel.  See Docket No. 133-20.

Sacha's mother and defendant Karim's wife, Batool Merali, was deposed
on August 14, 2014.  See Docket No. 133-31.  Although she testified that she
had spoken to Sacha less than a week before her deposition, and that she and
Sacha continued to work together on renovations at defendants' hotel, she
claimed that she did not know Sacha's phone number, email address, his
residence address, where he was working, whether he was staying at a hotel or
with friends.  Id.  Batool testified that Sacha's permanent home address was
the same home address as hers and Karim's.  Id.

On August 15, plaintiff's counsel inquired via email of Mr. Clayborne at
6:47 a.m. whether Sacha was going to show up for his deposition later that
same day.  See Docket No. 133-28.  Mr. Clayborne responded "no."  Id.  Then,
for the first time in any written document before the court, Mr. Clayborne
advised plaintiff's counsel that he did not represent Sacha "in any manner
concerning this litigation."  Id.  Mr. Clayborne also stated that he had "not

7

spoken with [Sacha] in any manner about his deposition." Id.  This is, of course, in direct contradiction to Mr. Clayborne's earlier assurance given nine days earlier to plaintiff's counsel that he had spoken to Sacha about his August 15 deposition that that Sacha would "try to keep [the date] open."  Compare Docket No. 133-7 (Courtney Clayborne's August 6, 2014, email), with Docket No. 133-28 (Courtney Clayborne's August 15, 2014, email).

Sacha did not show up for his August 15, 2014, deposition.  See Docket No. 133-26.  Plaintiff's counsel then issued a second subpoena for Sacha's deposition for a new date of August 28, 2014.  See Docket No. 133-27. Because defendants had never updated their initial disclosures to indicate Sacha's current address, plaintiff's counsel sent the subpoena to Mr. Clayborne.  See Docket No. 133-27.  Sacha did not show up for his August 28 deposition either.  See Docket No. 133-29.  At the deposition, Mr. Clayborne indicated he believed that Sacha's relationship to defendant Shiba did not obligate Mr. Clayborne to attempt to contact Sacha or facilitate his deposition. Id.

On August 21, 2014, defendant Zeljka Curtullo, also by this point represented by Mr. Clayborne, filed her initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1).  See Docket No. 110.  Mr. Clayborne listed Sacha as a person with knowledge of the renovation of defendants' hotel and the Adoba brand in Curtullo's initial disclosures.  Id. at p. 2.  Mr. Clayborne listed Sacha's address as 500 Michigan Avenue in Chicago.  Id.  500 Michigan Avenue is a large, commercial office building in which 53 separate businesses

8

have offices, none of which bear the name of Sacha or his business.  See Docket No. 133-22.  Plaintiff also hired a private investigator who spent 24.75 hours trying to locate Sacha, to no avail.  See Docket No. 133-25.

On September 11, 2014, Mr. Clayborne sent plaintiff's counsel a letter indicating that the parties might attempt to depose Sacha in Chicago if they traveled to Chicago for Zeljka Curtullo's deposition.  See Docket No. 133-13.  In addition to the above-described attempts to take Sacha's deposition, plaintiff's counsel also hired a private investigator whom was unable to locate Sacha or find an address for him.  See Docket No. 133-22.

**B.     Zeljka Curtullo**

Zeljka Curtullo, now a party defendant, was not named as a party when plaintiff initiated this lawsuit.  See Docket No. 1.  Before the parties had a Rule 26(f) planning meeting or made their initial disclosures under Rule 26, plaintiff moved to amend its complaint to add Curtullo.  See Docket No. 25.  That motion was granted on October 4, 2013, with no objection by the original defendants.  See Docket No. 36.  Plaintiff's amended complaint was filed on October 9, 2013, and alleged that Curtullo began as an employee of plaintiff, but later became Sacha's girlfriend and an employee of defendant Shiba, to which she wrongfully disclosed proprietary information belonging to plaintiff. See Docket No. 37.

On October 16, 2013, plaintiff's counsel inquired of Mr. Clayborne whether he would be representing Curtullo.  See Docket No. 133-9. Mr. Clayborne orally informed plaintiff's counsel on October 24, 2013, that he

9

did not represent Curtullo.  See Docket No. 77, ¶ 5.  A process server for Cook County, Illinois, returned the complaint and summons for Curtullo unserved on December 4, 2013, indicating that Curtullo had moved from the address listed on the summons and could not be located.  See Docket No. 133-10.

Daniel Schipman testified on May 6-7, 2014, that Curtullo continued to be an employee of defendant Shiba as of that date, and that she worked on the renovation of the hotel and was in Rapid City at the hotel sporadically.  See Docket No. 133-11.  On May 23, 2014, plaintiff moved for an extension of the time allowed to serve Curtullo with the summons and amended complaint as plaintiff had not been able to find Curtullo to serve her.  See Docket No. 79. The court granted the extension, giving plaintiff until September 2, 2014, to serve Curtullo.  See Docket No. 88.  As of June 24, 2014, Curtullo was still not served.  See Docket No. 133-5.

On July 14, 2014, Curtullo was served with the summons and the amended complaint at defendants' hotel.  See Docket No. 104.  Mr. Clayborne informed plaintiff's counsel that Curtullo came in to see him on the morning of July 16, 2014, to hire Mr. Clayborne to represent her.  See Docket No. 133-12. Mr. Clayborne informed plaintiff's counsel that he was **not** representing Curtullo.  Id.  Plaintiff's counsel asked Mr. Clayborne to advise her if he did at some point undertake representation of Curtullo.  Id.  Plaintiff's counsel requested that Mr. Clayborne update his initial disclosures to indicate Curtullo's current address.  Id.  Mr. Clayborne indicated he would provide Curtullo's current address.  Id.

On August 1, 2014, Mr. Clayborne filed an answer to plaintiff's amended complaint on behalf of Curtullo.  See Docket No. 102.  On August 6, 2014, he sent an email to plaintiff's counsel stating now that he represented Curtullo, he wanted to request that the parties exchange their initial disclosures prior to Curtullo's deposition being taken.  See Docket No. 133-7.  Mr. Clayborne explained that he wanted more details about the claim against Curtullo as the amended complaint was very general.  Id.

In view of the looming discovery deadline of September 2, 2014, plaintiff's counsel served Curtullo with a notice of deposition for August 8, 2014.  See discussion on p. 2 of Docket No. 133-8.  Curtullo did not show up for her deposition; Mr. Clayborne explained that he was not even sure she knew about the plan to take her deposition because of the short notice.  Id.

On August 21, 2014, Mr. Clayborne filed initial disclosures on behalf of Curtullo, as discussed above.  See Docket No. 110.  In those initial disclosures, Mr. Clayborne listed Curtullo's address as the address for Clayborne's law firm. Id.

On September 11, 2014, Mr. Clayborne sent plaintiff's counsel a letter indicating that Curtullo was available to have her deposition taken in Chicago during the second or third week of October.  See Docket No. 133-13.  Plaintiff filed the instant motion on September 22, 2014.  See Docket No. 131.

## C.   **Batool Merali**

On March 14, 2014, plaintiff's counsel wrote Mr. Clayborne asking for dates on which Batool Merali, defendant Karim's wife, could be deposed.  See

11

Docket No. 133-1.  Another letter was sent on June 24, 2014, again asking for a date on which Batool could be deposed.  See Docket No. 133-5.

On July 8, 2014, a staff person at Mr. Clayborne's office informed a staff person at plaintiff's counsel's office that Batool was out of the state until sometime in August, and would not be available for a deposition in July.  See Docket No. 133-17.  Plaintiff states that Batool's deposition was noticed for July 15, 2014; however, the only notice of deposition and subpoena supplied in the record by plaintiff is for August 14, 2014.[4]  See Docket No. 133-31.  In any case, plaintiff's counsel offered to reschedule Batool's deposition if Mr. Clayborne would give an alternate date by 5:00 p.m. on July 9.  See Docket No. 133-18.  Batool did not show up for her deposition on July 15.

Plaintiff's counsel filed a document indicating that a private investigator confirmed Batool was physically present at her Rapid City home on July 14, 2014.  See Docket No. 133-33.  The private investigator also observed Batool at her Rapid City home on August 4, 2014.  Id.  On August 5, 2014, the investigator served Batool with a subpoena for a deposition on August 14, 2014.  Id.

Batool's deposition was taken on August 14, 2014.  See Docket No. 133-31.  She testified that she never knew a deposition had been scheduled for her on July 15.  Id.  She testified that she did not know plaintiff wanted to take her

---

[4] Even though plaintiff did not supply a copy of Batool's July 15, 2014, deposition notice, the court does not doubt one was issued.  It was marked as Exhibit 1 during Batool's deposition.  See Docket No. 133-31 at p. 5 (depo. p. 20 at lines 12-19).  The deposition exhibit was not included with Batool's deposition excerpts.  Id.

deposition until Karim told her approximately one week prior to August 14.  Id. Batool testified that she could not remember a particular date when Mr. Clayborne began representing her, but that she has "always considered him my attorney."  Id.

During Batool's deposition, she testified that she had been in contact with Courtney Clayborne directly to set up her deposition dates.  Id. at p. 2 (depo. p. 10, lines 14-16).  When plaintiff's counsel asked Batool whether she had worked with Mr. Clayborne in connection with her July deposition date or only the August deposition date (a conversation which necessarily would have predated the August 14, 2014, deposition), Mr. Clayborne objected on the basis of attorney-client privilege and instructed Batool not to answer.  Id. (depo. p. 10 at lines 17-22).  In response to this, plaintiff's counsel asked Mr. Clayborne: "Is Batool Merali your client?" and Mr. Clayborne answered "yes."  Id. (depo. p. 10 at lines 23-24).

Regarding the month of July, 2014, Batool testified that she was not supposed to be in Rapid City and was, in fact, gone from July 1 through July 13.  Id.  However, on July 13 her flight was canceled and she came home unexpectedly until she left Rapid City on July 18.  Id.  She was then gone again from July 18 through July 31.  Id.

After the deposition, Mr. Clayborne sent an email to plaintiff's counsel stating that he represented Batool only for her deposition.  See Docket No. 133-28.  He claimed that his representation began upon the service of the subpoena

13

on Batool [August 4, 2014], and that his representation would end upon Batool's review and signing of the transcript.  Id.

**D.    Plaintiff's Motion**

Plaintiff moves for an order from the court accomplishing the following:

1.    compelling Curtullo's appearance for a deposition within 30 days;

2.    compelling Sacha's appearance for a deposition within 30 days and compelling him to comply with a subpoena duces tecum for the production of documents;

3.    awarding sanctions in the form of costs and attorney's fees for the failure of Sacha, Curtullo, and Batool to appear at their earlier noticed deposition times; and

4.    sanctioning defendants by dismissing Shiba's counterclaim, prohibiting defendants from calling Sacha as their witness at trial, and allowing plaintiff to inform the jury at the trial of the events recounted above. See Docket No. 131, 132.

Defendants resist this motion in all respects.  The following is the court's decision.

## DISCUSSION

**A.    Plaintiff Has Satisfied the Meet-and-Confer Requirement**

Rule 37(a)(1) requires the parties to meet and confer to attempt to resolve discovery disputes prior to filing a motion to compel.  See Fed. R. Civ. P. 37(a)(1).  In addition, this court's local rules impose a similar requirement.  See DSD LR 37.1.  In addition to the many letters and emails plaintiff's counsel

sent to Mr. Clayborne to attempt to resolve these issues, a record was also made at the depositions where the deponent failed to show.  The court finds that plaintiff has satisfied the meet-and-confer requirement.

## B.   Initial Disclosures Under Rule 26(a)(1)

Rule 26(a)(1) states in pertinent part as follows:

> (a)(1)(A)  *In General*.  Except as exempted by [part B of the rule] or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
> * * *
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control ***and may use to support its claims or defenses***, unless the use would be solely for impeachment.

See FED. R. CIV. P. 26(a)(1)(A)(ii) (emphasis supplied).  In addition, once a party has made initial disclosures required by Rule 26(a)(1), the party is required to supplement or correct its disclosure or response in a timely manner upon learning that the disclosure or response is materially incomplete or incorrect. See FED. R. CIV. P. 26(e)(1)(A). [5]

The idea of requiring parties to voluntarily disclose documents at the inception of a lawsuit was first introduced in the Federal Rules of Civil Procedure in 1993.  At that time, the provision was made optional, and districts could choose to opt out.  The provision required parties to turn over ***all*** information in their possession in their initial disclosures if the information was "relevant to disputed facts alleged with particularity in the pleadings."

---

[5] This requirement to supplement in light of later-discovered information also applies to a party's answers to interrogatories, responses to requests for the production of documents, and responses to requests for admission.  See FED. R. CIV. P. 26(e)(1).

15

In 1997, the Federal Judicial Center surveyed districts which implemented the requirement and attorneys who practiced in those districts. Two things became evident as a result of the survey:  (1) there was "vigorous and enduring criticism" of the fact that the provision required attorneys to volunteer evidence that was harmful to their clients without being served with a discovery request for such evidence; and (2) attorneys wanted uniformity in the discovery rules from one federal district court to another.  See generally Charles A. Wright, Arthur R. Miller & Richard L. Marcus, 8A Fed. Practice & Procedure, § 2053 (3d ed. 2010) (hereinafter "Wright & Miller").

Accordingly, when Rule 26 was revised in 2000, it was made mandatory in all federal district courts, creating unanimity.  In addition, the previous rule was modified to require initial voluntary disclosure of only those materials the party doing the disclosing was going to use in support of its claims or defenses—the emphasized language quoted above in Rule 26(a)(1)(A)(ii).  Thus, the requirement that an attorney voluntarily turn over evidence that may harm his or her client without a request from the opposing party was eliminated.[6]  Id. See also FED. R. CIV. P. 26 cmts. to 2000 amendments (amendment to part (a)(1) was made to enact a nationally uniform rule and to restrict a party's voluntary disclosures to that information the party will use to support its own position).

---

[6] Also eliminated was the requirement that a matter be pleaded "with particularity" before the voluntary disclosure requirement applied.  See FED. R. CIV. P. 26 cmts. to 2000 amendment.

16

Initial disclosures are required to be signed by at least one of the party's attorneys of record.  See FED. R. CIV. P. 26(g)(1)(A).  By signing the initial disclosures, the attorney certifies that, to the best of the attorney's knowledge, information, and belief formed after a reasonable inquiry, that the disclosure is complete and correct at the time it is made.  Id.  If an attorney violates this rule without substantial justification, the court must impose an appropriate sanction on the attorney, the party on whose behalf the attorney was acting, or both.  See FED. R. CIV. P. 26(g)(3).  Sanctions may include an order to pay reasonable expenses and attorney's fees caused by the violation.  Id.

## C. General Standards Applicable to Depositions

### 1. Depositions of Parties—Rule 30

Depositions in federal actions are governed by Federal Rules of Civil Procedure 30 and 45.  If the person to be deposed is a party to the action, it is sufficient to serve on that party, as well as all other parties in the litigation, a notice in writing of the date, time and location for the deposition pursuant to Rule 30.  Peitzman v. City of Illmo, 141 F.2d 956, 960 (8th Cir. 1944); 8A Wright & Miller § 2106 at pp. 504-05.  If the person to be deposed is not a party, he or she must be subpoenaed pursuant to Rule 45.  See 8A Wright & Miller § 2106 at p. 505.

The manner in which a notice of deposition is to be served is controlled by Rule 5.  Id.  Under Rule 5, if a party is represented by an attorney, service of the deposition notice is accomplished by serving the notice on the party's attorney.  See FED. R. CIV. P. 5(b)(1).  See also Peitzman, 141 F.2d at 960-61.

17

Service may be made by handing the notice to the attorney, by leaving it at the attorney's office with a clerk or other person in charge, mailing it to the attorney's last known address, or sending it by electronic means if the attorney consented in writing to receiving electronic service.  See FED. R. CIV. P. 5(b)(2)(A) and (B).  Rule 30 is to be "liberally construed to carry out the purposes of discovery."   8A Wright & Miller §2101 at p. 434.

If the party to be deposed is a corporation, the party seeking the deposition may choose either to designate a specific individual to be deposed or, alternatively, the party may describe the subject matter of the questions to be asked and allow the corporate party to designate a representative to testify on behalf of the corporation.  See FED. R. CIV. P. 30(a) and (b)(6); Cadent Ltd. v. 3M Unitek Corp., 232 F.R.D. 625, 627-28 (C.D. Cal. 2005); United States v. Afram Lines Ltd., 159 F.R.D. 408, 413 (S.D.N.Y. 1994); Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 169 (S.D.N.Y. 1985).

If the party seeking discovery chooses to designate the subject matter of the deposition rather than name a particular deponent, then the corporation must designate a specific person to testify as to those matters listed in the Rule 30(b)(6) notice.  See FED. R. CIV. P. 30(b)(6).  The corporation is free to designate whomever it wishes; but the designation imposes on the corporation a duty to prepare that person to testify as to the matters listed in the Rule 30(b)(6) deposition notice.  See 8A Wright & Miller § 2103 at pp. 455-57.  See also Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 638 (D. Minn. 2000); Alliance for Global Justice v. District of Columbia, 437 F. Supp. 2d 32, 37

(D.D.C. 2006).  Further, a corporation may not rely on the documents it produced in discovery because "[p]roducing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent."  Great American Ins. Co. of New York v. Vegas Constr. Co., 251 F.R.D. 534, 541 (D. Nev. 2008).  Refusal or failure by the corporation to prepare its designee to testify to the matters listed in the Rule 30(b)(6) deposition notice invites court-ordered sanctions.  See 8A Wright & Miller § 2103 at pp. 464-66.

If the party seeking discovery chooses to name a particular corporate person to depose, that person must be "an officer, director, or managing agent" of the corporate party in order to command that person's appearance via a notice of deposition served on the corporate party's attorney.  Afram Lines Ltd., 159 F.R.D. at 413; Sugarhill Records Ltd., 105 F.R.D. at 169.  See also 8A Wright & Miller § 2103 at p. 479.  Sanctions apply against the corporation if the deponent fails to show for his deposition in accordance with the notice. See 8A Wright & Miller § 2103 at pp. 479-80; § 2107 at p. 507-08.  See also FED. R. CIV. P. 37(d)(1)(A)(i) (stating that "the court . . . may . . . order sanctions if . . . a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition.").  Possible sanctions include dismissal of the action, or entry of a default judgment.  8A Wright & Miller § 2103 at pp. 479-80.  Rule 32(a)(3) allows an adverse party to introduce into evidence against the corporation any deposition of a person who was an officer, director,

managing agent, or Rule 30(b)(6) designee of the corporation at the time the deposition was taken.  See FED. R. CIV. P. 32(a)(3).  If the person selected for deposition is not an "officer, director, or managing agent," then the party seeking discovery must subpoena that deponent just as with any nonparty. Afram Lines Ltd., 159 F.R.D. at 413; Sugarhill Records Ltd., 105 F.R.D. at 169.

Who is an "officer" or "director" of a corporation is pretty straightforward. Who is a "managing agent" is generally answered pragmatically by examining whether the person has general powers to exercise discretion and judgment as to corporate matters, whether he can be depended upon to carry out the corporation's direction and to give testimony at the demand of the corporation, and whether he identifies with the interests of the corporation instead of the adverse party in the litigation.  See 8A Wright & Miller § 2103 at pp. 480-81.

Depositions may be recorded by audio, audio-visual, or stenographic means.  See FED. R. CIV. P. 30(b)(3)(A).  Also, the parties may stipulate—or the court may order—that a deposition be taken by telephone or other remote means.  See FED. R. CIV. P. 30(b)(4).

A party wishing to depose another party may select the place for the deposition wherever he or she wishes; if the party to be deposed objects to the location, he or she may move for a protective order from the court asking the court to designate another place.  See FED. R. CIV. P. 26(c)(1)(b).  See also 8A Wright & Miller § 2112 at p. 523; Cadent Ltd., 232 F.R.D. at 628.  A motion to change the location of a deposition must be seasonably made and a party who has failed to appear for a deposition cannot move to change the location after

the fact.  Id.  A deposition of a party corporation by its officers and agents should ordinarily take place where the corporation has its principal place of business.  Id. at p. 533.

A party must give "reasonable written notice" of the taking of a deposition, but the time period deemed "reasonable" is highly fact-specific: notice of one day has been approved in some cases, while two days' notice was deemed unreasonable in other cases without some showing of a need for haste. See 8A Wright & Miller § 2111 at pp. 519-20.

### 2.    Depositions of Nonparties—Rule 45

In order to depose a nonparty, the party seeking to take a deposition must serve the nonparty with a subpoena by delivering a copy to the named person.  See FED. R. CIV. P. 45(b)(1).  Such service may be accomplished by anyone over the age of 18 who is not a party to the action.  Id.  Service of a subpoena requires personal service; it is not sufficient to leave a copy of the subpoena at the witness' home nor can a subpoena be served by serving the witness' lawyer.  See 9A Wright & Miller § 2454 at pp. 397-98.

An emerging minority rule has deemed service of a subpoena adequate absent personal service, however.  Id. at pp. 399-400.  For example, the Seventh Circuit approved service of a subpoena on a state agency where the subpoena was served by certified mail.  See Ott v. City of Milwaukee, 682 F.3d 552, 557 (7th Cir. 2012).  In Firefighter's Institute for Racial Equality ex rel. Anderson v. City of St. Louis, 220 F.3d 898, 903 (8th Cir. 2000), the Eighth Circuit held that the method of service of a subpoena "needs to be one that will

21

ensure the subpoena is placed in the actual possession or control of the person to be served."  The court conceded that Rule 45 may allow service in some way other than personal delivery of a subpoena, but held that service by fax or regular mail was insufficient because there was no assurance that delivery occurred.  Id.

When a subpoena for a deposition is served, it must be accompanied by money sufficient to pay the witness for one day's attendance and allowable mileage.  See FED. R. CIV. P. 45(b)(1).  Subpoenas may be served anywhere in the United States, but a nonparty may only be compelled to attend a deposition within 100 miles of where the nonparty resides, is employed, or regularly transacts business in person.  See FED. R. CIV. P. 45(c)(1)(A).  An officer of a party may be compelled to attend a deposition within the state where the officer resides, is employed, or regularly transacts business in person.  See FED. R. CIV. P. 45(c)(1)(B)(i).  A nonparty properly served with a subpoena who fails to show up for his or her deposition can be punished by contempt sanctions.  See FED. R. CIV. P. 45(g).

**D.     Plaintiff's Motion**

**1.     Sacha Merali**

Plaintiff attempted to take Sacha Merali's deposition on three occasions: July 10, 2014; August 15, 2014; and August 28, 2014.  On each of these occasions a deposition notice was issued, and also a subpoena.  As described above, Sacha did not appear for any of the three dates.

As to the subpoenas issued for Sacha, plaintiff never personally served those subpoenas.  The subpoenas were served personally on Sacha's father, defendant Karim, at Karim's Rapid City home; sent to Mr. Clayborne with a request that Mr. Clayborne accept service of the subpoena on behalf of Sacha, a request Mr. Clayborne declined without ever revealing that he was not Sacha's lawyer; and served on the front desk clerk at defendants' hotel.

None of these attempts at serving Sacha's subpoena satisfied Rule 45. None of the attempts involved actual personal service of the subpoena on Sacha.  Furthermore, even though the Eighth Circuit has hinted that it might accept some method of service other than personal service, whatever method of service is used, the service "needs to be one that will ensure the subpoena is placed in the actual possession or control of the person to be served." Firefighter's Institute for Racial Equality, 220 F.3d at 903.  Here, unlike sending a subpoena by certified mail return receipt requested, as approved in the Seventh Circuit case (see Ott, 682 F.3d at 557), there was nothing in plaintiff's method of service that holds assurance for the court that Sacha ever actually received the subpoenas.[7]

Therefore, if sanctions are available, the only vehicle must be through the service of the notice of depositions on attorney Courtney Clayborne.  The court finds two reasons for granting plaintiff's motion for sanctions as to

---

[7] Because plaintiff never properly served the subpoenas on Sacha, the court declines to grant plaintiff's motion to compel production of documents pursuant to the subpoena *duces tecum* directed to Sacha.

Sacha:  (1) Mr. Clayborne's representation that he represented Sacha and (2) Sacha's relationship to defendant Shiba as a managing agent.

### a.   Mr. Clayborne's Representation that He was Sacha's Lawyer

Prior to this lawsuit being filed, Mr. Clayborne was representing Sacha Merali in state court litigation involving plaintiff.  See Docket No. 133-36. When Mr. Clayborne filed his initial disclosures on behalf of defendants in this case some seven months later, Mr. Clayborne represented that he was still Sacha's lawyer, indicating that plaintiff should only contact Sacha "through counsel."  See Docket No. 133-14.  Further, Mr. Clayborne failed to give Sacha's address in defendants' initial disclosures, instead giving only the address of defendants' hotel.  Id.

South Dakota's Rules of Professional Conduct provide that "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."  See SD Rules Prof. Conduct, Rule 4.2.  The comments to Rule 4.2 make clear that in the case of a corporation that is represented by counsel, opposing counsel may not communicate with any constituent of the corporation "who supervises, directs or regularly consults with the [corporation's] lawyer concerning the matter or has authority to obligate the [corporation] with respect to the matter or whose act or omission in connection with the matter may be imputed to the [corporation] for purposes of civil . . .

24

liability." See cmt. 7.  Thus, based on Mr. Clayborne's assertion of an attorney-client relationship with Sacha, plaintiff's counsel was not free to contact Sacha.

Mr. Clayborne asserts in the present motion that his attorney-client relationship with Sacha ended when the state court action was dismissed in July, 2013, and enough time had passed that it became evident that plaintiff was not going to appeal that decision nor bring an arbitration action.  See Docket No. 144 at pp. 2-3.  There are two problems with this assertion.

First, Mr. Clayborne filed his initial disclosures on December 30, 2013, five months after the dismissal of the state court action.  The time for appealing from the state court's dismissal was 30 days.  See SDCL § 15-26A-6. Therefore, plaintiff's notice of appeal would have had to been filed no later than August 31, 2013.  Id.  Mr. Clayborne never explains why, four months later, he was still claiming in defendants' initial disclosures to be Sacha's lawyer.

In addition, giving Mr. Clayborne the benefit of the doubt, even if one assumes that his attorney-client relationship with Sacha ended after Clayborne filed his initial disclosures, he was under a duty to update those disclosures. See FED. R. CIV. P. 26(e)(1)(A).  Even though plaintiff's counsel repeatedly requested Mr. Clayborne to update defendants' initial disclosures, he never did. This left plaintiff's counsel with the continuing belief that Mr. Clayborne represented Sacha.  Plaintiff's counsel would not, under these circumstances, contact Sacha.  Mr. Clayborne's failure to update defendants' initial disclosures also deprived plaintiff of Sacha's real address.  Mr. Clayborne, by signing the initial disclosures, attested to their truthfulness.  See FED. R. CIV. P. 26(g)(1)(A).

Furthermore, the court finds evidence that Mr. Clayborne intended to continue to have plaintiff's counsel believe—erroneously or not--that he represented Sacha.  In the response to this motion, Mr. Clayborne states that he told plaintiff's counsel "repeatedly" that he did not represent Sacha.  The documents on file tell a different story.

The court has examined the documents in the record and finds no support for this assertion.  The first document in the record in which Mr. Clayborne finally stated that he did not represent Sacha was on August 15, 2014, after plaintiff had expended months of effort trying to secure Sacha's deposition.  See Docket No. 133-28.  There were several opportunities prior to August 15 where it would have been natural for Mr. Clayborne to tell plaintiff that he no longer represented Sacha.  See e.g. Docket No. 133-7.  That Mr. Clayborne failed to tell plaintiff this fact at any time before August 15 leads the court to the inescapable conclusion that he was attempting to mislead plaintiff in order to obstruct discovery.  For this reason alone, the court would find sanctions available regarding Sacha's depositions up to August 15, 2014.  However, Sacha's relationship to defendant Shiba provides an alternative basis upon which sanctions are available.

### b.      Sacha was an Officer, Director or Managing Agent

As discussed above, where a corporation is a party, a notice of deposition is sufficient to require the corporation to produce its officers, directors, and managing agents for depositions.  See Calderon v. Experian Information Solutions, Inc., 287 F.R.D. 629, 631 (D. Idaho 2012) (citing Sugarhill Records

26

Ltd. V. Motown Record Corp., 105 F.R.D. 166, 169 (S.D.N.Y. 1985).   See 8A
Wright & Miller § 2103 at pp. 479-80; § 2107 at p. 507-08.   See also FED. R.
CIV. P. 37(d)(1)(A)(i) (stating that "the court . . . may . . . order sanctions if . . . a
party's officer, director, or managing agent . . . fails, after being served with
proper notice, to appear for that person's deposition.").   See FED. R. CIV. P.
32(a)(3) (allowing adverse party to introduce against a corporate party a
deposition of the corporation's officer, director, or managing agent).   See
Cadent Ltd., 232 F.R.D. at 627 n.1 (stating that "it is **well recognized** that 'if
the corporation is a party, the notice compels it to produce any "officer, director
or managing agent" named in the deposition notice.' ") (emphasis supplied,
citation omitted).   Here, Mr. Clayborne was served with three notices for
Sacha's deposition and Sacha appeared at none of those depositions.

Plaintiff asserts that Shiba, a closely-held company owned by only five
family members, has no formal organizational structure, no officers, and no
directors.   Accordingly, the court turns to the question whether Sacha is a
"managing agent" of defendant Shiba.

Courts around the country generally have made reference to four factors
in determining whether a person is a corporation's managing agent:

1. Whether the person has general powers allowing him to exercise
   judgment and discretion in corporate matters.

2. Whether the person can be relied upon to give testimony in response to
   the corporation's request in response to the demand of an adverse party.

3. Whether any person is employed by the corporation in positions of higher authority in the area to be inquired into in the deposition.

4. The person's general responsibilities as to the matters involved in the litigation.

See Angiodynamics, Inc. v. Biolitec AG, 991 F. Supp. 2d 283, 295 (D. Mass. 2014); Calderon, 287 F.R.D. at 632 (citing Sugarhill Records, 105 F.R.D. at 170; E.I. DuPont de Nemours & Co. v. Kolon Indus., 268 F.R.D. 45, 48-49 (E.D. Va. 2010); Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 n.4 (D.C. Cir. 1986); United States v. Afram Lines, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).  See also 8A Wright & Miller § 2103.

The question of who is a managing agent is highly fact-specific and so it is to be answered "pragmatically" on an "ad hoc" basis.  Calderon, 287 F.R.D. at 632; Afram Lines, 159 F.R.D. at 413; 8A Wright & Miller § 2103.  The paramount factor is whether the witness is likely to identify with the interests of the corporation.  Calderon, 287 F.R.D. at 632; Kolon Indus., 268 F.R.D. at 49.

The burden is on the party seeking the deposition to show that the witness is a managing agent, but the burden is a "modest" one and all doubts are resolved in favor of the party seeking the deposition.  Calderon, 287 F.R.D. at 633; Afram Lines, 159 F.R.D. at 413-14; Sugarhill Records, 105 F.R.D. at 170.  Where the question is whether discovery should proceed via notice alone, "the examining party has the burden of providing enough evidence to show that

there is at least a close question whether the proposed deponent is a managing agent." Afram Lines, 159 F.R.D. at 413.  This rule makes sense as the corporation which is resisting the discovery has a superior access to the facts as to the witness' status within the corporation.  Calderon, 287 F.R.D. at 633. If the question is a close one, the deposition should go forward and questions as to whether the corporation will be bound by the witness' testimony can be left for trial.  Angiodynamics, Inc., 991 F. Supp. 2d at 295-96; Calderon, 287 F.R.D. at 633; Sugarhill Records, 105 F.R.D. at 171.

Even lower-level employees may qualify as managing agents for purposes of the rules of discovery where those employees' "duties and activities are closely linked with the events giving rise to the lawsuit." Calderon, 287 F.R.D. at 633.  See also Afram Lines, 159 F.R.D. at 413; Tomingas v. Douglas Aircraft, 45 F.R.D. 94, 96-97 (S.D.N.Y. 1968) (finding a company's engineers to be managing agents because they investigated an airplane crash, the subject of the litigation); Kolb v. A.H. Bull Steamship Co., 31 F.R.D. 252, 254 (E.D.N.Y. 1962) (finding employee who received bids for corporation's bridge and could authorize work under the contract was a managing agent in a lawsuit about allegedly faulty bridge work).

In the Calderon case, the court found that credit reporting defendant Experian's Chilean employees who worked on plaintiff's requests to correct his credit report were "managing agents" for purposes of the deposition rules, even though they were "entry level" employees.  Calderon, 287 F.R.D. at 634.  The court stressed that it is not the title or status of the witness that is important,

but rather "his or her duties and responsibilities respecting the subject matter of the litigation that is important."  Id.

In the Afram Lines case, the court found defendant's port agents not to be "managing agents" because the port agents worked not only for defendant, but also for other shipping lines, and because the port agents no longer had any connection to defendant at the time their depositions were sought.  Afram Lines, 159 F.R.D. at 415.

In the Sugarhill Records case, plaintiff Sugarhill had an exclusive agreement with seven music artists whereby those artists agreed they would not make records for anyone other than Sugarhill.  Sugarhill Records Ltd., 105 F.R.D. at 168.  Defendant Motown Record Corp. cut an album with Rick James on which some of the seven artists made guest vocal appearances.  Id.  Motown asserted that its employee, Brenda Boyce, a Director of Creative Administration, had obtained telephonic consent from Sugarhill for the appearance of the Sugarhill artists on the James/Motown album—a "side-man" contract.  Id. at 168.  Sugarhill served Motown with a notice of deposition for Boyce's deposition.  Id. at 169.  Motown moved to vacate the notice, characterizing Boyce as a mere "employee" and arguing that she was not an officer, director or managing agent.  Id. at 169-70.  Boyce's duties included responsibility for securing "side-man" contracts with other recording companies, including the ones at issue in the case.  Id. at 170.  The court found Boyce to be Motown's managing agent:  she identified with Motown's interests, she was the sole Motown employee involved in and knowledgeable

about the side-man contracts in this case, she had authority to enter into contract on behalf of Motown, and she had certain judgment and discretion in the processing of the record album.  Id. at 171.

Defendants assert in response to plaintiff's motion that Sacha is not an officer, director or managing agent, but rather an "independent contractor" who was hired just for the hotel renovations.  See Docket No. 144 at p. 2.  This ignores the fact that Sacha was previously an employee of defendant as a front desk clerk.  See Docket No. 133-11 at p. 2.  It also ignores the reality of other facts herein:  "independent contractors" do not typically sign checks on the operating account of their principals (see Docket No. 133-32), nor do they typically take part in meetings with accountants to go over the financial details of their principals (see Docket No. 86 at 47, 52-53), or enter into contracts with vendors on behalf of their principals (see Docket No. 69 at 49).   Finally, independent contractors are not usually one of five owners of their principals with a significant ownership interest in their principals.  See Docket No. 100-2 at p.2.

Plaintiff has adduced facts that Sacha was involved in the negotiations of the licensing agreement and operating agreement at the inception of the parties' contractual relationship and that he was in charge of the renovation of the defendants' hotel to meet Adoba standards.  See Docket No. 69 at pp. 13-14, 19, 23-25; Docket No. 100-2 at p. 3; Docket No. 133-11; and Docket No. 133-31 at p.6.  He is the son of defendant Karim Merali, a 48 percent owner of defendant Shiba.  And, perhaps most telling of all, one of only two persons (the

other is Karim) whom Shiba identified in its initial disclosures as having information relevant to Shiba's claims and defenses. See Docket No. 133-14. Given these facts, the court has no trouble concluding that Sacha Merali is a "managing agent" of defendant Shiba. He exercised discretion and judgment on behalf of Shiba, he can be relied upon to give testimony when summoned by Shiba to do so, he identifies with Shiba's interests, and the subject matter of the duties he carried out for Shiba—entering into the Adoba contracts and carrying out the Adoba renovations—are subjects that are squarely at the center of the disputes at issue in this case. Shiba was under an obligation to produce Sacha for deposition upon receiving each of the three deposition notices served on Shiba through its attorney, Courtney Clayborne.

Depositions of corporations are generally to take place where the corporation has its principal place of business. Cadent Ltd., 232 F.R.D. at 628; Sugarhill Records, 105 F.R.D. at 171. Here, the principal place of business for Shiba is Rapid City, South Dakota. Because Sacha is Shiba's managing agent, the deposition of Sacha is a deposition of Shiba. Accordingly, it is appropriate that Sacha's deposition take place in Rapid City. In the alternative, if Shiba wishes Sacha to be deposed in Chicago (or elsewhere), it may do so if it agrees to pay airfare and hotel costs of plaintiff and plaintiff's counsel. Sugarhill Records, 105 F.R.D. at 172.

### 2.    Zeljka Curtullo

There is no evidence in the record that Mr. Clayborne represented Zeljka Curtullo prior to the time she was served with plaintiff's amended complaint on

July 14, 2014.  Indeed, the only evidence in the record supports Mr. Clayborne's assertion that he began to represent Curtullo shortly before he filed an answer on her behalf on August 1, 2014.  As such, the difficulties plaintiff experienced in trying to locate and serve Curtullo prior to July 14, 2014, cannot be laid at Mr. Clayborne's feet.  No attorney-client relationship existed during the period from October, 2013 until July, 2014.

Neither did Rule 26 impose on defendants an obligation to give Curtullo's address to plaintiff, if defendants knew that address.  Defendants did not list Curtullo in their initial disclosures as a person with relevant information. Remembering that Rule 26(a)(1) only requires the voluntary disclosure of information that defendants intended to use to support *their* claims or defenses, one must infer that defendants did not plan on calling Curtullo as a witness to support their position.  Therefore, there was no skullduggery afoot in defendants' or Mr. Clayborne's failure to assist plaintiff in finding and serving Curtullo with process in this case.

As to the deposition plaintiff scheduled for Curtullo, the method plaintiff used to attempt to secure Curtullo's attendance was by serving Mr. Clayborne with a notice of deposition.  This was done on July 22, 2014, eight days after Curtullo was served with the summons and amended complaint and eight days prior to her answer being filed.

A notice of deposition was the proper way to obligate Curtullo, a party, to attend a deposition.  See FED. R. CIV. P. 5 and 30.  However, Curtullo's

objection to the deposition was not to the method of giving her notice of the deposition, but rather, to the timing of the deposition.

Mr. Clayborne expressed his position in an August 6, 2014, email to plaintiff's counsel, that he did not want to have Curtullo deposed until after the parties had exchanged their initial disclosures required by Rule 26(a)(1).  See Docket No. 133-7.  Mr. Clayborne stated that the allegations in plaintiff's amended complaint against Curtullo were very general and that he wanted to have further details before Curtullo was deposed.  Id.  Plaintiff apparently refused to change the noticed date of Curtullo's deposition.

At this point, Mr. Clayborne could have and should have moved to quash or vacate the deposition notice pursuant to Rule 26(c).  He failed to do so.

Rule 26 sets rules for the timing and sequence of discovery.  For parties who are part of the lawsuit from its inception, there is a moratorium on discovery until after the parties have held their planning conference required by Rule 26(f).  See FED. R. CIV. P. 26(d)(1).  An exception to this rule is made for the types of cases that are exempted from the requirement of making initial disclosures.  Id.  In exempt cases, parties may begin serving each other with discovery requests immediately.  This litigation does not fall within any of the exemptions.  See FED. R. CIV. P. 26(a)(1)(B).

For parties who are in the lawsuit from its inception, the initial disclosures required by Rule 26(a)(1) are to be exchanged within 14 days after the planning conference has been held.  See FED. R. CIV. P. 26(a)(1)(C).  Parties who are added to the lawsuit at some later date are required to exchange the

Rule 26(a)(1) initial disclosures within 30 days after the date they are served with process or joined.  See FED. R. CIV. P. 26(a)(1)(D).  Except for the moratorium on discovery described in Rule 26(d)(1), "methods of discovery may be used in any sequence" and "discovery by one party does not require any other party to delay its discovery."  See FED. R. CIV. P. 26(d)(2).

Perhaps Mr. Clayborne inferred from reading part (a)(1)(D) together with part (d)(1) of Rule 26 that a later-added party may not be served with discovery requests until after initial disclosures have been exchanged—i.e. 30 days after the later-added party was served.  In Curtullo's case, that would have been August 13, 2014.  However, even assuming that this was Mr. Clayborne's reasoning, this position is not supported by the law.

The discovery moratorium under Rule 26(d)(1) is tied to the holding of the parties' planning conference required by Rule 26(f).  See FED. R. CIV. P. 26(d)(1).  The rule does not require a second planning meeting to be held when later parties are added.  See FED. R. CIV. P. 26(f).  Thus, the discovery moratorium does not apply to later-added parties.  See Infosystems, Inc. v. Ceridian Corp., 197 F.R.D. 303, 307-08 (E.D. Mich. 2000); Steppes Apartment, Ltc. v. Armstrong, 188 F.R.D. 642, 643 (D. Utah 1999).

A party must give "reasonable written notice" of the taking of a deposition, but the time period deemed "reasonable" is highly fact-specific: notice of one day has been approved in some cases, while two days' notice was deemed unreasonable in other cases without some showing of a need for haste. See 8A Wright & Miller § 2111 at pp. 519-20.  Here, plaintiff served the

deposition notice on July 22, which was two and a half weeks before the deposition date.  In light of the then-looming September 2 discovery deadline, two and a half weeks did not constitute unreasonable notice of the deposition.

If Mr. Clayborne wished to have Curtullo's deposition taken after initial disclosures had been exchanged, there was a ready remedy available:  he could have moved the court to quash or vacate the deposition notice pursuant to Rule 26(c).  See FED. R. CIV. P. 26(c)(1)(b).  See also 8A Wright & Miller § 2112 at p. 523.  Such a motion must be seasonably made and a party who has failed to appear for a deposition cannot move to quash it or for the court's protection after the fact.  Id.  The court finds that Curtullo's failure to appear at her duly-notice deposition and the failure to move prior to that deposition to quash or delay the deposition constitutes grounds for sanctions.

Mr. Clayborne expressed the certitude that plaintiff was required to take Curtullo's deposition in Chicago, where Curtullo lives, instead of Rapid City where the action is venued.  Again, Mr. Clayborne is mistaken.   A party wishing to depose another party may select the place for the deposition wherever he or she wishes; if the party to be deposed objects to the location, he or she may move for a protective order from the court asking the court to designate another place.  See FED. R. CIV. P. 26(c)(1)(b).  See also 8A Wright & Miller § 2112 at p. 523.  Only nonparties are entitled to special blanket consideration as to location of their depositions.  See FED. R. CIV. P. 45.

As with the timing of Curtullo's deposition, it was incumbent upon Mr. Clayborne to move the court *prior* to the deposition if he felt Rapid City was

an unduly burdensome location for his client's deposition.  See FED. R. CIV. P.
26(c).  The court notes that the record is replete with testimony that Curtullo
travels to Rapid City frequently to work on the renovations at defendants' hotel,
that she stays at defendant Karim's Rapid City home frequently, that she drives
Karim's family's vehicles, and that she was served with the summons and
amended complaint in Rapid City at defendants' hotel.  See Docket Nos. 104,
133-11, and 133-31.  Courts enjoy great discretion when designating the
location of a deposition pursuant to Rule 26(c).  See Thompson v. Sun Oil Co.,
523 F.2d 647, 648 (8th Cir. 1975); Archer Daniels Midland Co. v. Aon Risk
Servs., Inc., 187 F.R.D. 578, 588 (D. Minn. 1999).  The court would certainly
not venture the opinion that traveling to Rapid City for a deposition was
presumptively unduly burdensome on Curtullo.  The court will grant plaintiff's
motion to compel and plaintiff's motions for sanctions as further detailed in the
"Conclusion" section of this opinion.

### 3.    Batool Merali

There are no grounds for sanctioning either Batool Merali or
Mr. Clayborne in connection with Batool's missed deposition on July 15, 2014.
Batool is not a party to this litigation and, unlike her son Sacha, there is no
evidence that she is an officer, director or managing agent for defendant Shiba.
Although she apparently offered her opinions as to the ongoing renovations of
defendants' hotel headed up by Sacha, she was not present nor did she
participate in any key decision-making regarding the agreements between the
parties in this case or financial matters.  She never signed checks on behalf of

37

Shiba, she did not oversee its accounting, she did not enter into contracts on behalf of Shiba, and she owns no ownership interest in Shiba.

As a nonparty who is not an officer, director, or managing agent of the corporation, Batool was required to be served by a subpoena in order to secure her attendance at a deposition.  She was served with a subpoena only once—on August 5, 2014, for a deposition that was set for August 14, 2014.  She duly attended that deposition in accordance with her subpoena.

Plaintiff claims that Mr. Clayborne was Batool's attorney and, therefore, should have secured Batool's attendance at the July 15, 2014, deposition for which a mere notice of deposition was issued.  Reading Batool's testimony in context, it is clear that she considered Mr. Clayborne generally to be her attorney.  But even if Batool consulted Clayborne on estate planning matters in the past, or even if Clayborne represented Batool in litigation in the past, this would not have created an attorney-client relationship between Batool and Clayborne for the purposes of this specific litigation.  The court takes Mr. Clayborne at his word when he states that he represented her only for her deposition and that that representation began upon service of the subpoena on Batool on August 5.

Plaintiff points out that Mr. Clayborne interposed an objection based on attorney-client privilege when Batool was asked about conversations with Mr. Clayborne prior to the deposition.  However, this does not disprove Mr. Clayborne's assertion of the time frame of his representation:  he freely admits that he began representing Batool nine days prior to her deposition

38

when she was served with a subpoena.  It is entirely normal and anticipated
that he would have spoken with her during that nine days about her
deposition.  The assertion of the attorney-client privilege to shield these pre-
deposition discussions does not create an inference that Mr. Clayborne was, in
fact, representing Batool in July when her deposition was first noticed.

In any event, even if Mr. Clayborne did represent Batool prior to July 15,
a notice of deposition was insufficient to secure her attendance at the
deposition.   She was required to be subpoenaed because she was a nonparty
and the record is devoid of any evidence that plaintiff served Batool with a
subpoena prior to July 15.   The court rejects plaintiff's requests for sanctions
in connection with Batool Merali's planned July 15 deposition.

**E.    Types of Sanctions and Identity of the Person to Be Sanctioned**

Plaintiff has requested several types of sanctions—chiefly that the
depositions of Sacha and Curtullo be ordered.  It also asks that it be
reimbursed for its costs and attorneys fees in pursuing and attending the
depositions of Sacha and Curtullo that failed to take place.  Plaintiff also seeks
the dismissal of defendants' counterclaim against it.  It asks the court for an
order prohibiting defendants from calling Sacha as their witness at trial.
Finally, plaintiff asks that it be given permission to inform the court of
defendants' discovery abuses at the trial in this matter.

In deciding whether to grant sanctions and the type of sanctions, the
court considers (1) the severity of the violation, (2) the legitimacy of the party's
excuse for failing to comply, (3) whether the violations have been repeated,

(4) the deliberateness of the misconduct, (5) any mitigating excuses,

(6) prejudice to the plaintiff and to the operations of the court, and (7) the

adequacy of lesser sanctions.  <u>Angiodynamics, Inc.</u>, 991 F. Supp. 2d at 290.

Here, this case is replete with evidence of defendants' obdurate and

continual obstruction of discovery.  Defendants first stonewalled nearly all

efforts by plaintiff to obtain discovery on an erroneous legal position that the

"law of the case" resulted in the elimination of most of plaintiff's claims.

Defendants did not abandon this position until disabused of the legal support

for the position by the district court in a hearing on plaintiff's motion to

compel.  <u>See</u> Docket No. 169 at p. 13-15.

Next, Mr. Clayborne stymied efforts to depose Sacha by not giving

plaintiff Sacha's correct address and by deliberately leaving plaintiff with the

impression that he continued to represent Sacha as his lawyer.  Defendants

further stymied efforts to depose Sacha by refusing to recognize the law that

corporations must produce their managing agents for depositions upon service

of a notice of deposition.  Defendants' actions are the more egregious because

they took no steps to vacate, quash, or obtain a protection order for the

depositions of Sacha or Curtullo when Mr. Clayborne was fully aware that

neither person was going to show up for their duly notice deposition.

However, much of this damage can be remedied by the ordering of

monetary sanctions and an order compelling defendants to produce Sacha and

Curtullo for depositions.  The prejudice to plaintiff, once these reparations are

made, is minimal.  The court, therefore, leaves for another day and for the

district court the decision of whether, ultimately, the sanctions of dismissal of defendants' counterclaim, prohibiting defendants from calling Sacha as a witness, or telling the jury about defendants' discovery abuses is appropriate.

## CONCLUSION

Plaintiff's motion to compel [Docket No. 131] is granted in part and denied in part as set forth below:

1. As to **Sacha Merali** it is hereby ORDERED:

    a. that **defendants** produce Sacha in Rapid City, South Dakota, for a deposition within the next 30 days at a date and time mutually convenient to  both parties;

    b. that **defendants and attorney Courtney Clayborne** pay monetary sanctions in an amount to be determined to plaintiff for plaintiff's costs and attorney's fees in connection with all attempts to locate, serve, and otherwise secure Sacha's attendance at the three failed depositions.  The total of these costs are to be split evenly between defendants and Courtney Clayborne personally.

    c. that **defendants** pay monetary sanctions in an amount to be determined to plaintiff for plaintiff's costs and attorney's fees incurred for the filing of this motion.

    d. that **plaintiff's** request for further sanctions as to Sacha Merali are DENIED.

2. As to **Zeljka Curtullo** it is hereby ORDERED:

a. that **Zeljka Curtullo** appear in Rapid City, South Dakota, for a deposition within the next 30 days at a date and time mutually convenient to both parties;

b. that **defendant Zeljka Curtullo and attorney Courtney Clayborne** pay monetary sanctions in an amount to be determined to plaintiff for plaintiff's costs and attorney's fees in connection the failure of Curtullo to appear at her duly noticed August 8, 2014, deposition. The total of these costs are to be split evenly between defendant Curtullo and Courtney Clayborne personally.

c. that **defendant Zeljka Curtullo** pay monetary sanctions in an amount to be determined to plaintiff for plaintiff's costs and attorney's fees incurred for the filing of this motion.

d. that **plaintiff's** other requests for sanctions for locating Zeljka Curtullo and serving her with plaintiff's amended complaint and summons is DENIED.

3. As to **Batool Merali** it is hereby ORDERED that plaintiff's motion for sanctions is DENIED.

_____

Within 21 days following the filing of this order, plaintiff shall submit a motion and supporting documentation, to include an affidavit of counsel, for all monetary sanctions awarded above. Defendants may have 14 days thereafter to respond to plaintiff's request. Plaintiff will then have 14 days thereafter to file a reply, if any is desired.

DATED this 9th day of January, 2015.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge