UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ATMOSPHERE HOSPITALITY MANAGEMENT, LLC,<br><br>        Plaintiff,<br><br>  vs.<br><br>ZELJKA CURTULLO,<br><br>        Defendant,<br><br>and<br><br>SHIBA INVESTMENTS, INC. and KARIM MERALI,<br><br>        Defendants and Third-Party Plaintiffs,<br><br>  vs.<br><br>JAMES HENDERSON,<br><br>        Third-Party Defendant. | 5:13-CV-05040-KES<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**<br><br>[DOCKET NO. 141] |

## INTRODUCTION

This matter is before the court on plaintiff Atmosphere Hospitality Management, LLC's complaint, filed pursuant to the court's diversity jurisdiction, 28 U.S.C. § 1332.  Now pending is a motion for a protective order, Docket No. 141, also filed by Atmosphere.  The district court, the Honorable Karen E. Schreier, referred this motion to this magistrate judge for decision.  See Docket No. 165

**FACTS**

The general background of the facts of this litigation and the identity of the parties is set forth in this court's recent opinion filed at the court's Docket No. 168.  That statement of facts is incorporated by reference herein.  The hyphenated version is that plaintiff and defendants, Karim Merali and Shiba Investments, Inc., entered into two agreements, a licensing agreement and an operating agreement.[1]  Under the former, plaintiff granted defendants the right to use plaintiff's "Adoba" brand for defendants' hotel in Rapid City, South Dakota.  Under the latter, plaintiff undertook to operate defendants' hotel under the "Adoba" brand.  Litigation ensued after defendants unilaterally terminated both agreements in April, 2013.  Zeljka Curtullo is a defendant who was added to the lawsuit later.

On September 3, 2014, defendants served plaintiff with their third set of discovery requests consisting of, *inter alia*, eleven interrogatories and fifteen requests for the production of documents.  Initially, plaintiff objected to answering the interrogatories as they were above the maximum limit of 25 interrogatories set by the district court in this case.  See Docket No. 55.  However, after filing the initial motion but before filing its reply brief, plaintiff provided answers to those interrogatories to defendants.  See Docket No. 160 at p. 2.  The court finds the issue of the interrogatories to now be moot and will not discuss that issue further.

---

[1] Defendant Karim Merali is a 48 percent owner of defendant Shiba Investments, Inc.  See Docket No. 100-2 at p. 2.

Believing that many of the requests for documents called for proprietary information, plaintiff's counsel wrote to defendants' counsel on September 8, 2014. See Docket No. 143-4. In that letter, plaintiff inquired whether defendants were agreeable to entering into a confidentiality agreement. Id. at p. 3. If so, plaintiff's counsel stated that she would draft a confidentiality agreement and send it to defense counsel for his review. Id. Plaintiff received no response to this inquiry.

On October 2, 2014, plaintiff's counsel sent another letter to defense counsel, this time enclosing a proposed confidentiality agreement. See Docket No. 143-5. Plaintiff indicated that if defendants would sign the agreement, the discovery could be turned over the next day. Id. Again, plaintiff received no response to this inquiry.

On October 3, 2014, plaintiff's counsel sent a letter along with plaintiff's responses to defendants' third set of requests for admission. See Docket No. 143-6. Again, plaintiff's counsel inquired about the matter of whether defendants would agree to enter into a confidentiality agreement for the protection of plaintiff's proprietary information. Id.

On October 6, 2014, plaintiff produced documents in response to defendants' third set of requests for the production of documents, but withheld three documents it deemed proprietary. See Docket No. 143-7. Plaintiff again inquired, in writing, about whether defendants would agree to a confidentiality agreement for the three documents that were being withheld. Id. At 5:04 pm on October 6, defendants' counsel responded that he would like to see a

detailed privilege log before determining whether to agree to a confidentiality agreement.  See Docket No. 157-1.  Plaintiff filed its motion for a protective order one minute later.  See Docket No. 141.

After filing the motion, plaintiff's counsel wrote to defendants' counsel on October 29, 2014, giving details regarding the three documents plaintiff had withheld.  See Docket No. 161-1 at pp. 2-3.  Again, plaintiff's counsel asked "whether you will sign the Protective Order I proposed and we can take the issue off the Court's docket."  Id. at p. 3.  Plaintiff states that, once again, it received no response from defendants.  Plaintiff now asks the court to grant a protective order as to the three documents it has withheld.  See Docket No. 141.  A proposed order was supplied to the court for consideration.  See Docket No. 141-1.

Defendants resist plaintiff's motion.  They argue that plaintiff did not meet and confer with defendants prior to filing the instant motion.  Defendants also object to the terms of plaintiff's proposed protective order, arguing that the terms of the order would prevent defendants from examining witnesses about the documents covered by the order.

## DISCUSSION

**A.     Plaintiff Has Satisfied the Meet-and-Confer Requirement**

Rule 37(a)(1) requires the parties to meet and confer to attempt to resolve discovery disputes prior to filing a motion to compel.  See FED. R. CIV. P. 37(a)(1).  In addition, this court's local rules impose a similar requirement.  See DSD LR 37.1.  The record indicates that plaintiff's counsel wrote to defendants'

counsel on four occasions prior to filing the instant motion, identifying the need for a protective order and even supplying a proposed protective order. Although plaintiff's counsel inquired whether defendants would agree to enter into a confidentiality agreement on these occasions, no response is in the record until October 6, one minute before the instant motion was filed.

Defense counsel portrays plaintiff's attempts to meet-and-confer as unreasonable as he was in trial in Lawrence County on October 2 and 3. However, that does not explain counsel's failure to respond altogether to the September 8 letter, even if just to indicate whether defendants were amenable to the *idea* of a protective order.

Plaintiff points out that Rule 37 does not allow plaintiff to simply withhold documents; if plaintiff believed it was entitled to protection, it was incumbent upon plaintiff to move for a protective order. Plaintiff asserts that it was required to do so before close of business on October 6 because that is when the discovery responses were due. The court finds that plaintiff's attempts to meet and confer satisfy Rule 37 and Local Rule 37.1.

That being said, the intent of the meet-and-confer requirement is to allow the parties to discuss the discovery matter and see if a solution can be arrived at. To that end, personal communication between the lawyers, face-to-face or via telephone, is encouraged. It is too easy to take rigid positions on issues when all that takes place are exchanges of letters or email. This case has no doubt created tensions between counsel with its multiple discovery disputes, and the tenor of the briefing on this motion shows it, but the court encourages

counsel in the future to attempt more personal contact with the other side when trying to resolve a discovery dispute.

**B.     Whether a Protective Order is Warranted**

Rule 26(c) of the Federal Rules of Civil Procedure address the issue of protective orders.  That rule provides in pertinent part:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense including one or more of the following:  . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way;

See FED. R. CIV. P. 26(c)(1)(G).

The trial court has significant discretion in either granting or denying a protective order, and "only an abuse of that discretion would be cause for reversal." General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973).  Under Rule 26(c), a court may grant a protective order only upon a showing of good cause by the moving party.  Id.  The movant must articulate "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Id. (additional citation and quotation marks omitted); see also Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure.  The injury must be shown with specificity.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.") (additional citations and quotation marks omitted). The court must also consider "the relative hardship to the non-moving party

6

should the protective order be granted." General Dynamics Corp., 481 F.2d at 1212 (additional citation omitted).

In Pansy, The Third Circuit set forth a thoughtful analysis of the good-cause standard that this court finds instructive. Although Pansy dealt specifically with the issue of whether the trial court abused its discretion in first granting and then subsequently refusing to modify a confidentiality order over a settlement agreement, confidentiality orders over matters concerning stages of litigation and protective orders over discovery are "functionally similar, and require similar balancing between public and private concerns." Pansy, 23 F.3d at 786.

> In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process.... [T]he court...must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.
>
> Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should "be disclosed only in a designated way," as authorized by the last clause of Rule 26(c)(7).... Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public. Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

Id. at 787 (additional citations omitted).

The balancing test requires courts to consider a variety of factors to determine if a protective order is appropriate. Id. at 789. These factors,

discussed below, "are unavoidably vague and are of course not exhaustive" so as to provide courts with "the flexibility needed to justly and properly" resolve discovery disputes.  Id.

> One interest which should be recognized in the balancing process is an interest in privacy.  It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection.  In this vein, a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose.  However, privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny.
>
> While preventing embarrassment may be a factor satisfying the "good cause" standard, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.  As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground.
>
> Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety and when the sharing of information among litigants would promote fairness and efficiency.
>
> A factor which a court should consider in conducting the good cause balancing test is whether a party benefitting from the order of confidentiality is a public entity or official.  Similarly, the district court should consider whether the case involves issues important to the public.... [I]f a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.

Id. at 787-88 (internal quotation marks, footnotes, and citations omitted).

When dealing with sensitive or proprietary information, courts routinely grant protective orders that limit who may access the disclosed information and how the disclosed information may be used.  Id. at 787 (additional citation

omitted).  Rule 26(c) confers " 'broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.' "  Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 925 (8th Cir. 1999) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)).  In this case, plaintiff, as the party seeking the protective order, has the burden "to show the necessity of its issuance."  See General Dynamics Corp., 481 F.2d at 1212.

Here, plaintiff has supplied a description of the three documents it withheld.  See Docket No. 161-1 at pp. 2-3.  Plaintiff has also supplied a few pages of each document, including tables of contents.  Id. at pp. 4-15.  The three documents withheld are Adoba's Brand Standards for 2012, Adoba's business plan, and Adoba's Brand Standards for 2013.  Id. at pp. 2-3.  The tables of contents of these three documents reveal that topics such as the following are discussed:  guest sustainable transportation services, green meeting services, green suite amenity and supply requirements, design and construction, complimentary organic breakfast services, green suite hospitality, A-Gemini Technology Solutions, plaintiff's mission statement, a description of plaintiff's product concept, a list of plaintiff's industry partners and main competitors.  See Docket No. 161-1 at pp. 6, 10.

The importance of protecting proprietary business information is explained by the Eighth Circuit:

> Confidential business information has long been recognized as property.  Because of the intangible nature of a trade secret, however, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from

>   disclosure to others.  Public disclosure of trade secrets extinguishes the owner's property rights.

In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir. 1991) (internal quotation marks and citations omitted).

The burden rests on the party opposing discovery, here plaintiff, to show that a protective order is warranted for trade secret information.  In re Remington Arms Co., Inc., 952 F.2d at 1032.  To meet its burden, plaintiff must show (1) that the information qualifies for protection, that is, that the information is confidential or trade secret and (2) that plaintiff would be harmed by disclosure of the information.  Id.  Courts look to applicable state law to determine if the requested documents qualify as trade secrets.  Id. at 1033.

The South Dakota Uniform Trade Secrets Act, codified at SDCL § 37-29-1, defines a trade secret as follows:

>   (4) "Trade secret," information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
>   >   (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
>   >   (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

See SDCL § 37-29-1(4).

Once plaintiff shows that the information requested constitutes a trade secret, the burden then shifts to defendants "to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the

case for trial." In re Remington Arms Co., Inc., 952 F.2d at 1032. If defendants show both relevance and need, then the court "must weigh the injury that disclosure might cause to the property against [defendants'] need for the information." Id. If both parties satisfy their respective burdens of proof, the court must issue a protective order to safeguard the rights of the parties, taking into account the following considerations:

> First, use of the discovered information should be limited to the particular lawsuit in which it has been shown to be both relevant and necessary to the prosecution of the case. Second, the protective order should limit the persons who are given access to the trade secrets. Third, the protective order should limit, or prohibit entirely, the reproduction of all confidential documents. Fourth, the protective order may require a bond to protect against the risk of injury from the disclosure of the trade secrets. Finally, the protective order may designate an attorney to serve as a custodian for all confidential documents.

Id. at 1033 (internal citations omitted).

At the hearing on the motion for preliminary injunction in this case, plaintiff's agent testified that, prior to it disclosing documents such as the three described above, it required the party to whom disclosure was being made to sign a confidentiality agreement. See Docket No. 69 at pp. 46-47, 49. Furthermore, if that party were to make further disclosure to others, plaintiff required that those others also sign the confidentiality statement. Id. See e.g. Docket No. 161-1 at p. 9.

Plaintiff's "Adoba" concept is the creation of an ecologically "green" hotel, from the design of the hotel itself, to the services provided, including food and transportation, as well as marketing. How plaintiff accomplishes this and who plaintiff's partners and competitors are, all constitute sensitive proprietary

11

information. Furthermore, the record indicates that plaintiff has, in the past, taken appropriate steps to protect this information. The court finds that plaintiff has established good cause for the issuance of a protective order.

Although the defendants do not address relevance, the court finds that the information is highly relevant. At the center of many of the issues in this lawsuit is who has the ultimate right to the information used to create "Adoba" brand hotels and whether disclosure of that information, as for example, plaintiff alleges defendant Zeljka Curtullo did, is an actionable matter.

Just because plaintiff has established good cause for the issuance of a protective order, however, does not mean that the court will accept plaintiff's proposed protective order. The impetus for plaintiff's proposed protective is the withholding of the three documents it identified for defendant. The scope of plaintiff's proposed protective order, however, is not limited to those three documents. Instead, plaintiff proposes an order that "applies to confidential information or confidential documents that have been previously produced or will be produced." See Docket No. 141-1. While plaintiff has shown good cause for a protective order for the three documents it is currently withholding, plaintiff has not shown good cause for potentially all the documents "that have previously been produced." Id. Accordingly, the court declines to issue the protective order proposed by plaintiff.

Instead, the court proposes the order attached to this opinion as an appendix. The parties shall have ten days to consider whether the court's order is acceptable to them, or to confer with one another and come up with an

alternative protective order which is mutually agreeable to them.  Barring the filing of an alternative jointly-proposed protective order, this court will issue the attached order on the eleventh day from the date of this order.

## CONCLUSION

Plaintiff's motion for protective order is granted in part and denied in part as follows:

1. Plaintiff's motion for a protective order for defendants' excessive interrogatories is denied as moot.

2. Plaintiff's motion for a protective order for the three documents currently being withheld is granted, but the court declines to issue the protective order proposed by plaintiff.

3. The parties shall have 10 days to consider the court's attached proposed protective order; if the parties do not desire the court's order to issue, the parties must file with the court within 10 days from the date of this order a jointly-proposed alternative order that is agreeable to both parties.

No sanctions shall issue on plaintiff's motion.

DATED this 12th day of January, 2015.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge