UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ATMOSPHERE HOSPITALITY MANAGEMENT, LLC,<br><br>    Plaintiff,<br><br>  vs.<br><br>ZELJKA CURTULLO,<br><br>    Defendant,<br><br>and<br><br>SHIBA INVESTMENTS, INC., KARIM MERALI, and<br><br>    Defendants and<br>    Third-Party Plaintiffs,<br><br>  vs.<br><br>JAMES HENDERSON,<br><br>    Third-Party Defendant. | CIV. 13-5040-KES<br><br><br><br>**ORDER GRANTING MOTION TO DISQUALIFY COUNSEL** |

Plaintiff, Atmosphere Hospitality Management, LLC, and third-party defendant, James Henderson (collectively, Atmosphere), move to disqualify Courtney Clayborne as counsel for defendants/third-party plaintiffs, Shiba Investments, Inc., and Karim Merali (collectively, defendants). Defendants oppose Atmosphere's motion to disqualify counsel. For the following reasons, Atmosphere's motion is granted.

## BACKGROUND

Atmosphere brought this action in May 2013 against defendants to resolve issues related to a License Agreement and a Property Management Agreement between the parties that allowed Shiba to operate a hotel it owned under Atmosphere's brand, Adoba®. Atmosphere alleges defendants breached the agreements, tortiously interfered with Atmosphere's business expectancy, defamed Atmosphere, fraudulently induced Atmosphere to enter into the agreements, committed deceit, misappropriated Atmosphere's trade secrets, and converted Atmosphere's property. *See* Docket 37. Defendants filed a third-party complaint against James Henderson and counterclaims against Atmosphere alleging breach of the agreements, conversion of defendants' property, and tortious interference with defendants' business expectancy.[1] *See* Docket 46; Docket 47.

Atmosphere brings this motion to disqualify Clayborne as counsel because Atmosphere believes he is a necessary witness in this case. Atmosphere contends that it will be necessary to call Clayborne as a witness to clarify inconsistent statements given by Merali and Clayborne at various stages of the discovery process, to testify to Clayborne's role in drafting and executing the License Agreement and Property Management Agreement, and to authenticate and provide foundation for admission into evidence of certain evidence.

---

[1] Defendants also originally asserted Henderson had violated the Racketeer Influenced and Corrupt Organizations Act (RICO). *See* Docket 8. This claim was later dismissed. *See* Docket 67.

Specifically, Atmosphere argues Clayborne's testimony is relevant to the following material factual disputes: (1) the timing of changes made to the License Agreement and Property Management Agreement; (2) the identity of those making the changes; (3) the knowledge of the parties regarding the changes; and (4) the authenticity of a December 31, 2011, email. Atmosphere states all four fact questions are relevant to its claim of fraudulent inducement. Atmosphere further states, in relation to its claim of tortious interference with business expectancy, that Clayborne is a necessary witness because only he can testify to conversations he had with Atmosphere's business contacts. In response, defendants seek to minimize the number of factual disputes and deny any of the alleged factual inconsistencies are material to the underlying claims.

## LEGAL STANDARD

The court applies South Dakota law to matters regarding the conduct of counsel in diversity jurisdiction cases. *Poulos v. Summit Hotel Prop., LLC*, No. CIV 09-4062-RAL, 2010 WL 2034634, at *8 (D.S.D. May 21, 2010). The South Dakota Rules of Professional Conduct provide:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) The testimony relates to an uncontested issue; (2) The testimony relates to the nature and value of legal services rendered in the case; or [sic] (3) Disqualification of the lawyer would work substantial hardship on the client; or (4) Except as otherwise provided by statute.

SDRPC 3.7(a)(1)-(4) (codified at SDCL 16-18 app.)[2] The South Dakota Supreme Court requires a party seeking disqualification of opposing counsel to show that: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Rumpza v. Donalar Enter., Inc.*, 581 N.W.2d 517, 525 (S.D. 1998) (relying on *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).

The district court has discretion to grant or deny a motion to disqualify an attorney, " 'and will be reversed only upon a showing of abuse of that discretion.' " *Midwest Motor Sports v. Arctic Sales, Inc.*, 347 F.3d 693, 700 (8th Cir. 2003) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999)). Disqualification motions are subject to particularly strict judicial scrutiny because there is the potential for abuse by opposing counsel. *Id.* at 700-01. Despite this high standard of proof, any legitimate doubts created by the movant must be resolved in favor of disqualification. *Meidinger v. City of Rapid City*, No. CIV. 12-5064-JLV, 2014 WL 1653127, at *1 (D.S.D. Apr. 24, 2014) (citing *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998)); *see also Coffelt v. Shell*, 577 F.2d 30, 32 (8th Cir. 1978).

The *Shelton* test, although normally used to determine whether to allow the deposition of counsel in current litigation, is "[b]y logical extension [applicable] to determine whether an opposing counsel may be called as a witness at trial." *Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc.*, No.

---

[2] Defendants only address subsection (1) as a defense under Rule 3.7(a). Therefore, the court will not address subsections (2), (3), and (4).

1:11-CV-00084-CEJ, 2015 WL 269795, at *1 (E.D. Mo. Jan. 21, 2015).³ While SDCL 19-1-3 does state if counsel becomes a witness, he cannot continue to participate in the trial, the statute does not indicate "that when an attorney is involved in the case, he may *never* testify as a witness." *In re Estate of Heibult*, 653 N.W.2d 101, 105 (S.D. 2002) (emphasis in original). Nevertheless, once an attorney testifies, he runs the risk that he " 'may inadvertently attack his own client's credibility by testifying in a matter which conflicts with the client's testimony. . . . Thus, it becomes a matter of evidence and not simply a matter of ethics.' " *Rumpza*, 581 N.W.2d at 524 (quoting *Estes v. Millea*, 464 N.W.2d 616, 619 n. 4 (S.D. 1990)). When determining whether to disqualify an attorney, "[i]t is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." SDCL 16-18, app., Rule 3.7, cmt. 4. And "if it is foreseeable that current counsel must testify as prohibited by S.D.C.L. § 19-1-3 . . . counsel should withdraw from representation." *Bjornestad v. Progressive N. Ins. Co.,* No. CIV 08-4105, 2009 WL 2588286, at *3 (D.S.D. Aug. 20, 2009).⁴

---

[3] The South Dakota Supreme Court has declined to follow a strict interpretation of the word "trial" and has determined disqualification can occur "at any time during the proceedings where the attorney testifies and does not come within one of the recognized exceptions[.]" *Rumpza,* 581 N.W.2d at 525. Similarly, the Eighth Circuit Court of Appeals has held the necessary witness rule "does not normally disqualify the lawyer from performing pretrial activities; . . . [unless] the 'pretrial activity includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role.' " *Droste v. Julien,* 477 F.3d 1030, 1035-36 (8th Cir. 2007) (quoting *World Youth Day, Inc. v. Famous Artists Merc. Exch., Inc.,* 866 F. Supp. 1297, 1303 (D. Colo. 1994)).

[4] Atmosphere noticed its intent to use Clayborne as a witness on Dec. 21, 2013. Docket 196 at 21. Also, Clayborne has already been deposed.

**DISCUSSION**

I.  **Information Not Available Through Other Means**

Atmosphere claims Clayborne is a necessary witness because only he possesses certain information related to Atmosphere's fraudulent inducement claim. Atmosphere also alleges that evidence of Clayborne's direct communications with Royal Realties relates to Atmosphere's allegation of tortious interference with business expectancy. Lastly, Atmosphere claims Clayborne is essential to authenticate and identify documents that will be introduced as evidence under Federal Rules of Evidence 901[5] and are related to both claims.

Atmosphere states that throughout the course of discovery Merali has given conflicting testimony regarding the timeline of the drafting of the agreements, who made changes to the agreements, where the changes were made, and who knew of the changes. While Merali and Clayborne testified that only Merali, Clayborne, and Henderson were privy to any conversations regarding the ongoing drafting of the agreements, Atmosphere points out that overall, Merali's testimony conflicts with Henderson's testimony and Clayborne's testimony. Other discovery responses are also conflicting, and Atmosphere has not been able to verify much of the information. This includes, but is not limited to, facts surrounding any conversations regarding changes to

---

[5] To authenticate or identify an item introduced as evidence, there must be "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). This includes "[t]estimony that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1).

the agreements, what changes were made on the date Henderson signed the agreements, and who made those changes. *See* Docket 196 at 5-14.

Also, Atmosphere states the exhibits presented at Clayborne's deposition were screen shots from Clayborne's computer. During his deposition Clayborne acknowledged each screen shot was likely from his computer. Atmosphere states the exhibits will be introduced at trial with regard to its fraudulent inducement claim, and Clayborne will be a necessary witness to authenticate the exhibits for admission.

Defendants argue the information sought is available through multiple means other than counsel. Defendants claim "[a]s to statements made are [sic] not made by any party, those are available by asking in [sic] the party whether or not they made certain admissions whether it be by deposition or written discovery." Docket 206 at 6-7. Defendants state there is no conflict with regard to the existence of the two agreements, and the only contested issue is whether or not Henderson was aware of specific changes that had been made to the documents at the time he signed said documents. Docket 206 at 4-5. Further, defendants argue "[a]ny party, other than counsel, can testify as to who made changes to the documents." Docket 206 at 5.

Defendants' argument is not persuasive. While other witnesses may be able to testify to certain conversations with Clayborne or that they operated under the assumption that Clayborne himself made changes to the agreements, only Clayborne can testify to the changes he personally made to the agreements, the timing of those changes, and his knowledge of any changes made by someone other than him. *See Rumpza*, 581 N.W.2d at 525 (remanding

the case to determine disqualification "where the attorney's conduct went beyond that of giving legal advice" and went to direct participation in a contested issue).

One purpose of disqualification "is to avoid the possible confusion which might result from the jury observing the lawyer act in dual capacities–as witness and advocate." *Droste,* 477 F.3d at 1035-36. With the factual questions surrounding when changes were made to the agreements, and who made them, there are significant factual disputes for a jury to resolve in addition to Henderson's knowledge of the changes and the existence of the two agreements. Thus, the ability to examine Clayborne "to discover information peculiarly within counsel's knowledge and centrally relevant to the issues . . . may not only be the most expedient approach, but the only realistically available approach." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002). Also, defendants do not acknowledge the foundation issue of screen shots from Clayborne's computer. Clayborne is the only source available to establish the foundation for these exhibits. Therefore, based on his participation in the events leading up to this litigation, Clayborne possesses information that is not reasonably available from another source and directly relates to the issues in this case.

## II. Information is Relevant and Nonprivileged

Defendants did not raise the issue of privilege in response to any of Atmosphere's allegations. Nevertheless, Atmosphere must prove that the information is relevant and nonprivileged. *See Shelton*, 805 F.2d at 1327.

As previously noted, Merali and Henderson have given conflicting testimony regarding the timeline, and Atmosphere alleges Clayborne is the only other witness who could be called to verify what events occurred when. The issues of when, where, by whom, and to whose knowledge the changes to the two agreements were made are material and disputed. The evidence sought to be introduced through Clayborne is also relevant and probative.

Additionally, Atmosphere's motion relies on information provided as exhibits through depositions and other documents and answers produced in the course of discovery. The only assertions of privilege or protection made by Clayborne during his deposition were with respect to Clayborne's contacts at Royal Realties. Even though Atmosphere has the burden to prove information is nonprivileged, the *Shelton* test has not changed the rule that the party claiming privilege has the burden of demonstrating the existence of a privilege. *See First Sec. Sav. v. Kan. Bankers Sur. Co.*, 115 F.R.D. 181 (D. Neb. 1987). No privilege log was ever provided, and defendants did not raise the issue of privilege in their brief pertaining to this matter.

" 'If documents otherwise protected by the work-product rule have been disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim protection for the documents as work product.' " *Pittman v. Frazer*, 129 F.2d 983, 988 (8th Cir. 1997) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024 at 209 (3d ed. 1994)). Similarly, "[t]he failure of a party to provide a court with sufficient information to determine the question of privilege raises substantial questions concerning the efficacy of the

objection[.]" *Dak., Minn. & E. R.R. Corp. v. Acuity*, 771 N.W.2d 623, 636 (S.D. 2009); *see also Dziadek v. Charter Oak Fire Ins. Co.*, No. CIV. 11-4134-RAL, 2014 WL 820049, at *14 (D.S.D. Mar. 3, 2014) (holding state and federal law require production of a privilege log to assert attorney-client privilege). Because defendants have failed to establish a factual basis for the protection or privilege and have also failed to produce a privilege log, on the existing record it does not appear that the information is privileged.

### III.    Information is Crucial to the Preparation of the Case

Atmosphere has the burden to prove that the information sought from Clayborne is crucial to the preparation of its case. *See Shelton*, 805 F.2d at 1327. Atmosphere's claim of fraudulent inducement requires a showing that defendants committed one of the five acts set forth in SDCL 53-4-5, and Atmosphere must prove defendants' fraudulent behavior induced Atmosphere to act to its detriment. Docket 88 at 5-6. Likewise, Atmosphere's claim of tortious interference with a business relationship requires (1) the existence of a valid business relationship or expectancy (2) of which the interferer has knowledge, and (3) the interferer acts intentionally and unjustifiably, (4) which causes harm, and (5) damaged the party who relied upon the relationship or expectancy. *Miller v. Huron Reg'l Med. Ctr., Inc.*, No. CIV. 12-4138-KES, 2014 WL 1608695, at *2 (D.S.D. Apr. 22, 2014) (citing *Selle v. Tozser*, 786 N.W.2d 748, 753 (S.D. 2010)).

Part of Atmosphere's argument for fraudulent inducement relies on the timing of changes made to the agreements and who knew of those changes. Similarly, Atmosphere's argument for tortious interference with business

expectancy hinges on any communication made by defendants or Clayborne with the other business. Finally, the documents sought to be introduced into evidence by Atmosphere relate to its claim of fraudulent misrepresentation and provide relevant information on the timing of changes made to the agreements by Clayborne. Atmosphere has therefore met its burden that the information possessed by Clayborne is crucial to Atmosphere's preparation of its case.

Clayborne is the only reasonably available and reliable source for certain nonprivileged information sought that is relevant to resolving disputed factual questions crucial to the claims in this case. Atmosphere has met its burden of proof under *Shelton* to establish Clayborne is a necessary witness. Thus, Atmosphere's motion to disqualify Clayborne as counsel for defendants is granted.

### IV. Insurance Claim

In its reply brief, Atmosphere raises the issue of an alleged insurance claim discovered during Merali's deposition. The court does not consider arguments raised for the first time in reply briefs because the opposing party is not provided with an opportunity to respond. *See Winterboer v. Edgewood Sioux Falls Senior Living, LLC*, No. CIV. 12-4049-KES, 2014 WL 28863 at *4 n.1 (D.S.D. Jan. 2, 2014) (citing *Johnson v. Berry*, 171 F. Supp. 2d 985, 990 n.3 (E.D. Mo. 2001)). Also, the court does not construe a single paragraph in Atmosphere's reply brief, Docket 226 at 13, to be a motion to compel because it does not comply with the procedures for motions set out in the local rules for the District of South Dakota, nor does it comply with the requirements for a motion to compel under Federal Rule of Civil Procedure 37.

Furthermore, new counsel for defendants would be obligated to supplement their initial disclosures if it is discovered the initial disclosures are incomplete or incorrect. Fed. R. Civ. P. 26(e) (requiring supplementation); Fed. R. Civ. P. 26(a)(1)(A)(iv) (requiring insurance agreements to be disclosed as part of initial disclosures).

## CONCLUSION

Atmosphere has met its burden under *Shelton* to show that Clayborne is a material witness, and no exception recognized in South Dakota law is present. Accordingly, it is

ORDERED that the motion to disqualify (Docket 195) is granted, and Courtney Clayborne is disqualified from further representation of defendants/third-party plaintiffs in this matter. Defendants must file a notice of appearance for their new counsel by **July 6, 2015**.

Dated June 5, 2015.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE