UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ATMOSPHERE HOSPITALITY MANAGEMENT, LLC, | CIV. 13-5040-KES |
| Plaintiff, | |
| vs. | |
| ZELJKA CURTULLO, | ORDER ON MOTION FOR SANCTIONS |
| Defendant, | |
| and | |
| SHIBA INVESTMENTS, INC., KARIM MERALI, and | |
| Defendants and Third-Party Plaintiffs, | |
| vs. | |
| JAMES HENDERSON, | |
| Third-Party Defendant. | |

Plaintiff, Atmosphere Hospitality Management, LLC, and third-party defendant, James Henderson (collectively "Atmosphere"), moves for sanctions against defendants/third-party plaintiffs Shiba Investments, Inc., and Karim Merali. The court grants in part and denies in part the sanctions requested by Atmosphere.

## BACKGROUND

Atmosphere brought this action against Shiba and Merali to resolve issues related to a licensing contract and management contract between the parties that allowed Shiba to operate a hotel it owned under Atmosphere's brand, "Adoba." Following numerous discovery disputes, Atmosphere moved to compel certain items of discovery. Docket 98. The court held a hearing on that motion, and granted most, but not all, of the relief requested by Atmosphere. Docket 135. Subsequently, Atmosphere filed a motion for attorney's fees relating to its first motion to compel discovery. Docket 147. Atmosphere also moved for sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) based on a failure to comply with the court's order on the motion to compel responses to the first set of discovery. Docket 150. On January 9, 2015, the court granted in part and denied in part Atmosphere's motion for attorney's fees and ordered further briefing on the motion for sanctions. Docket 173.

## DISCUSSION

Federal Rule of Civil Procedure 37(b)(2) states:

> If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

2

(iii)    striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)    dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

"Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). To impose sanctions under Rule 37, "there must be an order compelling discovery, a willful violation of that order, and prejudice to the other party." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999). Sanctions must be " 'just' and relate to the claim at issue in the order to provide discovery." *Hairston v. Alert Safety Light Products, Inc.*, 307 F.3d 717, 719 (8th Cir. 2002) (citation omitted).

As part of the January 9, 2015, order, the court concluded that the initial requirements for the imposition of sanctions as laid out in *Chrysler Corporation* were satisfied. Docket 172 at 13-14. Because defendants had not briefed the issue regarding the specific sanctions Atmosphere sought,[1] the

---

[1] Rather, the only argument advanced by defendants was that they had complied with the court's order within the correct number of days allotted by the

court directed the parties to submit further briefing. Additionally, the court instructed Atmosphere to describe the sanctions it requested and to submit an affidavit for a fee request. The court also cautioned:

> Defendants should also explain what steps they have taken to correct the insufficient discovery responses. In determining sanctions, the court will consider, among other factors, whether defendants have remedied their failure to comply with the court's order on the motion to compel. If defendants have not complied in full with the court's order at that time, the court will consider imposing any and all sanctions authorized under Rule 37, up to and including dismissal of the third-party complaint or entry of a default judgment.

*Id.* at 14-15.

Defendants state that they have produced two tabulated binders containing approximately 1,500 pages of information pertinent to Atmosphere's discovery requests. These binders were turned over to Atmosphere on January 16, 2015. Additionally, they have been separated into 11 tabbed sections (lettered A-K). Atmosphere has provided a copy of defendants' most recent supplemental response to its discovery request as of January 27, 2015. Docket 199-1. Defendants thus contend that they have "provided plaintiffs with the information requested in all outstanding discovery[.]" Docket 193 at 4.

---

court. The court explained that the rule defendants purported to rely on "does not exist," and determined that, with one exception, each of the defendants' late-filed responses were inadequate. *See* Docket 173.

I.     **Have Defendants Fully Remedied Their Inadequate Discovery Responses?**

A.     **Request for Production Number 2**

Atmosphere's RFP 2 stated:

Please produce a copy of all communications in hard copy and electronic format, including email, text messages and attachments, whether personal or business, by Defendants, its attorneys and/or its employees, including but not limited to emails between, to, or from Karim Merali, Sacha Merali, Mehdi Merali, Zeljka Curtilo, Batool Merali and/or their attorney(s) regarding the Adoba brand, Atmosphere, Jim Henderson, Adrienne Pumphrey, the agreements between the parties to this litigation, the operation and/or management of the Adoba hotel in Rapid City, the renovations of the hotel to the Adoba brand, the use of the Adoba brand, the intentions of the parties in their relations, any negotiations, and the finances of both Adoba and Atmosphere. This request is not asking for communications solely between a client and its/his/her attorney.

According to defendants' most recent supplemental response, the following sections of its tabulated binders address this RFP:

Tab A (emails with Henderson regarding Agreements); Tab B (additional emails with Henderson regarding agreements); Tab E (renovation expenses for the hotel after 2012); Tab E (additional renovation invoices and vendors); Tab F (miscellaneous emails mostly following the inception of the management contract but concerning the hotel); Tab I (emails, plans and related documentation concerning hotel renovations); and Tab J (additional renovation invoices)[.]

Docket 199-1.

Atmosphere maintains that there are several shortcomings with defendants' response. For example, Atmosphere notes that defendants have not produced an email sent from Karim Merali to Mike Schmitz, an employee at the hotel, discussing allegations defendants have made against James Henderson

5

related to defendants' third-party complaint and counterclaims. This email was brought up at the September 29, 2014, hearing, and the court specifically directed defendants to include that email (and emails similar to it) in their response to this RFP. Docket 169 at 20-21.[2] Defendants still have not done so.

Relatedly, Atmosphere contends that defendants have not disclosed all communications pertaining to or containing attachments of drafts of the contracts, which defendants agreed to produce after the parties met and conferred. In a letter summarizing that meeting, counsel for Atmosphere recalled that defendants agreed to produce those communications and asked defendants' counsel to respond with any disagreements to the summary. Docket 100-5. No response was given. Although defense counsel has since been disqualified (Docket 255), this court had twice admonished him to follow through on the agreements made at the meet and confer. Docket 169 at 15-16; Docket 173 at 9-10 n.1. Nonetheless, these communications have not been turned over.

Atmosphere also doubts the completeness of defendants' supplemental responses, as the RFP sought "all" of the specified communications. But, for example, Tab A consists of a single email from James Henderson to Karim and Sacha Merali dated December 26, 2011, referencing "the Agreements [Henderson] delivered to [the Meralis] 3 weeks ago[.]" Docket 199-10. This email was disclosed by and used as Atmosphere's Exhibit 57 at the preliminary

---

[2] The court also directed defense counsel to complete a privilege log if he believed any of the communications sought by the RFP were privileged. *See* Docket 169 at 21. A privilege log has not been submitted to the court.

injunction hearing. Tab B similarly consists of one email from James Henderson to Karim Merali dated December 15, 2011, explaining that "Attached are the Agreements you requested in Electronic format." Docket 199-11.[3] But Atmosphere also sought each communication that related to subsequent drafts of those editable agreements. And while Tab I contains some emails that pertain to the renovation of the hotel, a number of the documents contain the actual plans and specifications to renovate the hotel rather than communications, or are simply communications unrelated to the information sought in this RFP. *See* Docket 199-12; Docket 199-13.

The court has before it only small portions of the approximately 1,500 pages of material provided to Atmosphere. On one hand, it appears the defendants have, albeit belatedly, produced some of the documents sought by Atmosphere's RFP. On the other hand, defendants have not produced the Schmitz email as instructed by this court or all of the communications concerning drafts of the contracts as contemplated by the parties' meet and confer agreement. The court reiterated at the September 29, 2014, hearing that if the party responding to an RFP does not have the documents being sought, the party must sign a response to that effect. Docket 169 at 16; *see also* Fed. R. Civ. P. 34. Such a response has not been provided, and the court will not assume that defendants are not in possession of the documents Atmosphere seeks. Moreover, defendants' assertion that they have only recently been able

---

[3] The two attachments are titled "Adoba Hotel Rapid City License Agreement.doc" and "Atmosphere Adoba Hotel Rapid City Management Contract.doc." Docket 199-11.

to locate this mass of documents is unaccompanied by affidavit or a citation to other evidence within the record and borders on the incredible. *See* Docket 193 at 4 (explaining the difficulty in locating this information is attributable to Atmosphere's use of "systems unfamiliar to the Defendants," the hotel renovations, and ultimately that defendants were able to find the documents "somewhat by accident"). Ultimately, defendants were required to show what steps they have taken to cure their inadequate discovery responses and to cure those inadequacies in full. Defendants have not done so. Consequently, defendants' response to this RFP remains inadequate.

### B.    Request for Production Number 5.

Atmosphere's RFP 5 stated:

> For each such email produced in response to Request for Production Nos. 2, 3 and 4, please provide a copy of the corresponding .pst file, a print-out of the email listed amongst the other emails in the Sent box sent on the same day as the email produced, a print-out of the email listed amongst other emails in the Inbox or other folder received on the same day as the email produced, a print out of all metadata for each email produced, and all emails saved and produced in their native format on a CD. This request requires this information even for emails that may have been previously produced.

Defendants' most recent supplemental response to Atmosphere's discovery requests does not address this RFP. *See* Docket 199-1 (responding to RFP 6 after responding to RFP 3). Thus, Atmosphere contends that defendants have done nothing to remedy their inadequate response. Defendants' only argument on this point pertains to an email allegedly sent from Karim Merali to James Henderson on December 31, 2011. A screenshot of this email was

introduced as defendants' Exhibit Y during the preliminary injunction hearing in October 2013.[4] It purported to contain a finalized version of the Adoba licensing agreement and asked James Henderson to "Please review and let me know if [it is] ok per our discussions late last night."

Atmosphere claims it has neither received a copy of this email from defendants as asked for in its RFP 2, or the types of related data sought in its RFP 5. Defendants ignore Atmosphere's allegation that *they* have not produced the communication and instead argue that Daniel Meinke, an analyst for Computer Forensic Resources and one of Atmosphere's experts, has located and made a copy of the email after collecting forensic images of the hard drives from several of Karim Merali's computers. *See* Docket 193-2. Meinke's findings were forwarded to Atmosphere on January 6, 2015. Docket 193-1; Docket 193-4. Atmosphere acknowledges that it received this report, but points to a subsequent report by Meinke. *See* Docket 199-9. In this later report, Meinke explains that he was able to locate two identical images of the email, but provided several reasons why he did not believe the email itself was ever actually sent to James Henderson. *Id.* at 3-4. For example, the images of the email were located in the Merali's "Inbox" rather than the "Sent" messages folder. *Id.* at 4. Meinke also noted discrepancies between the timestamp on Exhibit Y and the two copies he was able to locate. *Id.* (explaining the

---

[4] A copy of the email later forwarded to attorney Clayborne accompanied the screenshot, which displays the text of the email more clearly.

timestamp on Exhibit Y read "4:59 PM" but the timestamp on the copies read "5:58 PM").

Meinke's doubts that the email was ever sent have been reinforced by Karim Merali. Atmosphere's third set of discovery requests, and Karim Merali's responses to them, includes the following disclosure:

> 48. Admit that your Exhibit Y introduced at the preliminary injunction hearing was never emailed to James Henderson.
>
> RESPONSE: Admit. I believe it was hand delivered.

Docket 184-2. Obviously, Atmosphere sought an admission to whether the communication portrayed in the exhibit, not the physical exhibit itself, was ever emailed to James Henderson. Notably, the signature on this response is dated January 15, 2015. Docket 184-2 at 3. Thus, six days had elapsed since this court warned defendants that sanctions would be forthcoming if they did not fully and completely remedy their inadequate discovery responses. Whether or not Merali intended this response to be a poorly conceived and incredulous answer to Atmosphere's request for admission, the court will take Merali at his word: The email was never sent.

Beyond this, defendants have offered nothing to suggest they have fully produced the documentation sought by this RFP. Consequently, defendants' response remains inadequate.

### C.    Request for Production Number 8

Atmosphere's RFP 8 stated:

> Please produce a copy of all employee records and payroll records
> for 2008, 2009, 2010, 2011, 2012 and 2013.

The court limited the timeframe of this RFP to 2011 through 2013. Docket 169 at 26-27. Additionally, the court ordered defendants to include any nondisclosure agreements that may have been signed and a list of employees in its response. *Id.*

Defendants' most recent supplemental response transcribed the text of Atmosphere's RFP 7 and labeled it as RFP 8. *Compare* Docket 164-2 at 1 (Atmosphere's RFP 7, which reads: "Please produce a copy of the Profit and Loss Statements, balance sheets and IRS statements of the Defendants for 2006, 2007, 2008, 2009, 2010 and 2011.") *with* Docket 199-1 at 8 (same text labeled as Atmosphere's RFP 8). Nonetheless, defendants state that the following sections of its tabulated binders address RFP 8:

> See Tab H . . . This tab would include the relevant 941 Forms, defendants['] employee information as well as the general ledger for the hotel property during these time frames. To the extent this response request[s] information concerning independent contractors, including individual employees of that information [sic] is also contained within Tabs D and E of the same document.

Docket 199-8.

Defendants' supplemental response suggests that Tab H contains documents for "the[] time frames" sought by the RFP. In other words, it contains documents from 2011 through 2013. Defendants' brief nonetheless describes the contents of Tab H as "every employer's form 941 for the time *from May 2013 through December 2013*, all quarterly earnings reports (listing all employees) *for that same time*, and the complete hotel general ledger for

*January 1, 2013 through December 31, 2013.*" Docket 193 at 3 (emphasis

added). Atmosphere likewise notes that Tab H only contains information from

2013. Docket 198 at 17 (discussing Tab H's applicability to RFP 9).

Assuming defendants have produced the appropriate kinds of documents

sought by the RFP, it is unclear whether they have also produced those

documents for 2011-2013 (as the supplemental response suggests) or that they

have only produced documents for 2013 (as the parties' briefs suggest). The

court instructed defendants to explain what steps they have taken to alleviate

their incomplete discovery responses. The ambiguity with what, in fact,

defendants have produced is their own making, and defendants have provided

no reason for the court to assume a complete disclosure has been made.

Moreover, defendants also contend that they do not have any

nondisclosure agreements in their possession. *See* Docket 193 at 11. This

statement appears in defendants' brief. There is no accompanying citation

supporting this claim. Again, the court admonished defense counsel at the

September 29, 2014, hearing that if the responding party to an RFP does not

have the documents being sought, that party must sign a response to that

effect. Docket 169 at 16. Defendants' freestanding assertion in their brief is not

a substitute for that requirement. Thus, not only is defendants' response to

RFP 8 inadequate, but defendants have again failed to follow proper procedure

responding to the RFP itself.

### D.   Request for Production Number 9

Atmosphere's RFP 9 stated:

> Please produce a copy of all employee, personnel, or owner files for, and wages, amounts paid, or owners' disbursements to Karim Merali, Batool Merali, Mehdi Merali and Sacha Merali from April 2013 through the present.

Defendants' supplemental response to this RFP is:

> There are no owner files for these individuals. All employee files can be accessed by referring to Tab[] H . . . and specifically the general ledger attached thereto. It should be noted that payments made to Sacha and Medhi Merali in the general ledger would reflect payments made to them for reimbursements and as independent contractors.

Docket 199-1 at 8. The information sought by the RFP included documents from April 2013 to the present. Tab H, as discussed regarding RFP 8, only includes documents from 2013. Even if a line were drawn at January 27, 2015, the date that defendants' supplemental response was signed, defendants' response would not have included the documents sought by the RFP from 2014 to that date.

Additionally, the court specifically stated that defendants should produce documents related to owner distributions as part of its response to this RFP. Docket 169 at 27. Defendants' supplemental response speaks of "owner files," but does not address owner distributions. At best, it appears from the record that defendants have produced a single document pertaining to distributions made to Karim Merali for 2013 and 2014. *See* Docket 164-1 at 32. Yet, Sacha Merali and Medhi Merali are also owners. *See* Docket 199-1 at 2-3. While defendants' response speaks of so-called "reimbursements" paid to Sacha Merali and Medhi Merali, it says nothing of distributions and, again, the

13

general ledger attached to Tab H only contains information from 2013. Thus, defendants' response to this RFP remains inadequate.

###### E.    Request for Production Number 10

Atmosphere's RFP 10 stated:

> Please produce a copy of all Kabamesa records of revenue paid to it from Shiba or Atmosphere for 2011 and 2012.

The scope of this RFP has been narrowed to payments made from Shiba to Kabamesa from 2011 through 2012. Docket 169 at 28. Defendants' latest supplemental response does not address this RFP. *See* Docket 191-1 at 8 (responding to RFP 9 and then RFP 21).

The court previously determined that what defendants had produced in response to this RFP was insufficient. Docket 173 at 11 ("The four pages make no mention of Kabamesa, nor does the response contain any of Kabamesa's records. This response is insufficient."). Aside from an unsupported claim to have produced its complete ledger and "all checks," defendants point to no new information they have produced that addresses this RFP. Consequently, defendants' response to this RFP remains inadequate.

###### F.    Request for Production Number 12

Atmosphere's RFP 12 stated:

> Please produce a copy of Karim Merali's electric, sewage, internet, cable bills and other utilities for his personal residence in 2012 and 2013.

The court previously observed that, "Defendants have provided utility bills from 2012 through October 2014 and stated that additional records had been

requested and would be provided upon receipt." Docket 173 at 11. Thus, at that time, defendants' response was sufficient. *Id.*

Atmosphere has since explained that while it has received the water, sewage, power, and propane bills that it sought, it has not received Karim Merali's personal internet or cable bills. In an (albeit unsigned) previous response to this same RFP, Karim Merali indicated he received service from Midcontinent Communications. *See* Docket 100-2 at 6. Thus, as Atmosphere suggests, Karim Merali likely does have cable and internet bills as sought by the RFP. By the same token, Merali has not stated in a signed response to this RFP that he does not receive such services and therefore did not have any internet or cable bills to produce.

Additionally, defendants last responded to this RFP in October 2014 by declaring that "additional records have been requested and will be provided upon receipt." *See* Docket 164-1 at 2. Defendants' latest supplemental response, filed on January 27, 2015, neither addresses whether any additional records obtained in the interim have been provided nor further responds to this RFP at all. *See* Docket 191-1 at 8 (responding to RFP 9 and then RFP 21). Consequently, the court concludes defendants have not fully responded to Atmosphere's RFP 12.

### G.    Request for Production Number 13

Atmosphere's RFP 13 stated:

15

Please produce documents which show from what account the bills referred to in Request for Production No. [12] were paid.[5]

Defendants' latest supplemental response does not address this RFP. *See* Docket 191-1 at 8 (responding to RFP 9 and then RFP 21). Rather, defendants' most recent response to this RFP is from October 2014, which the court determined to be insufficient. Docket 173 at 11. At that time, the only documents cited by defendants as responsive to this RFP were the same utility bills it produced in response to RFP 12. *See* Docket 164-1 at 2. While those documents showed that the bills had been paid, they did not show what accounts the bills were paid from.

Defendants assert that their compelled discovery responses include "personal checks for Merali showing payment of certain of those expenses from his personal account or that of his wife." Docket 193 at 14. This statement contains no explanatory citation, and it is not clear what part or parts of the two supplemental binders (assuming those are what defendants are referring to) include those personal checks. Atmosphere notes that it has received a total of four checks signed by Karim Merali from 2012, but none from 2013. Docket 198 at 19. If defendants did produce checks or other documents showing from what accounts all of Karim Merali's personal utilities were paid, it was

---

[5] The text of this request refers back to RFP 11, rather than 12. *See* Docket 164-1 at 2. In turn, RFP 11 sought "a copy of all labor and wage citations, reports, findings, audits, and related documents, including assessed fine information for Adoba or the Radisson hotel from 2004-2012." *Id.* Thus, RFP 11 did not seek the production of any "bills" as RFP 13 suggests. This appears to be a typographical discrepancy of no consequence, as the parties do not disagree that RFP 13 meant to refer to the bills sought by RFP 12.

16

incumbent on defendants to bring that evidence to the court's attention.

Defendants have not done so. Their response to this RFP remains inadequate.

### H.      Request for Production Number 14

Atmosphere's RFP 14 stated:

> Produce a copy of the utilities bills and revenue associated with the Defendants' warehouses and rental homes for 2012 and 2013.

Defendants' latest supplemental response does not mention this RFP. *See* Docket 191-1 at 8 (responding to RFP 9 and then RFP 21). Defendants concede that the utility bills for defendants' warehouses and rental homes in 2012 and 2013 were paid by or out of the hotel's operating account.[6] *See* Docket 193 at 14. Atmosphere accepts this admission. Regarding the revenue associated with those properties, defendants contend that it was collected by James Henderson from February 2012 to April 2013. Defendants provide no citation for where this assertion is derived from, or offer an explanation for what happened to the revenue in January 2012 or from March to December 2013. Defendants' response to this RFP is remains inadequate.

### I.      Request for Production Number 15

Atmosphere's RFP 15 stated:

---

[6] Defendants assert that the documents it has provided establish this fact, although they cite no portion of the court record or the tabulated binders they provided to Atmosphere to support their statement. The court previously determined that the documents produced by defendants in response to this RFP were inadequate. *See* Docket 173 at 12. Thus, while Atmosphere accepts defendants' admission, defendants have not demonstrated to the court that it has actually produced the documents in question in satisfaction of this RFP.

Please produce documents which show from what account the bills referred to in Request for Production No. [14] were paid.[7]

Defendants' latest supplemental response does not mention this RFP. *See* Docket 191-1 at 8 (responding to RFP 9 and then RFP 21). As with RFP 14, defendants have acknowledged that the bills for defendants' warehouses and rental homes for 2012 through 2013 were paid by or out of the hotel's operating account. Atmosphere accepts this admission.[8]

### J.      Request for Production Number 16

Atmosphere's RFP 16 stated:

Please produce a copy of all Opera system postings for accounts receivable for 2004-2012.

The court adjusted the timeframe of this RFP to 2010 through 2012. Docket 169 at 29. Defendants' latest supplemental response does not mention this RFP. *See* Docket 191-1 at 8 (responding to RFP 9 and then RFP 21). Similarly, Defendants do not point to any portions of the tabulated binders that address this RFP. Rather, defendants assert that "this information [was] asked and answered in previous discovery request[s]." Docket 193 at 15.

First, defendants do not explain which of its prior answers to Atmosphere's previous discovery requests they are referring to. Second, following defendants' October 2014 response, the court determined that defendants had not, in fact, adequately responded to this RFP. Docket 173 at

---

[7] This RFP original referred back to RFP 12. Like RFP 13, however, that appears to be a typo and the parties do not disagree which documents are actually being sought.

[8] *See* n.6, *supra*.

12. Defendants do not elaborate on what, if anything, they have produced since that time. Thus, defendants' response to this RFP remains inadequate.

### K.    Request for Production Number 18

Atmosphere's RFP 18 stated:

> Please produce a copy of all electric and utility bills for the hotel operations from 2004-2012.

The court adjusted the timeframe of this RFP from 2010 to February 1, 2012. Docket 169 at 29-30. Defendants' latest supplemental response does not mention this RFP. *See* Docket 191-1 at 8 (responding to RFP 9 and then RFP 21). Defendants' brief likewise does not contend that this information has been produced as ordered by the court. Instead, defendants simply contend that the sanctions Atmosphere has requested are inappropriate. Consequently, defendants' response to this RFP remains inadequate.

### L.    Request for Production Number 20

Atmosphere's RFP 20 stated:

> Please produce any and all documents and records regarding any franchise or license agreement between Defendants and any other party.

Defendants' latest supplemental response does not mention this RFP. *See* Docket 191-1 at 8 (responding to RFP 9 and then RFP 21). Similarly, defendants' brief provides no indication that the court's order to produce these documents has been complied with. Rather, defendants merely argue against the propriety of the sanctions Atmosphere has requested. Consequently, defendants' response to this RFP remains inadequate.

**M.     Request for Production Number 21**

Atmosphere's RFP 21 stated:

> Please produce any and all documents and records regarding
> Karim Merali's schedule, day planner, or calendar from 2004 to
> date.

The court adjusted the timeframe of this RFP from October 2011 to December 2011. Docket 169 at 30. Atmosphere notes that it has obtained the information it sought, but it was never produced by defendants. Rather, Atmosphere only obtained this information after it had to pay for Daniel Meinke to retrieve it. Defendants do not dispute this.

## II.     Appropriate Sanctions

Atmosphere requests that the court render a default judgment against defendants on Atmosphere's complaint and to dismiss defendants' third-party complaint.[9] The Eighth Circuit has long recognized that "in our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied." *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977). Thus, "[t]here is a strong policy favoring a trial on the merits and against depriving a party of his day in court." *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 996 (8th Cir. 1975). Consequently, entry of a default judgment "should be the rare judicial act." *Edgar*, 548 F.2d at 773.

---

[9] Atmosphere also asks this court to enter an order compelling Sacha Merali to respond to all written discovery requests. While the possible sanctions the court may impose is not strictly limited to those enumerated in Rule 37(b)(2)(A), the more appropriate way for Atmosphere to obtain this form of relief is by submitting a Rule 37(a) motion.

20

A default may be appropriate, however, "where the party against whom the judgment is sought has engaged in 'willful violations of court rules, contumacious conduct, or intentional delays.'" *Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (quoting *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996)). Likewise, dismissal of a party's claims may be appropriate "when a party demonstrates a 'blatant disregard of the Court's orders and the discovery rules,'" which prevents the opposing party from fairly litigating its case. *Chrysler Corp.*, 186 F.3d at 1020. Before imposing a sanction of dismissal or default, however, "fairness requires a court to consider whether a lesser sanction is available or appropriate." *Keefer v. Provident Life & Acc. Ins. Co.*, 238 F.3d 937, 940 (8th Cir. 2000). But if the facts show both willful misconduct and bad faith, the court "need not investigate the propriety of a less extreme sanction." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817-18 (8th Cir. 2001). In any case, the court "is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp.*, 186 F.3d at 1022.

As the court previously found, defendants' misconduct was willful. Docket 173 at 13. That determination has only been reinforced by the fact that the court gave defendants another opportunity to rectify their inadequate discovery responses while the court deferred its determination of which sanctions to impose. This was done because defendants did not brief the sanctions issue at all, instead relying on a nonexistent rule to justify their

failure to turn over the compelled documents on time. And yet, even with the benefit of that additional opportunity, defendants have still either failed to answer fully or failed to answer at all many of those same discovery requests. Notably, this is not a case where the information sought by Atmosphere was unknown or unavailable to defendants. *See Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993). Nor were defendants' failures based on any claim of privilege, although the court instructed defendants to complete a privilege log if they felt certain materials were in fact privileged. *See id.* (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1330 (8th Cir. 1986). Rather, defendants have once again willfully violated the court's order.

The most egregious of all defendants' transgressions, however, pertains to Exhibit Y, which defendants introduced at the preliminary injunction hearing. The court relied upon the purported communication between Karim Merali and James Henderson portrayed in that exhibit in its order denying Atmosphere's motion for preliminary injunction. *See* Docket 53. Atmosphere has sought to obtain the email and data related to it in its RFPs. The court now has reason to believe, based on Merali's response to a request for admission, that the email in Exhibit Y was in fact never sent. Defendants have also never produced the email or the correlating data Atmosphere sought, and Atmosphere's expert has likewise been unable to locate the email in the "sent" message folder. As the Tenth Circuit Court of Appeals has observed, "[d]iscovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and

22

so much money is squandered." *Lee v. Max Intern., LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011). Yet playing that type of shell game is precisely what defendants have done, only the final revelation is that what was thought to be hidden was in fact never there at all.

Thus, at its worst, defendants' conduct demonstrates that it has committed fraud on this court. At best, and construing Merali's admission as a flippant retort (in spite of this court's order for defendants to fully satisfy their discovery obligations), the court finds that such a response shows the type of bad faith sufficient to warrant the harshest sanctions available under Rule 37. *Everyday Learning Corp.*, 242 F.3d at 817-18.

Even if the court concluded defendants had not acted in bad faith, the less severe sanctions would still be inappropriate.[10] The sheer number and scope of the discovery requests that defendants have either failed to answer fully or to answer at all render the sanctions under Rule 37(b)(2)(A)(i)-(iv) unsuitable. Atmosphere's discovery requests touch on virtually every claim relevant to this case. For the court to impose the less severe sanctions in the manner as requested by Atmosphere would accomplish virtually the same thing as an order of default in Atmosphere's favor and a dismissal of defendants' claims. Further, staying the procedure would not resolve the prejudice to Atmosphere from defendants' failure to cooperate in discovery. Thus, the question becomes whether to grant Atmosphere's request for a

---

[10] Given the extent of their conduct, the court need not long contemplate defendants' request that only the costs incurred by Atmosphere to litigate this issue ought to be imposed.

default judgment in its favor or to dismiss defendants' third-party complaint, or both.

Considering the motion to dismiss defendants' third-party complaint first, Shiba and Merali have asserted claims for breach of contract, tortious interference with a business expectancy, and conversion. Docket 8.[11] These claims are reasserted as counterclaims in Shiba and Merali's answer to Atmosphere's amended complaint. Docket 46, Docket 47. Zeljka Curtullo has not asserted any third-party or counterclaims of her own. *See* Docket 102.

Atmosphere's ability to discover information related to the third-party complaint and counterclaims and to defend itself in this matter has been impeded by defendants' misconduct. Not only have additional costs and delays been incurred in general, but specific holes with regard to those claims have not been filled in. For example, both Shiba and Merali accuse Atmosphere of improperly paying James Henderson's personal expenses and commingling hotel funds into unapproved accounts. Many of Atmosphere's unanswered RFPs seek information related to payroll and accounting at the hotel, expenses, and other financial information related to the operation of the hotel. Additionally, the Schmitz email that the court ordered defendants to produce (and any others like it) in response to RFP 2 related to these same allegations. Atmosphere may be able to use that information or facts derived from it to defend itself on defendants' claims of breach of contract and conversion.

---

[11] The court granted third-party defendant Henderson's motion to dismiss defendants' RICO claims. Docket 67.

Furthermore, all three of defendants' remaining causes of action seek some measure of monetary damages that the Adoba Hotel has allegedly incurred as a result of Atmosphere's actions. But defendants failed to fully respond to RFP 2, in which Atmosphere seeks information regarding the finances of the Adoba Hotel. A complete picture of the hotel's financial state of affairs would be germane to Atmosphere's defenses to all three remaining claims.[12]

Ultimately, sanctions must be " 'just' and relate to the claim at issue in the order to provide discovery." *Hairston*, 307 F.3d at 719 (citation omitted). The court is also mindful that,

> [T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Atmosphere contends the circumstances here warrant dismissal of defendants' third-party complaint. Given the relationship between the documents Atmosphere has sought, the fact that those documents could be used to respond to defendants' claims, the court's prior order that defendants provide the documents, and defendants' second failure to comply with that order, the court agrees with Atmosphere. Defendants' third-party complaint is

---

[12] Related to these issues, defendants continue to rely on the apocryphal email in Exhibit Y in support of its other motions before this court. *See* Docket 211 at ¶ 12 (defendants' statement of undisputed material facts) (quoting Exhibit Y). Atmosphere and Henderson's ability to address to such arguments effectively has been stymied by defendants' contradictory positions on the existence of this email and the lack of clarity created by their discovery responses.

dismissed with prejudice. For the same reasons, defendants' counterclaims are also dismissed with prejudice.

Relatedly, Atmosphere has moved for partial summary judgment on Shiba and Merali's third-party complaint and counterclaims. Docket 220. Atmosphere filed a statement of undisputed material facts in support of its motion for partial summary judgment and has also moved to have certain of those facts deemed admitted. Docket 246. Because the court has dismissed Shiba and Merali's third-party complaint and counterclaims, Atmosphere's motion for partial summary judgment and motion to deem facts admitted are denied as moot.

The court will not, however, end this litigation outright by also awarding a default judgment in Atmosphere's favor at this time. Rather, defendants will be given another chance to fully satisfy their outstanding discovery obligations. Thus, defendants have until **August 20, 2015**, to do so. If the defendants once again have not complied *in full* with the court's order at that time, the court will consider imposing any and all sanctions justified by Rule 37, including entry of a default judgment. The court will also withhold judgment on Atmosphere's request for a spoliation of evidence jury instruction at this time.

As a final consideration, Atmosphere has submitted affidavits to recover its attorneys' fees and expenses for prosecuting its motion for sanctions. Docket 184-1, Docket 185-1. Attorney Frankenstein billed at an hourly rate of $250. Attorney Smoot White billed at $210 per hour. Atmosphere was billed at a rate of $100 per hour for the time of a paralegal. The court previously

determined these rates are reasonable. Docket 173 at 3. The affidavits also indicate attorney Frankenstein billed for 13 hours, totaling $3,250. Attorney Smoot White billed for 4.2 hours, totaling $882. The paralegal billed for .4 hours, totaling $40. These sums amount to $4,172. The affidavits are sufficiently detailed and the time expended appears to be reasonable. Therefore, Atmosphere is entitled to recover $4,172 plus $250.32 (6 percent sales tax) for a final award of $4,422.32.

## CONCLUSION

Defendants have again failed to produce adequate responses to a number of Atmosphere's discovery requests. Atmosphere's motion for sanctions (Docket 150) is granted. As an appropriate measure of sanctions, defendants' third-party complaint and counterclaims are dismissed. Atmosphere is entitled to recover its reasonable attorneys' fees in connection with its motion for sanctions. Accordingly, it is

ORDERED that defendants Shiba and Merali's third-party complaint (Docket 8) is dismissed with prejudice.

IT IS FURTHER ORDERED that defendants Shiba and Merali's counterclaims (Docket 46 at 9-12; Docket 47 at 9-10) are dismissed with prejudice.

IT IS FURTHER ORDERED that defendants Shiba and Merali will pay Atmosphere a total of $4,422.32 in attorneys' fees and sales tax. Said amount is due and payable by **August 20, 2015.**

IT IS FURTHER ORDERED that Atmosphere's motion for partial summary judgment (Docket 220) is denied as moot.

IT IS FURTHER ORDERED that Atmosphere's motion to deem facts admitted (Docket 246) is denied as moot.

Dated July 29, 2015.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE