UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ATMOSPHERE HOSPITALITY MANAGEMENT, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> SHIBA INVESTMENTS, INC., KARIM MERALI, and ZELJKA CURTULLO, <br><br> Defendants. | 5:13-CV-05040-KES <br><br> MEMORANDUM OPINION AND ORDER DENYING MOTION TO AMEND DEFENDANTS' ANSWER TO ATMOSPHERE'S REQUEST FOR ADMISSION AND DENYING MOTION FOR RECONSIDERATION |

Defendants, Shiba Investments, Inc., Karim Merali, and Zeljka Curtullo, move this court under Federal Rule of Civil Procedure 36(b) for leave to file an amended response to plaintiff Atmosphere Hospitality Management, LLC's requests for admission. Docket 269. Defendants also move the court under Federal Rule of Civil Procedure 60(b), seeking relief from the court's July 29, 2015 order imposing sanctions. Docket 278.[1] Atmosphere resists the motions. For the following reasons, the court denies the motions.

**BACKGROUND**

Atmosphere brought this action against Shiba and Merali to resolve issues related to a licensing contract and management contract between the parties that allowed Shiba to operate a hotel it owned under Atmosphere's

---

[1] Defendants also requested oral argument pursuant to D.S.D. Civ. LR 7.1. Docket 278 at 1. Because the court can resolve the pending motions without oral argument, defendants' request is denied.

brand, "Adoba." On September 6, 2013, Atmosphere moved for a preliminary injunction to enjoin defendants from using the Adoba brand and processes associated with the brand and further asked the court to order Shiba to pay all debts owed to vendors incurred during the operation of the hotel. Docket 27. Hearings were held on the preliminary injunction motion in October of 2013.

Karim was called to testify at the preliminary injunction hearings. Defendants introduced a number of exhibits into evidence, including what was labeled as "Exhibit Y." *See* Docket 86 at 93 (transcript of proceeding). Exhibit Y consisted of two pages. The first page was a screenshot of an email allegedly sent from Karim to James Henderson, carbon copied to "Sacha," on December 31, 2011, at 4:59 p.m. Karim's email address is depicted as "radisson@rapidcity.com." The text of the email portrayed in the screenshot reads: "Jim, Attached is the license Agreement… Please review and let me know if ok as per our discussions late last night. I will work on the management contract tomorrow as it is getting ready for NY Eve Celebration." The screenshot also shows a file attachment that reads "ADOBALicenseAgreement-Final.docx (53.5 KB)." The second page of Exhibit Y is a print out of the text of the December 31, 2011 email. At the top of the second page is a header indicating that the email was forwarded from "adoba@rapidcity.com" to former defense counsel, Courtney Clayborne,[2] on October 27, 2013, at 1:00 p.m.

Clayborne asked Karim about Exhibit Y. That testimony is as follows:

---

[2] On June 5, 2015, this court found Clayborne was likely to be a material witness in the matter and disqualified him from further representing defendants. Docket 255.

Q:      I'm now going to show you Exhibit Y and ask you if you can
        tell me what Exhibit Y is?

A:      This is an email I sent to Jim Henderson.

Q:      And Exhibit Y is – is two pages. The front page appears to be
        what appears on the computer screen and the second is the
        actual email?

A:      Yes.

Q:      And Exhibit Y was sent on Saturday, December 31, at 4:59
        p.m.?

A:      Correct.

Q:      From you to Mr. Henderson?

A:      And a copy to Sacha.

*Id.*

On December 18, 2013, this court found that Atmosphere had not met

its burden of showing that defendants should be enjoined from operating the

hotel using the Adoba brand and processes while this action was pending.

Docket 53.[3] One of Atmosphere's theories was that defendants fraudulently

induced Atmosphere to enter the licensing agreement and that the agreement

should therefore be rescinded. This court applied the factors laid out in

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 724 (8th Cir. 1981), and found

that Atmosphere was not likely to succeed on the merits of that claim. The

court cited Exhibit Y as "show[ing] the parties were negotiating the terms of the

---

[3] The court concluded that the parties' management contract
unambiguously required Shiba to bear responsibility for all debts owed to
vendors during operation of the hotel and therefore ordered Shiba to pay such
debts and to refrain from informing vendors that Atmosphere was responsible
for payment.

3

contract as of December 30, 2011, and also show[ing that] Atmosphere had access to the final version prior to and immediately after signing it." *Id.* at 9-10. Exhibit Y, in conjunction with other evidence, suggested that even if Atmosphere was fraudulently induced to enter the contract, Atmosphere either did not act to rescind the contracts promptly or neglected its legal duty to read the contracts before signing them.

Subsequently, numerous discovery disputes arose between the parties. Atmosphere moved to compel discovery that, among other things, related to Exhibit Y. For example, Atmosphere's first set of discovery requests was served on March 28, 2014, and included several requests for production. *See* Docket 100-1. Request for production number 2 stated:

> Please produce a copy of all communications in hard copy and electronic format, including email, text messages and attachments, whether personal or business, by Defendants, its attorneys and/or its employees, including but not limited to emails between, to, or from Karim Merali, Sacha Merali, Mehdi Merali, Zeljka Curtilo, Batool Merali and/or their attorney(s) regarding the Adoba brand, Atmosphere, Jim Henderson, Adrienne Pumphrey, the agreements between the parties to this litigation, the operation and/or management of the Adoba hotel in Rapid City, the renovations of the hotel to the Adoba brand, the use of the Adoba brand, the intentions of the parties in their relations, any negotiations, and the finances of both Adoba and Atmosphere. This request is not asking for communications solely between a client and its/his/her attorney.

*Id.* at 4. And request for production number 5 stated:

> For each such email produced in response to Request for Production Nos. 2, 3 and 4, please provide a copy of the corresponding .pst file, a print-out of the email listed amongst the other emails in the Sent box sent on the same day as the email produced, a print-out of the email listed amongst other emails in the Inbox or other folder received on the same day as the email produced, a print out of all metadata for each email produced, and

all emails saved and produced in their native format on a CD. This request requires this information even for emails that may have been previously produced.

*Id.* at 5.

Prior to the filing of Atmosphere's motion to compel, the parties met and conferred. Among other issues, the parties agreed that information related to Exhibit Y would be turned over. Docket 100-5 at 3.[4] Specifically, Atmosphere expressed its belief that the December 31, 2011 email was never sent and that the correlating ".pst" file information sought by its RFP number 5 was of particular importance. *Id.*

On September 29, 2014, this court compelled complete responses to most, but not all, of Atmosphere's discovery requests, including RFP numbers 2 and 5. Docket 169 (transcript). The court set deadlines for the information to be turned over. The court also ordered that the parties meet and agree on a date for Atmosphere's expert, Dan Meinke, to inspect Karim's computer for forensic analysis in relation to RFP number 5. *Id.* at 25-26. Meinke conducted his analysis over the course of the next several months. *See* Docket 199-9 (Meinke's report). Meinke was able to locate two identical images of the email on Karim's computer but opined that "no proof exists that the email in question on Exhibit Y and the two emails found on [Karim's computer] ever successfully reached [Jim Henderson] on December 31, 2011." *Id.* at 4.

---

[4] This docket entry is a letter from Atmosphere summarizing the meeting wherein Atmosphere asked defendants' counsel to respond with any disagreements to the summary. No response was given.

On October 13, 2014, Atmosphere moved for attorneys' fees and sanctions and argued that it had not received complete discovery responses from defendants even though the court's deadline had passed. Docket 147; Docket 150. On January 9, 2015, the court granted Atmosphere's motion for attorney's fees and ordered further briefing on the issue of sanctions.[5] Docket 173. As part of that order, the court determined that most, but not all, of defendants' discovery responses were incomplete. Additionally, the court cautioned:

> Defendants should also explain what steps they have taken to correct the insufficient discovery responses. In determining sanctions, the court will consider, among other factors, whether defendants have remedied their failure to comply with the court's order on the motion to compel. If defendants have not complied in full with the court's order [by January 30, 2015], the court will consider imposing any and all sanctions authorized under Rule 37, up to and including dismissal of the third-party complaint or entry of a default judgment.

*Id.* at 14-15.

On January 15, 2015, Atmosphere received a response regarding its third set of discovery requests signed by Karim. Docket 184-2. That set of discovery included the following request for admission:

> 48. Admit that your Exhibit Y introduced at the preliminary injunction hearing was never emailed to James Henderson.
>
> RESPONSE: Admit. I believe it was hand delivered.

---

[5] Defendants did not brief the sanctions issue at all, instead asserting that they had complied with the court's order within the correct number of days. The court explained that the rule defendants purported to rely on to calculate the due date "does not exist," and determined that, with one exception, each of defendants' late-filed responses were inadequate. *See* Docket 173.

*Id.* at 2. Another response dated February 12, 2015, included the same admission. Docket 219-22 at 10.

On July 29, 2015, this court ruled on Atmosphere's motion for sanctions. Docket 258. The court found that defendants had not remedied their incomplete discovery responses. Additionally, the court determined that defendants' conduct was willful and that defendants acted in bad faith. Thus, the court dismissed defendants' third-party complaint and counterclaims as appropriate sanctions.

Regarding the finding of bad faith, the court observed that it had relied on defendants' Exhibit Y in its order denying Atmosphere's preliminary injunction motion. *Id.* at 9. Additionally, the court found that defendants never produced the email and correlating data that Atmosphere sought in its RFPs that were compelled by the court. The court also noted Meinke's report and his belief that the December 31, 2011 email was never sent, as well as defendants' January 15, 2015 response to Atmosphere's request for admission number 48 concerning Exhibit Y. Regarding that admission, the court found:

> Obviously, Atmosphere sought an admission to whether the communication portrayed in the exhibit, not the physical exhibit itself, was ever emailed to James Henderson. Notably, the signature on this response is dated January 15, 2015. Docket 184-2 at 3. Thus, six days had elapsed since this court warned defendants that sanctions would be forthcoming if they did not fully and completely remedy their inadequate discovery responses. Whether or not Merali intended this response to be a poorly conceived and incredulous answer to Atmosphere's request for admission, the court will take Merali at his word: The email was never sent.

*Id.* at 10. Thus, the court concluded that:

7

at its worst, defendants' conduct demonstrates that it has committed fraud on this court. At best, and construing Merali's admission as a flippant retort (in spite of this court's order for defendants to fully satisfy their discovery obligations), the court finds that such a response shows the type of bad faith sufficient to warrant the harshest sanctions available under Rule 37.

*Id.* at 23.

## I.    Defendants' Motion to Amend Their Response to Atmosphere's Request for Admission

### LEGAL STANDARD

Rule 36(b) of the Federal Rules of Civil Procedure governs a party's request to withdraw or amend an admission. That rule provides that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). The rule further explains that:

the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

*Id.* Thus, the rule directs a court to consider two inquiries: (1) the effect on the litigation; and (2) prejudice to the non-moving party. *F.D.I.C. v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994) (quoting *Mid Valley Bank v. N. Valley Bank*, 764 F. Supp. 1377, 1391 (E.D. Cal. 1991)). "Although an admission should ordinarily be binding on the party who made it, there must be room in rare cases for a different result, as when an admission no longer is true because of changed circumstances or through honest error a party has made an improvident admission." 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice &*

8

*Procedure* § 2264 (3d ed.) (hereinafter Wright & Miller). A court's decision to permit or deny the amendment of an admission is reviewed for an abuse of discretion. *Prusia*, 18 F.3d at 640; *see also Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312-13 (8th Cir. 1983).

Under the first prong of Rule 36(b), the court should consider whether permitting the amendment would promote presentation of the merits of the action. *Prusia*, 18 F.3d at 640. In *Prusia*, the Eighth Circuit looked to *Davis v. Noufal*, 142 F.R.D. 258 (D.D.C. 1992) and *Rabil v. Swafford*, 128 F.R.D. 1, 2 (D.D.C. 1989) to explain that if an "inaccurate admission" was to "completely preclude consideration of the merits," then allowing the amendment to be made would promote the presentation of the merits of the action. *Id.* (summarizing *Davis*); *Rabil*, 128 F.R.D. at 2 (noting that "[t]he subject matter of these admissions all reach the merits of the case as their admission would effectively preclude the defendant's case."); *see also Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007) (explaining the first inquiry is met "when upholding the admissions would practically eliminate any presentation of the merits of the case.") (quotation omitted); *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1266 (11th Cir. 2002) (same).

Under the second prong, the court's inquiry is focused on " 'the difficulty a party may face in proving its case' because of the sudden need to obtain evidence required to prove the matter that had been admitted." *Prusia*, 18 F.3d at 640 (quoting *Gutting*, 710 F.2d at 1314). Thus, mere inconvenience or "[t]he necessity of having to convince the trier of fact of the truth of a matter

9

erroneously admitted is not sufficient." *Id.* (citations omitted). Rather, prejudice

is demonstrated by the difficulties a party would face at trial such as "the

unavailability of key witnesses[.]" *Conlon*, 474 F.3d at 623.

## DISCUSSION

Defendants seek leave to amend their response to Atmosphere's request

for admission number 48. That request, and defendants' response to it, is as

follows:

> 48. Admit that your Exhibit Y introduced at the preliminary
> injunction hearing was never emailed to James Henderson.

> RESPONSE: Admit. I believe it was hand delivered.

Docket 184-2 at 2. Defendants' amended response would read:

> Defendants qualify their response on the following basis. The
> actual "*your Exhibit Y*" was an exhibit created or prepared by their
> previous counsel, Mr. Clayborne, on or near the date of the
> preliminary injunction hearing, which first commenced October 24,
> 2013 – almost one year and ten months after *the actual e-mail in
> dispute* was written and transmitted. On behalf of Defendants, Mr.
> Clayborne admitted the matter requested because he believed it to
> specifically reference *the actual <u>exhibit</u>*, which was a "screenshot"
> from his computer, made for the hearing, of an image of the
> December 31, 2011 e-mail from Karim Merali to James Henderson.
> (Admittedly, page two of that exhibit is a *copy* of the e-mail
> forwarded to Mr. Clayborne by Karim on October 27, 2013.) Based
> on that understanding, Defendants admit that *the actual <u>exhibit</u>*
> created by Mr. Clayborne for the hearing was not transmitted by
> e-mail to James Henderson. Defendants deny that *the actual e-mail
> in <u>dispute</u>* – the one dated December 31, 2011 from Karim Merali to
> James Henderson – "was never emailed to James Henderson." In
> fact, Defendants assert that such e-mail was transmitted by Karim
> Merali to James Henderson with a cc: to Sacha Merali. Defendants
> have produced a report (along with supporting documentation and
> data) by Mr. John Burckhard of Black Hills Technologies that
> substantiates their position that *the actual e-mail in dispute* was
> transmitted by e-mail to James Henderson.

Docket 270 at 2-3 (emphasis in original).

The purpose of defendants' motion is to make their response to Atmosphere's request for admission correspond to Karim's testimony during the preliminary injunction hearing. During that hearing, Karim agreed with Clayborne that "Exhibit Y was sent on Saturday, December 31, at 4:59 p.m." Docket 86 at 93.

Beginning with the second prong of the court's analysis, the court finds that Atmosphere has not demonstrated sufficient prejudice. Part of Atmosphere's argument stems from the fact that it has already filed several dispositive motions that are pending before the court. But "preparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice." *Prusia*, 18 F.3d at 640. The remainder of Atmosphere's argument concerns the difficulty it would face responding to the statements contained in the admission. The prejudice prong, however, is not satisfied by a showing of difficulty in responding to the admission alone, but rather by showing that Atmosphere "will be unable to produce evidence" in response to defendants' amended position at trial. *Gutting*, 710 F.2d at 1314. Likewise, prejudice is not shown by inconvenience or the need for additional time to gather evidence. *Prusia*, 18 F.3d at 640. Here, Atmosphere has an expert who can rebut defendants' contention that the email was in fact sent. Thus, Atmosphere has not met its burden to show prejudice.

Turning to the first factor, both parties take generalized positions. For example, defendants contend that "[t]he issue of whether that email was

11

transmitted is crucial, going to the merits of the case" without any elaboration. Docket 270 at 5. Atmosphere responds primarily by noting that additional time would be needed to depose Merali, Clayborne, or others. Docket 277 at 6-7. The court agrees with defendants that, for example, whether the email was sent would be relevant to Atmosphere's claims for breach of contract or fraud in the inducement. But whether the email was sent would not necessarily result in an automatic resolution of Atmosphere's claims in its favor. And whether the email was sent would likely not be relevant to Atmosphere's claim of defamation.

Cases analyzing the sufficiency of this factor suggest that the admission should effectively resolve a dispute if the admission is allowed to stand. *Cf. Prusia*, 18 F.3d at 640 (explaining that "[b]ecause allowing the erroneous admission to stand might have barred the FDIC's claim, permitting the amendment would have subserved the presentation of the merits."); *Conlon*, 474 F.3d at 622 (finding that "upholding the deemed admissions eliminated any need for a presentation on the merits, [therefore] Conlon satisfies the first prong of the test in Rule 36(b)."); *Perez*, 297 F.3d at 1266 (observing "the items the court had deemed admitted conclusively established the liability of both defendants[.]"); *Davis*, 142 F.R.D. at 259 (noting "[d]efendants' requested admissions negated all of plaintiff's allegations."). Defendants have not made such a showing.

Even if defendants had satisfied both prongs, the final inquiry is whether the court will exercise its discretion to permit the amended admission. Rule 36(b) provides that a court "may" permit withdrawal or amendment of an

admission if the two-factor analysis is met. Courts analyzing this issue have explained that "[b]ecause the language of the Rule is permissive, the court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule." *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 652 (2d Cir. 1983); *see also In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) ("Even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission."); *Conlon*, 474 F.3d at 624 ("We have not previously opined on whether Rule 36(b) requires a district court to grant relief when the moving party can satisfy the two-pronged test. We hold that it does not."); *United States v. Kasuboski*, 834 F.2d 1345, 1350 n.7 (7th Cir. 1987) (explaining that "Rule 36(b) allows withdrawal of admissions if certain conditions are met and the district court, it its discretion, permits the withdrawal.").

Generally, a court should not focus on the moving party's excuse for making an erroneous admission. *Prusia*, 18 F.3d at 640. In this case, however, defendants' proposed amended admission contains an excuse. That is, defendants assert that attorney Clayborne believed that Atmosphere's request sought an admission that the physical exhibit, rather than the email it depicted, was never sent to Henderson. In their brief, defendants explain:

> The amended response was prepared by the undersigned counsel after an in-person conference with Defendants' previous counsel, Mr. Clayborne. Mr. Clayborne explained that he answered the request as he did because he truly believed that it was requesting whether "*your Exhibit Y*" was ever sent to James Henderson by

13

> email. He further explained how he created Exhibit Y by making a
> "screenshot" from his office computer of the email forwarded to
> him by Mr. Merali – the subject December 31, 2011 email.
> Hopefully, the details stated above in the amended response
> explain sufficiently the basis for how the original admission was
> made.

Docket 270 at 3 (emphasis in original). But it was Karim and not Clayborne who signed the request for admission – so it is Karim's understanding of his answer that matters and not Clayborne's. Fed. R. Civ. P. 36(a). And even if Clayborne's understanding mattered, defendants have not produced an affidavit or a signed statement from Clayborne that states that his understanding of the request for admission was as defendants now present it.

Also, regarding the report of John Burckhard, his report consists of a page and a half of his findings. Docket 267-2. The report is not signed, Burckhard has not been noticed or designated as an expert, and defendants have not produced Burckhard's curriculum vitae that are all required by Rule 26(a)(2)(B) as if he were serving as an expert. Defendants acknowledge these facts and contend that Burckhard is simply acting as a "consultant," even though defendants are attempting to use Burckhard's report to refute issues raised by Atmosphere's expert Dan Meinke. *See* Docket 287 at 7.

Moreover, defendants' contention that the request for admission asked about the physical Exhibit Y and not about the email attached to the exhibit is incredible. The phrasing of the request mirrored Clayborne's question at the preliminary injunction hearing. *Compare* Docket 86 at 93 ("And Exhibit Y was sent on Saturday, December 31, at 4:59 p.m.?") *with* Docket 184-2 at 2 ("Admit that your Exhibit Y introduced at the preliminary injunction hearing was never

14

emailed to James Henderson."). During the hearing, neither Karim nor Clayborne had any difficulty comprehending that Exhibit Y was the tangible surrogate for the intangible email. And unlike a spontaneous answer elicited by a question at trial, a party responding to a request for admission has time to contemplate the matter in order to formulate an appropriate and accurate response, a response that ultimately reflects their conscious choice. Thus, no plausible reading of Atmosphere's request for admission would suggest that Atmosphere was asking about when the exhibit itself was delivered to Henderson instead of whether Karim actually sent the email to Henderson.

As this court noted in its July 29, 2015 order imposing sanctions, the signature on defendants' response to this admission was dated January 15, 2015. Docket 258 at 10. That signature date was merely six days after this court warned defendants that sanctions would be forthcoming if they did not fully comply with the court's orders. While that warning was given in conjunction with defendants' failure to respond to Atmosphere's first set of discovery requests, it behooved defendants to ensure that *all* of their discovery responses were fully formed, adequately presented, and completed in good faith.[6] Therefore, the court concludes it will not permit defendants to amend their response to Atmosphere's request for admission.

## II.  Defendants' Motion for Reconsideration

### LEGAL STANDARD

---

[6] The court also observed that defendants failed to produce any of the data correlating with the email as sought by Atmosphere in its requests for production.

15

Rule 60(b)(1) of the Federal Rules of Civil Procedure allows a court to relieve a party from a final judgment, order, or proceeding due to "mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1). The rule is grounded in equity and it "is to be given a liberal construction so as to do substantial justice and 'prevent the judgment from becoming a vehicle of injustice.' " *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 755 (8th Cir. 1996) (quoting *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir. 1984)). Its purpose is "to preserve the delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience that justice be done in light of all the facts." *Id.* At the same time, "[r]elief under Rule 60(b) is an extraordinary remedy that lies within the discretion of the trial court." *Hunter v. Underwood*, 362 F.3d 468, 475 (8th Cir. 2004) (quoting *In re Design Classics, Inc.*, 788 F.2d 1384, 1386 (8th Cir. 1986)). "Thus, relief will not be granted under Rule 60(b)(1) merely because a party is unhappy with the judgment. The party must make some showing justifying the failure to avoid the mistake or inadvertence." Wright & Miller § 2858. Consequently, "[r]eversal of a district court's denial of a Rule 60(b) motion is rare because Rule 60(b) authorizes relief in only the most exceptional of cases." *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005) (quoting *Int'l Bhd. of Elec. Workers v. Hope Elec. Corp.*, 293 F.3d 409, 415 (8th Cir. 2002)).

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 382-83 (1993), the Supreme Court addressed whether a bankruptcy creditor's failure to meet a filing deadline constituted "excusable neglect." While the

16

Court analyzed the "excusable neglect" language contained within Bankruptcy Rule 9006(b)(1), it also examined the phrase as it appeared within several of the Federal Rules of Civil Procedure. *Id.* at 391-92. In the specific context of Rule 60(b), the Court concluded that the rule's "neglect" language "encompasse[d] situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394. With respect to whether a party's neglect is "excusable," the Court identified a number of factors to consider, such as "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. The Eighth Circuit has regularly applied the factors identified in the *Pioneer* decision to subsequent "excusable neglect" cases. *See, e.g.*, *Union Pac. R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 783 (8th Cir. 2001); *Feeney v. A T & E, Inc.*, 472 F.3d 560, 563 (8th Cir. 2006). Also, the Eighth Circuit has "concluded 'the existence of a meritorious defense continues to be a relevant factor' " in Rule 60(b) cases. *Union Pac. R. Co.*, 256 F.3d at 783 (citing *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)).

## DISCUSSION

### A.   Whether Defendants' Actions Constituted "Neglect?"

The first inquiry identified by the Court in *Pioneer* is a determination of whether a party's conduct constitutes "neglect," which the Court equated with carelessness or negligence. *Pioneer*, 507 U.S. at 394. But if a party's conduct is

*intentional*, the Eighth Circuit Court of Appeals has found the neglect is not excusable. *See, e.g., Johnson*, 140 F.3d at 784 ("Our cases have consistently sought to distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines. We have rarely, if ever, excused the former.") (citing cases); *see also Eskridge v. Cook Cty.*, 577 F.3d 806, 810 (7th Cir. 2009) (noting the deliberate choice to litigate in state rather than federal court was not "neglect" under Rule 60(b)(1)); *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1101 (9th Cir. 2006) (observing that parties are bound by their intentional acts which cannot serve as a basis for relief under Rule 60(b)(1)).

This court's order for sanctions found that defendants engaged in willful misconduct. Docket 258 at 21-22 ("Rather, defendants have once again willfully violated the court's orders."). The court also found that defendants engaged in bad faith. *Id.* at 23 ("At best . . . the court finds that such a response shows the type of bad faith sufficient to warrant the harshest of sanctions."). In *Johnson*, the Eighth Circuit expressed hesitation with equating conduct that is willful with conduct that is intentional. *Johnson*, 140 F.3d at 784-85 (explaining that " 'willful' is too ambiguous a term" and concluding the movant's conduct "was not contumacious, it did not exhibit an intentional flouting or disregard of the court and its procedures[.]"). Here, however, defendants had several chances to remedy their inadequate discovery responses and repeatedly failed to do. And the court warned defendants that sanctions would be forthcoming if they did not comply with the court's orders

18

in full. Docket 173 at 14. It was only when defendants again failed to comply with the court's order in spite of that warning that the court imposed the sanctions defendants are now asking this court to reconsider. Docket 258. While a conclusion that defendants' conduct was intentional is supported by the record, the court will assume for purposes of this motion only that their actions were merely neglectful.

**B.    Whether Defendants' Conduct is "Excusable?"**

**1.    The *Pioneer* equitable factors**

Under *Pioneer*, the next inquiry is whether the neglect is "excusable" and that depends on balancing the *Pioneer* equitable factors. *Pioneer*, 567 U.S. at 395. Defendants do not explicitly analyze any of the *Pioneer* factors that the court must consider or explain how those factors should weigh in their favor. Rather, defendants' brief is focused primarily on laying the blame for the court's sanctions at the feet of their former counsel, Courtney Clayborne. Nonetheless, the court will attempt to construe defendants' arguments as addressing the *Pioneer* factors where applicable.

**i.    Reason for the Neglect**

The Eighth Circuit has stated that the party's reason for its neglect is "[t]he most important factor in the analysis[.]" *See, e.g.*, *Feeney*, 472 F.3d at 563; *Gibbons v. United States*, 317 F.3d 852, 854 (8th Cir. 2003) (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000) (noting the *Pioneer* factors do not carry equal weight); *but see Union Pac. R. Co.*, 256 F.3d at 783 (faulting the district court for focusing exclusively on the party's

reason for its mistake). "While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry." *Gibbons*, 317 F.3d at 854 (quoting *Lowry*, 211 F.3d at 463).[7] But if a party's reason for its neglect is not satisfactory, "relief may be required where other equitable considerations weigh strongly in favor of [granting relief]." *Feeney*, 472 F.3d at 563.

Defendants primarily assert that their former counsel, attorney Clayborne, is to blame for their neglect. They devote several pages of their brief chronicling instances of Clayborne's conduct which, according to defendants, demonstrate his "neglect, disregard, and disobedience" in this proceeding. Docket 279 at 6-10. Also, defendants offer several narrative statements from Karim, Sacha, Zeljka, and other individuals in support of their arguments. *See* Docket 268. Among other things, these narratives contain numerous allegations impugning Clayborne's representation as well as descriptions of conversations that allegedly took place between Clayborne and the providers of the statements. Nearly all of these proffered narratives, however, are unsworn, self-serving in content, and hearsay in form.

Regardless of the admissibility of these narratives, they also contain allegations that are internally inconsistent or simply contradicted by the record. For example, Karim contends that "[n]o one recalls ever seeing

---

[7] The *Gibbons* and *Lowry* cases involved Fed. R. App. P. 4(a)(5), which allows a court to extend the time to file a notice of appeal if the moving party demonstrates "excusable neglect or good cause," and the Eighth Circuit applied the *Pioneer* factors in both decisions. *See Gibbons*, 317 F.3d at 853-54; *Lowry*, 211 F.3d at 462.

[Atmosphere's] first set of Discovery." Docket 268-2 at 3. In the same paragraph, however, Karim recalls answering Atmosphere's requests for admissions and signing typed responses to the discovery inquiries. Karim is identified as the individual answering Atmosphere's first set of discovery in May of 2014, although the document is unsigned. Docket 100-2. In fact, Karim did sign supplemental responses to Atmosphere's first set of discovery requests on October 14, 2014, and January 27, 2015. Docket 164-1; Docket 199-1.

Also, Karim acknowledges in the unsworn statement that he would ask Clayborne to object to information sought by Atmosphere despite his now-claimed ignorance of what Atmosphere requested. *Compare* Docket 100-1 at 6 (Request for Production No. 23) ("Produce all Native American employee payroll records from 2004-2012 and employee files to match these records.") *and id.* (Request for Production No. 24) ("Produce all payments made to foreign workers from 2004-2012 and employee files to match these records.") *with* Docket 268-2 at 3 ("At times, I would ask him to object due to the enormous requirement of discovery of items or because of the invasion of privacy on the people. For example, to submit all employee records from 2004 to 2013 broken down by foreigners, Native Americans."). Zeljka Curtullo also acknowledges conversing with Karim about Atmosphere's discovery requests. Docket 268-5 at 3. Thus, the veracity of defendants' allegations in these narratives is questionable at best.

Regarding defendants' argument that attorney Clayborne is to blame, the Eighth Circuit has held that attorney ignorance or carelessness is generally not

the type of neglect held to be excusable under Rule 60(b)(1). *Noah,* 408 F.3d at 1045 (citing cases). The court has observed that "[l]itigants choose counsel at their peril." *Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 118 (8th Cir. 1997). As the Supreme Court held in *Pioneer,*

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'

*Pioneer*, 507 U.S. at 397 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962)). Thus, the Eighth Circuit has stated that a party's recourse is not through Rule 60(b) but through a legal malpractice action. *Inman*, 120 F.3d at 118.

Illustratively, the Eighth Circuit has found that an attorney's illness is not an excusable justification for missing an appeal deadline, *Gibbons*, 317 F.3d at 855, that an attorney's busy schedule was not sufficient to warrant relief from the dismissal of a complaint, *Noah*, 408 F.3d at 1045, and that the failure to check or adequately make arrangements to check mail is an insufficient reason for missing a summary judgment deadline. *Feeney*, 472 F.3d at 563. More analogous to this case, the Eighth Circuit has also held that an attorney's failure to follow the clear dictates of a court order is not excusable neglect. *In re Guidant Corp.*, 496 F.3d 863, 867-67 (8th Cir. 2007); *Ceridian Corp. v. SCSC Corp.*, 212 F.3d 398, 404 (8th Cir. 2000). In *Guidant Corp.*, the court observed:

22

> [The plaintiffs] did not provide the court with a current email
> address, a completed fact sheet, or a signed medical disclosure
> form by the required deadline. Counsel was notified at least three
> times that he had failed to comply with the orders. Upon each
> notice, Counsel submitted incomplete answers to questions on the
> district court's mandated fact sheet. Eventually, Guidant moved to
> dismiss the [plaintiffs'] claims.

*Guidant Corp.*, 496 F.3d at 866. Finding that the district court did not abuse its

discretion when it dismissed the plaintiffs' request for relief, the Eighth Circuit

explained that "[t]hese errors epitomize the type of professional carelessness

that we have held does not warrant relief under Rule 60(b)." *Id.* at 868.

Here, the court granted Atmosphere's motion to compel on

September 29, 2014, and ordered certain information be timely produced and

turned over by defendants. *See* Docket 169 (transcript of proceedings). When

most of that information was not turned over on time by the defendants,

Atmosphere moved for attorneys' fees and sanctions. Docket 147; Docket 150.

This court granted Atmosphere's request for attorneys' fees but ordered further

briefing on the issue of sanctions because defendants did not address the

issue. Docket 173. The court warned defendants that if they did not comply

with the court's order in full by January 30, 2015, "the court will consider

imposing any and all sanctions authorized under Rule 37, up to and including

dismissal of the third-party complaint or entry of a default judgment." *Id.* at

14-15. Defendants did serve supplemental responses, including Karim's signed

supplemental response dated January 27, 2015. But Atmosphere objected and

contended the supplemental responses still did not fully comply with this

court's earlier order granting the motion to compel. This court agreed with

Atmosphere and concluded the responses were still inadequate and imposed the sanctions defendants now ask this court to reconsider. Docket 258. Thus, as in *Guidant Corp.*, this court notified defendants several times of their inadequate discovery responses and, in spite of the warning that sanctions would be forthcoming if those inadequacies were not timely cured, defendants failed to follow the clear dictates of the court's orders. Although defendants wish to place all the blame on their former attorney for their failure to comply with this court's orders, that is not a sufficient justification warranting relief under Rule 60(b)(1). *See, e.g.*, *Guidant Corp.*, 496 F.3d at 868; *Noah*, 408 F.3d at 1045. Thus, this factor weighs strongly against defendants' request for relief.

### ii.    Good Faith

The good faith factor focuses on the intent of the neglecting party and its attempt (if any) to comply with the court's order. *Cf. Guidant Corp.*, 496 F.3d at 867 (finding a lack of good faith when the defaulting party had three opportunities over several months to comply with court orders but failed to do so). This court has already determined that defendants' non-compliance with the court's orders was conducted in bad faith and that their bad faith was relevant to the sanctions the court imposed. Docket 258 at 23.

Defendants correctly observe that the court's imposition of sanctions was not predicated on their future compliance with the court's orders. Rather, whether defendants subsequently complied with the court's orders would be a relevant consideration to any *future* sanctions that might be imposed. Docket 238 at 26 ("If the defendants once again have not complied *in full* with the

24

court's order at that time, the court will consider imposing any and all sanctions justified under Rule 37, including entry of a default judgment.") (emphasis in original). While defendants assert that they have worked diligently to comply with the court's order since the court imposed sanctions, the fact that they may now finally have complied with their discovery obligations after being sanctioned does not transform their bad faith into good faith. So, the court finds that this factor weighs against defendants' claim for relief.

### iii.   Danger of Prejudice to Atmosphere

When ruling on a Rule 60(b) motion, a court must "also consider whether any substantial rights of the nonmoving party have been prejudiced." *MIF Realty L.P*, 92 F.3d at 756 (citing *Hoover v. Valley West D.M.*, 823 F.2d 227, 230 (8th Cir. 1987)). The Eighth Circuit has stated that "prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." *Johnson*, 140 F.3d at 785. Rather, prejudice requires a showing "such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.' " *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)); *see also Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir. 2008) (concluding that the increased difficulty of conducting discovery and re-litigating claims after a default had been entered several years ago constituted sufficient prejudice).

This case is now over two years old and the discovery deadline has long passed. Docket 121 (ordering discovery deadline of January 2, 2015). Several dispositive motions are now pending. And the court's July 29, 2015 order

dismissed several motions for summary judgment related to defendants' third-party complaint and counterclaims as moot. Docket 258 at 26. The briefs filed by Atmosphere related to defendants' third-party complaint and counterclaims were filed without Atmosphere's knowledge of the additional information that defendants assert they have now turned over and without Atmosphere's ability to depose the individuals relevant to the information recently disclosed by defendants. As the court observed before, "Atmosphere's discovery requests touch on virtually every claim relevant to this case." *Id.* at 23. Thus, the undisclosed information was not limited in its relevance to defendants' third-party complaint and counterclaims. Rather, it was relevant to Atmosphere's claims as well. And the court not only noted the increased time and effort that Atmosphere was required to expend in order to pursue discoverable information generally, but also that "Atmosphere's ability to discover information related to the third-party complaint and counterclaims and to defend itself in this matter has been impeded by defendants' misconduct." *Id.* at 24. Given the added delay, expenses, and discovery difficulties that have already occurred and may occur again by reinstating defendants' third-party complaint and counterclaims, the court finds that Atmosphere would be sufficiently prejudiced for this factor to weigh against granting defendants' claim for relief.

### iv.    Length of Delay

Assessing this factor requires the court to consider not only the length of a party's non-compliance, but also the impact of that non-compliance on

26

judicial proceedings. *Guidant Corp.*, 496 F.3d at 867. Atmosphere's first set of discovery responses was served upon defendants on March 28, 2014. *See* Docket 100-1. By the time the court's order imposing sanctions was issued on July 29, 2015, over sixteen months had passed since Atmosphere's discovery requests were first served. Defendants contend that as of August 20, 2015, they were in compliance with the court's order. Assuming that to be true, the length of defendants' delay in fully responding to Atmosphere's discovery request was nearly seventeen months. Alternatively, if the court measured the length of the delay from the date of the court's September 29, 2014 order granting Atmosphere's motion to compel, the length of delay would still be nearly eleven months.

In *Union Pacific R. Co.*, 256 F.3d at 782, Progress Rail filed a motion to set aside a default judgment entered against it because it had failed to respond to Union Pacific's complaint. The Eighth Circuit stated that Progress Rail sought relief "less than six months after Union Pacific filed its complaint." *Id.* at 783. The court described this period as a "short-term delay" and saw "no reason to think that providing relief to Progress Rail would disrupt the judicial process in any measurable way." *Id.* In *Guidant Corp.*, 496 F.3d at 867, the plaintiffs did not submit the documentation ordered by the court until six months after its deadline. The Eighth Circuit noted that "[i]n some circumstances, such a delay might be insignificant," but because the case involved multidistrict litigation, the court found that "the delay also impacted the nearly 1,400 other plaintiffs by unfairly diverting the time and attention of

the court away from their claims to that of the [plaintiffs]." *Id.* In an unpublished opinion, the Ninth Circuit agreed with a district court's conclusion that an eleven month delay weighed against the movant's request for relief under Rule 60(b)(1). *Minns v. Peake*, 466 F. App'x 619, 620 (9th Cir. 2012) (unpublished).

The court finds that the length of defendants' delay, even giving them the more favorable measurement of nearly eleven months, is significant. While that delay may not have impacted the judicial process generally, it has impacted the efficient administration of this proceeding specifically. As this court previously observed, it relied on Karim's representations made in an October 2013 hearing regarding the email allegedly sent from Karim to James Henderson on December 31, 2011, when it denied Atmosphere's request for a preliminary injunction. Docket 258 at 9, 28. But based on Merali's supplemental discovery responses, the court had reason to believe that the email was not in fact ever sent. *Id.* at 28. The court found that "at its worst, defendants' conduct demonstrates that it has committed fraud on this court." *Id.* Now, nearing the end of 2015, defendants claim that the supplemental discovery response was "simply a misunderstanding, mistake, inadvertence or excusable neglect" and that they can prove "with 100% certainty" that the email was sent (a claim Atmosphere strongly disputes). Docket 279 at 5-6. It was exactly this type of oscillating answer and defendants' inability to provide a single, coherent response over an extended period of time to Atmosphere's discovery request–in spite of the court's order that defendants do so–that warranted the sanctions

the court imposed. Moreover, to reinstate defendants' third-party complaint
and counterclaims now would result in additional delay and more discovery
related to the information defendants recently turned over–discovery that
should have been ended almost a year ago. Thus, the court finds that this
factor weighs against defendants' claim for relief.

### v.   Meritorious Defense or Claim

In the typical case discussing this factor, the moving party missed a
deadline and the court has entered a default or otherwise unopposed ruling in
favor of the other party. *See, e.g.*, *Johnson*, 140 F.3d at 783 (party failed to
answer a complaint which resulted in entry of a default); *Feeney*, 472 F.3d at
562 (party failed to respond to a summary judgment motion which resulted in
summary judgment for the other party). In order to analyze this factor, the
court looks at what the party should have filed on time to determine if it could
establish a meritorious defense to the motion that was granted. *Cf. Johnson*,
140 F.3d at 785 (defaulting party provided an affidavit opining that the
defaulting party may not be liable on a products liability claim). The court's
inquiry is whether a party's "proffered evidence 'would permit a finding for the
defaulting party[.]' " *Id.* (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor
Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988)). The moving party must
provide at least "minimally adequate factual support to illustrate the potential
viability of his asserted defenses" for purposes of this factor. *Stephenson*, 524
F.3d at 914. Because defendants seek reinstatement of their third-party
complaint and counterclaims, the court will use these standards to determine if

defendants have asserted a meritorious claim rather than a meritorious defense.

Defendants' third-party complaint asserted claims for breach of contract, tortious interference with a business expectancy, and conversion. The complaint and its claims for relief was accompanied by numerous factual assertions that laid out defendants' theories. Those claims were reasserted as counterclaims in Shiba and Merali's answer to Atmosphere's amended complaint. Curtullo did not assert any claims of her own.

As with the other factors, defendants do not address this factor or otherwise explain how their dismissed claims were meritorious. Rather, the bulk of their brief suggests a potential claim against Clayborne. The court's earlier dismissal of defendants' claims was not related to any determination that the claims were meritless. For purposes of this motion, the court will assume defendants' dismissed claims were supported by enough factual information to warrant a finding that their claims were meritorious. Thus, this factor weighs in favor of granting defendants' request for relief.

### 2. Balancing the factors

As the Eighth Circuit has explained, the reason-for-neglect factor is critical. *Gibbons*, 317 F.3d at 854. Defendants' proffered reason–attorney error or carelessness–weighs heavily against granting them relief. *See, e.g.*, *Guidant Corp.*, 496 F.3d at 868; *Noah*, 408 F.3d at 1045. The court has determined that defendants acted in bad faith, that the length of their delay was significant, and that Atmosphere would be prejudiced by granting defendants' claim for

relief. The court assumes that the meritorious claim factor weighs in defendants' favor. On balance, the court finds that the *Pioneer* factors do not support granting defendants' request for relief under Rule 60(b)(1). Thus, their request is denied.

### C.     Rule 60(b)(6)

Defendants argue in the alternative that they should be entitled to relief under Rule 60(b)(6). That rule serves as a catch-all and authorizes a court to relieve a party from a judgment or order based on "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). A party must, however, demonstrate that "exceptional circumstances" support their claim. *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005).

Defendants' reliance on 60(b)(6) is problematic for several reasons. First, defendants' asserted reason justifying relief under Rule 60(b)(6) is the same as their claim for relief under Rule 60(b)(1). That is, defendants blame the disobedience of their former counsel for inadequately handling their case that resulted in the court's order of sanctions. But the Supreme Court has made clear that a party cannot pursue the same grounds for relief under Rule 60(b)(1)and (b)(6). *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) ("Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment . . . provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).). The Court explained that

> In *Klapprott v. United States*, 335 U.S. 601, 613 (1949), we held
> that a party may 'not avail himself of the broad "any other reason"

31

> clause of 60(b)' if his motion is based on grounds specified in clause (1)—'mistake, inadvertence, surprise or excusable neglect.' Rather, 'extraordinary circumstances' are required to bring the motion within the 'other reason' language and to prevent clause (6) from being used to circumvent the 1–year limitations period that applies to clause (1).

*Id.* at n.11. Thus, defendants cannot avoid their inadequate showing of excusable neglect by arguing that the same set of facts should constitute extraordinary circumstances.

Second, in *Pioneer*, the Court observed that

> To justify relief under subsection (6), a party must show 'exceptional circumstances' *suggesting that the party is faultless in the delay. If a party is partly to blame for the delay*, relief must be sought . . . *under subsection (1) and the party's neglect must be excusable.*

*Pioneer*, 507 U.S. at 393 (emphasis added). Defendants' unsworn and self-serving narratives that are offered to shift the blame entirely off of themselves and entirely on to Clayborne are not persuasive. Moreover, there are a number of instances in the record demonstrating, for example, that Karim was aware of and participated in formulating defendants' inadequate discovery responses. *See* Docket 100-1; Docket 164-1; Docket 199-1. Thus, defendants are not faultless and are limited to pursuing their claim for relief under Rule 60(b)(1). Because the court has already rejected their argument under that provision, the court likewise rejects the argument here.

These defects aside, defendants have not made an adequate showing of exceptional circumstances. The Eighth Circuit has held that attorney error, even error amounting to "gross negligence" as defendants label Clayborne's

32

representation, is not the kind of "extraordinary circumstances" that justifies relief under Rule 60(b)(6). *Heim v. C.I.R.*, 872 F.2d 245, 248 (8th Cir. 1989). In *Heim*, Laura, Clarence, and Elmer Heim were represented by counsel in an action before the United States Tax Court. Their attorney submitted the disputed issues to the court for resolution on stipulated facts. When the court ruled against the Heims, the attorney failed to apprise them of the adverse ruling and allowed the statutory window for filing an appeal to close. *Id.* at 246. Through new counsel, the Heims sought leave to file motions to vacate the adverse ruling and argued that their former attorney "was grossly negligent in handling the matter before the tax court." *Id.* The court denied the motion to vacate, and the Eighth Circuit affirmed.

On appeal, the Eighth Circuit noted that the Heims brought their claim for relief based on Rule 60(b)(1) for "excusable neglect" and under Rule 60(b)(6) for "any other reason justifying relief." *Id.* at 247 n.2. Although the court did not parse the claims in the manner described by the Supreme Court in *Liljeberg*, the Eighth Circuit explained:

> Thus, the Heims' argument here is essentially directed toward the adequacy of the representation that they received. We have 'generally held that neither ignorance nor carelessness on the part of an attorney will provide grounds for Rule 60(b) relief.' . . . We therefore conclude that any errors committed by [the Heims' attorney], even accepting the designation of gross negligence, do not constitute an adequate showing of 'extraordinary circumstances,' [thus] warranting vacation of the tax court decision.

*Id.* at 247-48 (internal citations omitted). Although the Heims "[had] a legitimate ground for complaint" against their former attorney, that was not

33

sufficient to show the tax court abused its discretion refusing to vacate its prior ruling. *Id.* at 249. Thus, even if the court ignores that defendants are asserting the same claim for relief under Rule 60(b)(1) and (b)(6) in contravention of *Liljeberg*, and if the court further ignores that defendants are not themselves faultless in contravention of *Pioneer*, and if the court still further accepts defendants' position that Clayborne was grossly negligent, then pursuant to *Heim* they are still not entitled to relief under Rule 60(b)(6).

Defendants attempt to avoid this conclusion by relying on *Mann v. Lewis*, 108 F.3d 145 (8th Cir. 1997), where the Eighth Circuit held:

> Mann himself did not engage in any intentional or willfully disobedient conduct designed to delay the proceedings or frustrate the defendants' preparations for trial. Rather, the failure to comply was due solely to [his attorney's] lack of diligence. Under the facts of this case, Mann should not be made to shoulder such a grave consequence—the total extinction of his claim—for [his attorney's] dereliction.

*Id.* at 147-48. But *Mann* involved an appeal from the district court's dismissal of a complaint with prejudice under Rule 41(b) and not a request under Rule 60(b) to reconsider the imposition of sanctions for repeated discovery violations. And unlike in *Mann*, the defendants here are not blameless. Thus, *Mann* is distinguishable.

Lastly, defendants attempt to rely on cases arising out of habeas corpus jurisprudence where the petitioners were wholly or almost entirely abandoned by their counsel. Docket 279 at 14 (citing *Holland v. Florida*, 560 U.S. 631 (2010) and *Maples v. Thomas*, 132 S. Ct. 912 (2012)). Although defendants refer several times to the court's order of sanctions as an imposition of the

34

"death penalty," *id.* at 3; Docket 278 at 1, the court disagrees that the reconsideration of civil sanctions is analogous to setting aside a sentence of death. Moreover, whatever similarities could be drawn between the intricacies of habeas corpus proceedings and the present case, defendants were not abandoned by Clayborne. Rather, Clayborne represented defendants in this matter for over two years by filing numerous motions and briefs and appearing on their behalf until the day this court disqualified him. *Contra Holland*, 560 U.S. at 652 (finding the attorney not only failed to file a habeas petition but also "failed to communicate with his client over a period of years, despite various pleas from Holland that [the attorney] respond to his letters."); *contra Maples*, 132 S. Ct. at 916-17 (noting counsel left their law firm for new employment without informing the petitioner, notifying the court, or requesting a change of address which left the petitioner completely abandoned). Defendants have actively participated in this proceeding and only began to complain about their now disqualified attorney's performance after their claims were extinguished. And, as the court has already noted, defendants' allegations are presented in an unsworn format and are largely self-serving. Thus, the court concludes that defendants are not entitled to relief under Rule 60(b)(6).

## CONCLUSION

Defendants will not be permitted to amend their response to Atmosphere's request for admission pursuant to Rule 36(b). Even if defendants' conduct was not intentional, the court finds that the balance of the *Pioneer* equitable factors do not warrant granting defendants relief under Rule 60(b)(1).

35

The court also finds that defendants are not entitled to relief under Rule 60(b)(6). Thus, it is

ORDERED that defendants' motion to amend their response to Atmosphere's request for admission (Docket 269) is denied.

IT IS FURTHER ORDERED that defendants' motion for reconsideration (Docket 278) is denied.

Dated November ⎯9⎯, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE