UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ATMOSPHERE HOSPITALITY MANAGEMENT, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>SHIBA INVESTMENTS, INC., KARIM MERALI, ZELJKA CURTULLO,<br><br>Defendants. | 5:13-CV-05040-KES<br><br>ORDER GRANTING MOTION FOR ATTORNEY FEES IN PART AND DENYING IN PART |

Plaintiff, Atmosphere Hospitality Management, LLC, moves the court to award it attorney fees and costs incurred to enforce the parties' settlement agreement. Docket 368. Atmosphere asks for $27,158 in attorney fees and $6,750.54 in costs. Docket 381-1. Defendants Shiba Investments, Inc., Karim Merali, and Zeljka Curtollo oppose Atmosphere's motion. Docket 379. Defendants also move the court for a hearing on Atmosphere's motion for attorney fees. Docket 374. For the reasons stated below, the court grants Atmosphere's motion for attorney fees in part and denies defendants' motion for a hearing.

## FACTUAL BACKGROUND

On May 20, 2013, Atmosphere filed its complaint against defendants alleging several violations of law. Docket 1. After several years of discovery and dispositive motions, the trial was set to begin on September 26, 2016. Docket 294. On September 9, 2016, the parties informed the court that they had reached a mediated settlement agreement. Docket 346-1. On September

27, 2016, the court entered an order and judgment of dismissal without prejudice. Docket 329. The order stated that "[t]he court will retain jurisdiction over this matter until the settlement is completed and a joint motion for dismissal with prejudice is filed." *Id.* On October 14, 2016, the parties entered into a settlement agreement and mutual release. Docket 346. On August 30, 2017, defendants filed a motion to reopen the case and enforce the settlement agreement and a motion to dismiss with prejudice. Docket 333; Docket 334. Defendants' brief in support of their motion to dismiss argued that they had substantially complied with the settlement agreement and asked the court to enforce the settlement agreement and dismiss the case with prejudice. Docket 336 at 7-8. Atmosphere did not oppose reopening the case and enforcing the agreement, but it did oppose dismissing the case with prejudice. Docket 344. Atmosphere argued in its brief that defendants had not complied with the terms set out in paragraph four of the settlement agreement, so Atmosphere refused to agree to a dismissal. *Id.*

On February 8, 2018, and March 8, 2018, the court held an evidentiary hearing on defendants' motions. Docket 354; Docket 360. As a result of the evidentiary hearing, the court denied defendants' motion to dismiss and motion to enforce the settlement agreement. Docket 367. After reviewing the motions, briefs, exhibits, and testimony, the court found:

> Plaintiff Atmosphere and the Defendants entered into a written settlement agreement dated October 14, 2016. In paragraph four of the settlement agreement, Defendants agreed to remove from the Internet, including their web site and social media, all references and links within their control to their association, past or present,

2

with Adoba hotels. Paragraph four further required Defendants to do so within 30 days from the date of the settlement agreement.

The Court relies in part upon the testimony of Stacie Hull, who testified that Merali met with her and instructed her to remove references to Adoba on Shiba's hotel website. Stacie Hull lacked the skill and training to remove references to Adoba that were embedded in the HTML code. While some or a majority of the public references to Adoba on the website have been removed, Defendants did not take sufficient action to ensure that all references to the Adoba Hotel were removed from the website's HTML code. Such requirement is clearly covered within paragraph four of the settlement agreement. Even on the day of March 8, 2018 hearing, the website still contained Adoba references embedded in its HTML code. Having Adoba references embedded within the website's code drives up search responses for Defendant's hotel when the public searches online for Adoba.

Atmosphere gave notice in April of 2017 that Defendants had not met the provisions of the settlement agreement. Such notice was sufficient and adequately put Defendants on notice that they needed to take further action to fully comply with the settlement agreement. Defendants did not take such actions.

Atmosphere was not required to hire an expert and inform Defendants what they needed to do to fully comply with removing all Adoba references from the internet. Such was Defendants' responsibility and they were capable of doing so and should have on their own.

Merali is experienced in the hotel industry and has rebranded the hotel in the past a number of times. Rebranding is [] not a new concept for Merali.

With regard to third-party booking sites, the Court finds that the third-party booking vendors were contacted in March 2016 with instructions to change the name of the hotel from Adoba Eco-Hotel or Adoba Hotel to the The Rushmore Hotel and Suites. There were, however, no instructions given that all references to Adoba Eco-Hotel or Adoba Hotel should be removed. Defendants only made such requests of some third-party booking sites shortly before the February and March 2018 hearings on this matter. Contacting third-party vendors to instruct them to change the name of the hotel is not sufficient to meet the requirements of paragraph four of the settlement agreement.

Docket 367.

Atmosphere now moves for an award of attorney fees and costs under paragraph six of the settlement agreement. Docket 368.

**DISCUSSION**

Atmosphere moves for attorney fees under a provision of its settlement agreement with the defendants. In an action based on diversity of citizenship, a federal district court must apply the substantive law of the state in which it sits. And paragraph 21 of the settlement agreement is a choice-of-law provision indicating that the agreement should be governed by the laws of the state of South Dakota. Docket 346 ¶ 21. Thus, the contract laws of the State of South Dakota will govern the court's analysis.

I.  **Interpretation of the Settlement Agreement**

Atmosphere moves for attorney fees under paragraph six of the settlement agreement. Paragraph six states, "In the event Defendants Shiba and Merali breach any of the covenants contained in the above paragraphs 4 and 5, Defendants Shiba and Merali agree to pay Plaintiff's reasonable attorney fees as may be necessary to compel enforcement of those provisions of the settlement. Should the Plaintiff believe that a breach has occurred then the Plaintiff or its counsel shall provide advance written notice of the purported breach and a reasonable opportunity to cure." Docket 346 ¶ 6. Defendants argue that the attorney fees incurred in the evidentiary hearing were not incurred "to compel enforcement of" the settlement agreement but instead were incurred in defending against defendants' motions.

"The interpretation of a contract is a question of law for the court[.]" *Stern Oil Co. v. Brown,* 908 N.W.2d 144, 157-58 (S.D. 2018). "[I]n determining the proper interpretation of a contract the court must seek to ascertain and

give effect to the intention of the parties." *Hisgen v. Hisgen*, 554 N.W.2d 494, 496 (S.D. 1996). "In order to ascertain the terms and conditions of a contract, we must examine the contract as a whole and give words their 'plain and ordinary meaning.' " *Gloe v. Union Ins. Co.*, 694 N.W.2d 252, 260 (S.D. 2005) (quoting *Elrod v. Gen. Cas. Co. of Wis.*, 566 N.W.2d 482, 486 (S.D. 1997)). "Whether the language of a contract is ambiguous is a question of law." *Bunkers v. Jacobson*, 653 N.W.2d 732, 738 (S.D. 2002). "Ambiguity exists 'when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.' " *Id.* (quoting *Divich v. Divich*, 640 N.W.2d 758, 761 (S.D. 2002)).

Here, paragraph six is unambiguous. The language makes it clear that the parties intended attorney fees to be available if Atmosphere had to take some action to force defendants to perform under the agreement. " 'The court is to enforce and give effect to the unambiguous language and terms of the contract[.]' " *Bunkers*, 653 N.W.2d at 738 (quoting *Kimball Inv. Land, Ltd. v. Chmela*, 604 N.W.2d 289, 292 (S.D. 2000)). The question then becomes whether Atmosphere "compelled" enforcement of the settlement agreement within the ordinary meaning or the word "compel." The ordinary meaning[1] of "compel" is "[t]o cause or bring about by force, threats, or overwhelming pressure[.]" *Compel*, Black's Law Dictionary (10th ed. 2014).

---

[1] Compel is also defined as to "take by force, extort, requisition" or "bring about or evoke by force." *Compel*, The New Shorter Oxford Dictionary (4th ed. 1993).

Here, Atmosphere did not make a motion to enforce the settlement agreement. But Atmosphere in its response stated that it did not oppose[2] the motion to reopen the case and enforce the settlement agreement and Atmosphere requested an award of attorney fees at that time. Docket 344 at 1. Thus, Atmosphere joined in defendants' motion to seek enforcement of the settlement agreement. While defendants filed their motion first, Atmosphere made its intention clear that it also sought enforcement of the agreement by joining in the motion, and the fees Atmosphere incurred for the evidentiary hearing were the result of compelling enforcement of the terms of the settlement agreement.

Defendants also argue that they were not in breach of paragraph four of the settlement agreement, so Atmosphere cannot recover fees under paragraph six. Docket 379 at 3. That is incorrect. Paragraph four states "Defendants Shiba and Merali further agree that within 30 days of final settlement (i.e., the date of this Agreement) they will remove from the Internet, including their web site and social media, and all references and links within their control to their associations, past or present, with Adoba hotels." Docket 346 ¶ 4. "When performance of a duty under a contract is due any non-performance is a breach." Restatement (Second) of Contracts § 235. "Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused." *Id.* § 225. "Non-occurrence of a condition is not a

---

[2] "Atmosphere generally does not oppose reopening the case and enforcement of the settlement agreement, but Atmosphere opposes the Motion to Dismiss with Prejudice[.]" Docket 344 at 1.

breach by a party unless he is under a duty that the condition occur." *Id.* § 225. Here, defendants were obligated under paragraph four of the settlement agreement to remove associations to the Adoba hotel from the Internet. Docket 346 ¶ 4. Defendants' performance was due 30 days after October 14, 2016. *Id.* As this court found, defendants had not met their obligations as of March 8, 2018, and Atmosphere provided defendants with adequate notice that they were not in compliance with the settlement agreement. Docket 367. Thus, defendants were in breach of the settlement agreement. Because defendants were in breach of the settlement agreement and Atmosphere compelled enforcement of the agreement, Atmosphere is entitled to reasonable attorney fees under paragraph six of the agreement.

## II. Atmosphere's Reasonable Attorney Fees

"South Dakota utilizes the American rule that each party bears the burden of the party's own attorney fees." *In re S.D. Microsoft Antitrust Litig.*, 707 N.W.2d 85, 98 (S.D. 2005) (citing *Crisman v. Determan Chiropractic, Inc.*, 687 N.W.2d 507, 513 (S.D. 2004)). "However, two exceptions to this general rule exist, first when a contractual agreement between the parties entitles the prevailing party to attorney fees, and second when an award of attorney fees is authorized by statute." *Id.* at 98 (citing *Crisman*, 687 N.W.2d at 513). The South Dakota Supreme Court set out the following factors to consider when determining reasonable attorney fees:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the

7

acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 111 (S.D. 1994). "However, before considering any of the factors listed above, the calculation of attorney fees must begin with the hourly fee multiplied by the attorney's hours." *In re South Dakota Microsoft Antitrust Litig., Inc.*, 707 N.W.2d at 99. Atmosphere moves for a total of $27,158.00 in attorney fees and $6,750.54 in costs. Docket 380 at 2. "The party requesting an award of attorneys' fees has the burden to show its basis by a preponderance of the evidence." *Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 800 N.W.2d 730, 737 (S.D. 2011).

**A. Reasonable Hourly Rate**

Defendants do not object to the hourly rates billed by Atmosphere, but the court must still make its own determination.[3] Neither party informs the court what attorney fee rates are in South Dakota for commercial litigation. But the court may determine the prevailing rates based on its own knowledge of attorney fee rates in the community. Attorney Sara Frankenstein billed her time at $250 per hour, and Attorney Nathan Chicoine billed his time at $140

---

[3] During the pendency of this litigation, the court and Magistrate Judge Veronica Duffy have ruled on motions for attorney fees on five occasions. Dockets 67; 173; 202; 225; 258. Because several of the attorneys are the same, the court relies on those previous decisions for guidance.

8

per hour. Docket 381-1. This court has previously found during this litigation that Attorney Frankestein's hourly rate of $250 and Attorney Chicoine's hourly rate of $140 are reasonable. Docket 202; Docket 225; Docket 258.

Attorney Mathew Naasz billed his time at $175 per hour. *Id.* Attorney Naasz has been practicing law since 2006. Docket 369 ¶ 5. In his twelve years of practice he has worked at Gunderson Palmer Law Firm in the litigation department, worked as a staff attorney to the South Dakota Supreme Court, and worked as an Assistant Attorney General in the civil litigation department. *Id.* Previously, this court found that $180 per hour was a reasonable rate for an associate in the Gunderson Palmer Law Firm with 9 years of experience. *See* Docket 202 at 7. Thus, the court finds that Attorney Naasz's rate of $175 per hour is reasonable.

Paralegal Teri Farland billed her time at $120 per hour. *Id.* Previously, this court has found that $75 per hour and $100 per hour are reasonable rates for a paralegal. Docket 202 at 75; Docket 225 at 5; and Docket 258 at 26. Paralegal Farland has 24 years of experience and is an Advanced Certified Paralegal. Docket 369 ¶ 6. Based on Paralegal Farland's extensive experience and high level of education, the court finds that her rate of $120 per hour is reasonable.

Intern Ali Tonow billed her time at $120 per hour. *Id.* It is unclear whether Tonow is an attorney intern or a paralegal intern and it is unclear what level of education and experience Tonow has attained. Previously, this court disallowed time billed to an unidentified intern. Docket 225 at 5-6.

Because Atmosphere has not offered further supporting information as to the hourly rate of an intern, Tonow's time is disallowed.

### B. Reasonable Number of Hours

Atmosphere requests compensation for a total of 144.5 hours. Defendants argue that many of the hours expended were not in furtherance of enforcing the settlement agreement. Docket 379. The court analyzes the amended attorney fees chart to determine whether the number of hours expended related to enforcing the settlement agreement and whether they are reasonable. Docket 381-1.

Weighing the factors listed in *City of Sioux Falls v. Kelley*, the court finds that some of the time spent on the evidentiary hearing was excessive. Specifically, the court notes that the hearing had to be significantly extended and rescheduled from the original amount of time the parties allotted—adding to the cost of preparation for the hearing. Prior to the February 8, 2018 hearing, the court inquired as to how long the parties believed the hearing would take. Defendants' attorney indicated that the hearing would be "a few hours" and Atmosphere's attorneys never responded. The February 8, 2018 hearing began at 10 AM (Central Time) and lasted until 1:20 PM with one ten-minute break. Docket 354. At that time, the court determined that the hearing would have to be continued because there were other hearings scheduled for the afternoon. Prior to taking a recess, the court again inquired as to how long the parties expected the remainder of the hearing to take. *See* Docket 358 at 116. Attorney Frankenstein stated "I think realistically there's another three

10

hours left of the hearing." *Id.* After the hearing ended, the court again inquired with the parties as to how long they believed the hearing would take. Attorney for defendants agreed with Attorney Frankenstein's three-hour estimate. The court then continued the remainder of the hearing to March 8, 2018. The March 8, 2018 hearing began at 10 AM (Central Time) and concluded at 5:45 PM with two fifteen-minute breaks and a one-hour lunch break. Docket 360.

The court finds that the additional costs incurred because of the unanticipated continuance of the hearing are unreasonable. If the parties had accurately informed the court as to the length of the hearing, the court, the plaintiff, and the defendants could have planned accordingly and avoided duplicative costs such as prepping witnesses, preparing exhibits, and attending two hearings. Thus, the court will exclude costs incurred by plaintiff related to preparing and attending the second hearing with the exception of costs incurred in relation to new evidence that surfaced between the two hearings.[4]

The court's calculation of fees for reasonable time spent on the evidentiary hearing[5] less duplicative time spent preparing for the second hearing is as follows:

| | | |
|---|---|---|
| Sara Frankenstein: | 45.2 hours x $250/hr = | $11,300 |
| Nathan Chicoine: | 51.9 hours x $140/hr = | $7,266 |

---

[4] After the February 8, 2018 hearing and before the March 8, 2018 hearing, defendants deleted references to the Adoba name in the HTML code of the Rushmore Hotel website. Plaintiffs discovered this and presented it as evidence at the second hearing. The court will not omit time spent in relation to this new evidence.

[5] The court omitted all of intern Tonow's time. *See supra* Section II.A.

11

| Mathew Naasz: | 2 hours x $175/hr = | $350 |
| Teri Farland: | 7.3 hours x $120/hr = | $876 |
| Total: | | $19,792 |

**C. Costs**

Atmosphere moves for attorney fees and costs under paragraph six of the settlement agreement. Paragraph six permits Atmosphere to recover reasonable attorney fees to enforce the settlement agreement, but it does not permit the recovery of other costs. Docket 346 ¶ 6. " 'The court is to enforce and give effect to the unambiguous language and terms of the contract[.]' " *Bunkers*, 653 N.W.2d at 738 (quoting *Chmela*, 604 N.W.2d at 292). Thus, Atmosphere may not recover $6,750.54 in costs.

## CONCLUSION

In conclusion, by joining defendants' motion to reopen the case and enforce the settlement agreement, Atmosphere compelled enforcement of the settlement agreement and is entitled to attorney fees under paragraph six of the settlement. But Atmosphere is not entitled to the duplicative fees incurred related to the second hearing and is not entitled to costs. Thus, the court awards Atmosphere $19,792 in attorney fees.

Dated July 30, 2018.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE